UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CHARLES MATTHEWS, ET AL                 CIVIL ACTION


VERSUS                                   NO:  13–6638


JACK STOLIER, ET AL                      SECTION: "H"(2)

## ORDER AND REASONS

Before the Court are three Motions to Dismiss (Docs. 20, 42, and 71).  For the following reasons, the Motions are GRANTED IN PART.


## BACKGROUND

Plaintiffs, Charles Matthews and his wife Sherita Matthews, filed this suit in Louisiana state court asserting a litany of claims against multiple defendants.  Defendants removed the matter to this Court, invoking the Court's federal question jurisdiction.  Since the matter was removed, the Court has denied a motion to remand and dismissed one Defendant, CNA Insurance Company.  Most of the remaining defendants have filed Motions to Dismiss.

The labyrinth of facts and claims constructed by Plaintiffs' pleadings,

1

which total 70 pages in length, has proven treacherous to navigate.  It is often difficult to discern what claims are made against which defendants and by whom.  Ultimately, it appears that Plaintiffs allege the following facts.

Sometime prior to the events giving rise to this suit, Lazarus Healthcare, LLC ("Lazarus") acquired ownership of Camillus Specialty Hospital, LLC ("Camillus"),[1] a long-term acute care ("LTAC") hospital in Gretna, Louisiana. Matthews is the sole owner of Lazarus.

In the fall of 2012, a dispute developed between Camillus and the landlord of the building that housed the hospital.  During the course of that dispute, Matthews began searching for another facility to house Camillus.  While he attempted to resolve the facility issues, Matthews also sought management assistance.  To that end, Matthews retained Defendant, Red River Healthcare Management Company, LLC ("Red River"), to provide management services to Camillus.  Red River is owned and operated by Defendants Jimmy and Connie Morgan ("the Morgans").

Matthews eventually discovered that an LTAC operating in the West Jefferson Medical Center, Louisiana Speciality Hospital, LLC ("LSH"), was closing and he began to explore the possibility of moving Camillus into the space being vacated by LSH.[2]  As Matthews pursued this opportunity, he learned that the then-operator of LSH might be interested in selling the entire facility,

---

[1] Camillus is referred to in the petition by varying names, including, Camillus Hospital, Camillus Specialty Hospital, Crescent City Specialty Hospital.

[2] In the petition LSH is referred to as West Jefferson LTAC, Jefferson Extended Care, Louisiana Specialty Hospital, and Jefferson LTAC.

including its license to operate.[3]  Matthews retained Defendant Steve Sullivan, an attorney, to negotiate the terms of the sale.  Defendant Michael Schulze allegedly assisted Sullivan with the preparation of various documents.[4]  Matthews claims that Sullivan and Schulze are employed by several named law firms ("Law Firm Entities").[5]

Matthews claims that, during the negotiations to purchase LSH, Sullivan began conspiring with the other named Defendants to deprive Matthews of the opportunity to purchase LSH.  Despite the alleged conspiracy, WJLT, LLC ("WJLT") was formed to purchase LSH.  Lazarus (Matthews's company) held a 91.1% ownership interest in WJLT, Sullivan held a 4.9% interest, and another individual held the remaining 5%.  WJLT  purchased LSH from the hospital's previous owner.  As part of the contract to purchase LSH, Matthews claims that he was forced to appoint Red River as the manager of WJLT, and divest himself of his interest in St. Charles Rehabilitation Hospital, LLC.[6]

After LSH was purchased, Matthews claims that Sullivan and Schulze engaged in a series of fraudulent acts designed to mislead Matthews into

---

[3] Owning LSH and its medicare number provided several business advantages not otherwise available to Camillus.

[4] Schulze is referred to in the petition as Schulze, Schultz, and Schulz.  It appears that "Schulze" is the correct spelling.

[5] The "Law Firm Entities" named in the petition are Sullivan, Stolier and Resor; Sullivan and Stolier; and, Sullivan, Stolier and Knight.  Matthews alleges that Sullivan and Schulze are employees of the Law Firm Entities.

[6] The relevance and involvement of St. Charles Rehabilitation Hospital, LLC in the facts of this suit is nebulous at best.  Matthews alleges that, prior to the events at issue, he sold his ownership interest in the St. Charles hospital to an unrelated third party.  Thus it appears that, at the time of the purchase of LSH, Matthews had no interest in the hospital of which to divest himself.

believing that LSH was nearly insolvent.  Matthews alleges that the named Defendants then exploited this situation by coercing Matthews into signing a power of attorney ("Power of Attorney") granting James Morgan the authority to sell LSH.  After Matthews signed the Power of Attorney, ownership of LSH was transferred to JLTAC, LLC ("JLTAC"), an LLC owned by Sullivan and his law partner, Defendant Jack Stolier.  The contract of sale was  executed by Morgan, acting on behalf of WJLT pursuant to the Power of Attorney.

Matthews explains that, shortly after the Power of Attorney was executed, LSH received a payment of nearly $800,000 ("PIP Payment").[7]  Matthews alleges that Defendants knew about the pending payment but deliberately concealed it from him to secure his consent to the sale.  Matthews asserts that he would have never executed the Power of Attorney had he known that LSH was in fact financially stable.

Matthews also alleges that, during the brief time that he owned LSH, Camillus made several loans to LSH.  After JLTAC acquired ownership of LSH, Matthews demanded repayment of the loans on behalf of Camillus.  Matthews claims that, after he demanded repayment, the Defendants engaged in a second conspiracy in which they fraudulently divested Matthews of his ownership interest in Camillus, thus depriving him of the proceeds of the loans. Ultimately, Matthews requests that the Court undo a series of transactions and place Matthews in full ownership of both Camillus and LSH.  He also requests

_____

[7] The Court will occasionally refer to these payments by the name used in the petition, "PIP Payments."  PIP is an acronym used by Medicare and stands for "Periodic Interim Payments." The Court omits a full discussion of the nature and significance of these payments because it is not relevant to the issues currently before the Court.

damages for the various alleged wrongful acts of Defendants.

The petition appears to assert the following causes of action arising out of the foregoing facts:[8]

1.  Fraud—Matthews asserts fraud claims against Sullivan, Stolier, and the Morgans alleging that he was falsely led to believe that LSH was nearly insolvent.  He seeks damages for delictual fraud and to annul four contracts on the basis of contractual fraud.[9]

2.  Breach of Fiduciary Duty—Matthews claims that Sullivan, Stolier, Schulze, the Law Firm Entities, and the Morgans each breached their fiduciary duties to him when they conspired to deprive him of his ownership interest in LSH.

3.  Conspiracy—Matthews claims that Sullivan, Stolier, and the Morgans conspired to (1) deprive him of his ownership interest in the LSH and Camillus, (2) breach their respective fiduciary duties to him, and (3) violate the duty of trust owed to him by Sullivan and Stolier.

4.  Breach of Contract—Matthews claims that, in the event that the four contracts at issue in the fraud claim are not annulled, Defendants have breached the contracts.

5.  Breach of Employment Contract—Matthews claims that Sullivan,

---

[8] Except where specifically noted, the term "petition" refers to both the state court petition and the amended complaint.

[9] The contracts are (1) the Power of Attorney, (2) the sale of LSH executed pursuant to the Power of Attorney, (3) an operating agreement for WJLT, and (4) a management agreement between the WJLT and Red River.

Stolier, and the Law Firm Entities breached their employment contracts with him by failing to protect his ownership interest in LSH.

6. Breach of Fiduciary Duty—Matthews claims that the Morgans and Red River, as managers of WJLT, breached their respective fiduciary duties owed to him when they conspired to deprive him of his interest in LSH.

7. Legal Malpractice—Matthews claims that Schulze committed legal malpractice when he failed to protect Matthews's ownership interest in LSH.

8. Negligence—Matthews claims that the Morgans and Red River negligently failed to protect his ownership interests in LSH.

9. Unjust Enrichment—Matthews claims that JLTAC has been unjustly enriched by Defendants' actions.

10. Unjust Enrichment—Matthews claims Sullivan, Stolier, the Law Firm Entities, the Morgans, and Red River have been unjustly enriched by their fraudulent actions.

11. Conversion—Matthews claims that Sullivan, Stolier, the Law Firm Entities, and Morgan stole his ownership interest in LSH.

12. Violations of Louisiana Security Laws—Matthews alleges that Defendants' actions violated Louisiana Securities laws.

13. Violations of Federal Security Laws—Matthews alleged that Defendants' actions violated Federal Securities laws.

6

14.   Miscellaneous Violations of Federal Law—Matthews alleges that the Defendants have violated several federal criminal statutes and the False Claims Act.

15.   Conversion—Matthews claims that Sullivan stole the PIP Payment that was allegedly tendered to LSH shortly following Matthews's execution of the Power of Attorney.

16.   Final Two Claims—the final two claims alleged in the amended complaint request that Defendants immediately produce all financial documents related to LSH and that the Court immediately appoint an auditor, at Defendants expense, to examine the financial records of LSH.

Defendants concede that some claims have been pled with sufficient specificity to survive these Motions.   In the interests of clarity, the Court will discuss each claim individually and will note, as appropriate, which claims are unchallenged for the purposes of this Motion.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[10]   A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

---

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[11] *Id.*

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[12] The court need not, however, accept as true legal conclusions couched as factual allegations.[13] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[14] The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[15]

## LAW AND ANALYSIS

The remainder of this Order is organized in the following manner. Initially, the Court addresses Defendants' standing arguments, then the Court discusses each claim individually, whether or not it is challenged. Finally, the Court delineates the specific claims that survive this Order and the extent to which Plaintiffs are permitted to amend their petition in light of this Order.

### I. Standing

The petition names as Plaintiffs Sherita Matthews, and Charles

---

[12] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[13] *Iqbal*, 556 U.S. at 678.

[14] *Jones v. Bock,* 549 U.S. 199, 215 (2007).

[15] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). All parties have submitted matters outside the pleadings. Plaintiff argues that this automatically converts the instant Motions to motions for summary judgment. This is not accurate. Rule 12(d) allows the Court to exclude such matters in its discretion. In this case, the Court elects to exclude the attached documents. Accordingly, the Motions will be evaluated under Rule 12.

Matthews.  Plaintiffs further allege that Charles Matthews brings this action both individually and on behalf of his "personal, direct or indirect membership ownership interest" in WJLT, Camillus, Lazarus, LSH, and St. Charles Specialty Rehabilitation Hospital, LLC.

Defendants argue that Matthews lacks standing to bring claims on behalf of the named LLCs because they are manager-managed and he is not the manager of any of them.  Defendants further argue that Matthews lacks the capacity to bring a derivative action on behalf of WJLT, Camillus, LSH and St. Charles Rehabilitation Hospital (SCRH) because he has not a member of those LLCs.  Defendants concede that Matthews is the sole member of Lazarus but argue that he has failed to state a claim for relief on behalf of Lazarus.  In response, Matthews argues that his claims are not brought on behalf of the LLCs but rather on behalf of his ownership interest in each.

Defendants frame their argument as one that Matthews lacks constitutional standing.  While the Court ultimately concludes that Matthews cannot bring claims on behalf of the LLCs, the Court does not reach that conclusion on the basis of constitutional standing.  Instead, the issue presented is whether Matthews has procedural capacity under Louisiana law to sue on behalf of the LLCs.[16]

FRCP 17(b) provides, in pertinent part:

**(b) Capacity to Sue or Be Sued.** Capacity to sue or be sued is

---

[16]   Constitutional standing is an inquiry completely separate from the question of whether a plaintiff has the right to sue under the governing law. *See Lexmark International, Inc. V. Static Control Components, Inc.,* 134 S.Ct 1377, 1386 (2014).

determined as follows:
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
> (2) for a corporation, by the law under which it was organized; and
> (3) for all other parties, by the law of the state where the court is located

Clearly, Matthews's capacity to sue is governed by Louisiana law.  Under Louisiana law, "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts."[17]  "When a plaintiff sues as . . . a legal representative, his authority or qualification is presumed, unless challenged by the defendant . . . . When so challenged, the plaintiff shall prove his authority."[18]  Accordingly, under Louisiana law, if a defendant challenges a plaintiff's capacity to sue on behalf of another, the plaintiff bears the burden of proving that he has the legal capacity to proceed.

Matthews's arguments regarding his procedural capacity to sue on behalf of the named LLCs are opaque at best.  He expressly disclaims that he is bringing any claims on behalf of the individual entities or that he is attempting to bring a derivative action.[19]  Instead, he argues that his respective ownership interests in the LLCs have been damaged and that he is suing of behalf of those ownership interests.

Essentially, Matthews argues that his property (the ownership interest in the LLCs) has lost value because of Defendants' actions.  Under Louisiana law,

---

[17] La. Code Civ. Proc. art. 681.

[18] *Id*. art. 700.

[19] R. Doc. 51, p. 3–4.

civil actions may only be brought by *persons*.[20]  While an LLC is a juridical person with the capacity to sue and be sued;[21] a membership interest in an LLC is classified as an incorporeal movable[22] and does not have the capacity to sue. In sum, Matthews's membership interests in the LLCs are incorporeal movables under Louisiana law and do not have the capacity to sue.  Moreover, Matthews has not cited any case where a Louisiana court has permitted a person to sue on behalf of a thing.  The Court could dismiss the claims brought on behalf of Matthews's ownership interests on this basis alone.  However, the Court also notes that the allegations of the petition reveal several independent reasons why Matthews cannot meet his burden to demonstrate that he possesses the procedural capacity to sue on behalf of the named LLCs.  In an attempt to add some clarity to this issue, the Court will discuss each named LLC in turn.

   A. *St. Charles Rehabilitation Hospital, LLC*

   As an initial matter, this Court is unable to ferret out any claim for damage to this entity.  Nonetheless, assuming *arguendo* that Matthews did attempt to assert certain claims, he cannot meet his burden to prove that he has the procedural capacity to proceed on behalf of any alleged ownership interest in this entity.  Indeed, the clear allegations of the petition establish that Matthews has no ownership interest in this LLC whatsoever.  He specifically alleges that he sold this LLC to a third party prior to the events in question and that the sale was valid.  Matthews cannot sue on behalf of an ownership interest

---

[20] La. Code Civ. Proc. art 681.

[21] *Id.* art. 690

[22] La. Rev Stat § 12:1239.

11

that he does not have.  Therefore, any claims purportedly brought on behalf of St. Charles Rehabilitation Hospital, LLC are dismissed.

### B. Lazarus Healthcare, LLC

Lazarus is undisputably wholly owned by Matthews.  Initially, it would appear that Matthews has the procedural capacity to bring suit in the company's name.  Matthews, however, expressly disclaims that he is bringing any claim on behalf of Lazarus or that he is bringing a derivative action.  As explained above, a person cannot sue on behalf of their membership interest in an LLC. Matthews has failed to carry his burden to prove that he has the procedural capacity to sue on behalf of his ownership interest in Lazarus, and claims purportedly brought on behalf of Lazarus are dismissed

### C. WJLT, LLC

WJLT was formed to purchase LSH.  In his opposition, Matthews claims that he owns WJLT.  The allegations of his petition do not support his position. Lazarus owns 91.9% of WJLT, Sullivan and others own the remaining percentages.  Matthews has no direct ownership interest in WJLT.  Louisiana law provides that the member of an LLC has no interest in the property of the LLC.[23]  Because Matthews has no direct ownership interest in WJLT, he lacks the authority to assert claims on its behalf.  Any claims filed on behalf of WJLT are dismissed.

### D. Camillus Specialty Hospital, LLC

In the complaint, Matthews alleges that Lazarus is the sole owner of

---

[23] La. Rev. Stat. § 12:1329 ("A member shall have no interest in limited liability company property.").

Camillus.[24]  Because Lazarus, not Matthews, holds the ownership interest in Camillus, Matthews cannot assert a claim on behalf of that ownership interest for the reasons expressed above.  All claims purportedly filed on behalf of Camillus are dismissed.

### E. Louisiana Speciality Hospital, LLC

Matthews also claims to own this entity, but the allegations of his petition belie this conclusion.  Matthews alleges that LSH was initially purchased by WJLT and subsequently sold to JLTAC pursuant to the Power of Attorney that Matthews seeks to annul.  However, even assuming that Matthews is ultimately successful in annulling the sale, ownership of LSH would not revert to him.  Instead it would revert to WJLT, an entity in which Matthews does not have a direct ownership interest.  In fact, Matthews never had a personal ownership interest in LSH.  Therefore, all claims filed on behalf of LSH are dismissed.

As a result of the Court's rulings on procedural capacity, all claims purportedly brought on behalf of Matthews's ownership interests in the named LLCs are dismissed.  The only remaining plaintiffs are Charles Matthews and his wife, Sherita Matthews.

## II. Claims Alleged in the Petition

### 1) Fraud

Matthews alleges two distinct fraud claims in the petition.  First, he seeks damages on the ground that Defendants committed delictual fraud when they

---

[24] The petition alleges that several Defendants conspired to take Camillus from Matthews through a series of fraudulent transactions but that he is still the rightful owner of Camillus.  The Court assumes that this allegation is true for the purpose of this analysis.

misled him to believe that LSH was insolvent.  Second, he seeks the recession of four contracts on the ground that his consent to the contracts was procured by the same fraud.

Defendants move to dismiss these claims because they have not been pled with the specificity required by Rule 9(b).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[25]  "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim under Rule 12(b)(6)."[26]  Fifth Circuit precedent "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"[27]  In cases concerning "omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading."[28]

a) Tort Claim

Matthews first claim is that of delictual fraud.  The elements of a Louisiana fraud or intentional misrepresentation claim are: 1) a misrepresentation of a material fact; 2) made with intent to deceive; and 3)

---

[25] Fed. R. Civ. P. 9(b).

[26] *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[27] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 605 (5th Cir. 1974)).

[28] *Carroll v. Fort St. James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).

causing justifiable reliance with resultant injury.[29]  In the petition, Matthews alleges that Sullivan and the Morgans knew, at the time Matthews signed the Power of Attorney, that nearly $800,000 in PIP Payments were going to be tendered to LSH within days.  Matthews claims that Defendants deliberately concealed this fact from him, instead misleading him to believe that the hospital was nearly insolvent.  Matthews insists that he would never have considered selling the hospital if he were aware of this information.

These allegations are sufficient to state a claim for fraud against Sullivan and the Morgans.  The petition alleges that Sullivan and the Morgans had actual knowledge of a fact (that the PIP Payment was forthcoming), that they intentionally concealed that fact from him with the intent to deceive him into believing the LTAC was insolvent, and that he lost the opportunity to realize profits from the hospital as a result.  The Court finds that the delictual fraud claim against Sullivan and the Morgans was plead with sufficient particularity, and Defendants motion to dismiss the claim is denied.

Matthews also seeks to assert a fraud claim against Jack Stolier, Sullivan's law partner.  Matthews has not alleged that Stolier was aware that the payments existed, much less that the funds were about to be tendered to the hospital, nor does Matthews allege facts from which the Court could conclude that Stolier ever possessed an intent to deceive Matthews.  In the amended complaint, Matthews alleges that Stolier "knew or should have known [about the payments] . . . as part of his duty of due diligence."  This allegation is deficient

---

[29] *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008).

15

for several reasons.  First, there is no allegation that Stolier had actual knowledge of the payments.  Additionally, the allegation is nothing more than an attempt to recite the element of a cause of action without factual support. Such allegations do not state a claim for relief.[30]  Therefore, the delitcual fraud claim against Stolier is dismissed.

  b) The Contract Claim

In this claim, Matthews seeks to annul four contracts on the basis of fraud: (1) the Power of Attorney; (2) the sale of LSH executed pursuant to the Power of Attorney; (3) an operating agreement for WJLT that was executed on October 18, 2012; and (4) a management agreement between the WJLT and Red River, also executed on October 18, 2012.  Defendants concede that Matthews has properly pled this claim as to the first two contracts but move to dismiss the claims pertaining to the third and fourth contracts.

  Under Louisiana law,

  there are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.[31]

Defendants argue that Matthews cannot possibly prove the third element of his claim as to the latter two contracts because the fraud he alleges occurred *after* the challenged contracts were executed.  The Court agrees.  Matthews

---

[30] *Iqbal*, 556 U.S. at 678.

[31] *Shelton v. Standard / 700 Associates*, 798 So. 2d 60, 64 (La. 2001).

16

alleges that the challenged operating agreement and the management agreement were both executed on October 18, 2012.  He also alleges that his consent to these contracts was procured by the fraud related to the PIP Payment discussed above.  According to the petition, the earliest time that Defendants could have possibly known about the payment was November 16, 2012.  Therefore, Defendants' failure to inform Matthews about the payment could not possibly have influenced his consent to agreements executed nearly a month before Defendants knew about the payments.  Because the allegations of the petition belie Matthews's claim for fraud with regard to the October 18, 2012 contracts, those claims are dismissed.  Matthews's claims seeking to annul the Power of Attorney and any documents executed pursuant to the Power of Attorney will remain.

### 2) Breach of Fiduciary Duty

Matthews alleges that Defendants owed fiduciary duties to him and that they breached those duties when they jointly conspired to deprive him of his ownership interest in LSH.  Defendants concede that the claim is properly pled as to the Morgans, Red River, Sullivan, and the Law Firm Entities but argue that it should be dismissed as to Stolier and Schulze.

The elements of a cause of action for a breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages.[32] "Further, the cause of action requires proof of fraud, breach of trust or action

---

[32] *Brockman v. Salt Lake Farm P'ship*, 768 So. 2d 836, 844 (La. Ct. App. 2 Cir. 2000); *see also U.S. Small Bus. Admin. v. Beaulieu*, 75 F. App'x 249, 252 (5th Cir. 2003) (citing *id.*).

17

outside the limits of the fiduciary's authority."[33]

Assuming *arguendo* that Stolier and Schulze owed a fiduciary duty to Matthews, Matthews has not pled facts from which the Court could conclude that Stolier or Schulze committed fraud, breached Matthews's trust, or acted outside of their authority.  The Court has already held that Matthews has not pled a fraud claim as to Stolier, nor has he pled any facts supporting a fraud claim against Schulze.  Additionally, Matthews has not pled any facts that indicate that Stolier or Schulze ever personally took actions in breach of Matthews's trust.  Rather, the petition groups Stolier and Schulze with Sullivan for the purposes of pleading this claim.  It appears that Matthews's claim is that Stolier and Schulze worked with Sullivan and are therefore jointly liable for his actions.  Matthews cites no law in support of the proposition that Sullivan's alleged breach of fiduciary duty can be imputed to Stolier or Schulze.  Therefore, because there are no specific allegations supporting a claim for breach of fiduciary duty against Stolier or Schulze, those claims are dismissed.

*3) Conspiracy*

In count 3 of the petition, Matthews alleges that Stolier, Schulze, and the Morgans aided and abetted Sullivan's breach of fiduciary duty. "In the absence of a conspiracy, there is no distinct cause of action for aiding and abetting under Louisiana law."[34]   In count 4 of the petition, Matthews alleges that Stolier,

---

[33] *Brockman*, 768 So. 2d at 844; *accord Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992); *Beckstrom v. Parnell*, 730 So. 2d 942, 948 (La. Ct. App. 1 Cir. 1998).

[34] *Guidry v. Bank of LaPlace*, 661 So. 2d 1052, 1057 (La. Ct. App. 4 Cir. 1995); *accord Stephens v. Bail Enforcement of Louisiana*, 690 So. 2d 124, 130 (La. Ct. App. 1 Cir. 1997).

Sullivan and the Morgans conspired to deprive him of his ownership interest in LSH. The petition is devoid of any allegations that Schulze participated in any conspiracy. Therefore, the aiding and abetting claim against Schulze is dismissed.

Defendants additionally contend that the conspiracy allegations are insufficient as a matter of law. "Conspiracy is not a substantive tort in Louisiana."[35] "Instead, it is the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part that constitutes the actionable elements of a claim."[36] In other words, a plaintiff may not simply assert a claim for conspiracy. Instead, a plaintiff must establish that the alleged conspirators agreed to, and actually did, commit a substantive tort.[37] Once a plaintiff establishes both the existence of a conspiracy and the underlying tort, then the manner in which the plaintiff's damages are apportioned among the defendants changes.[38] Ordinarily, damages are apportioned among defendants in proportion to their degree of fault as assigned by the jury, and each defendant is liable for only his proportionate share of the damages.[39] Where a conspiracy is proven, however, solidary liability is imposed on all members of the conspiracy and the conspirators, as a group, are each liable for the whole of the plaintiff's

---

[35] *Wooley v. Lucksinger*, 14 So.3d 311, 435 (La. Ct. App. 1 Cir. 2008).

[36] *Crutcher-Tufts Resources, Inc. v Tufts*, 38 So.3d 987, 991 (La. Ct. App. 4 Cir. 2010); *accord New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 40 So.3d 394, 408 (La. Ct. App. 4 Cir. 2010).

[37] *Tufts*, 38 So.3d at 991.

[38] *Id.*; *see also* La. Civ. Code art. 2324.

[39] La. Civ. Code art. 2324(B).

damages.[40]

Because conspiracy is not an actionable tort under Louisiana law, it cannot persist as a claim in this action.   Nonetheless, Matthews has alleged that Sullivan, Stolier, and the Morgans conspired to commit several torts.  Because the Court ultimately concludes that Matthews has not pled any viable tort claim against Stolier, the conspiracy allegations against him are dismissed.  Because Matthews has pled viable tort claims against Sullivan and the Morgans and has plausibly alleged that they conspired among themselves to commit those torts, Matthews will be permitted to put forth evidence of the alleged conspiracy between Sullivan and the Morgans at trial.

### 4) Breach of Contract

In this count, Matthews asserts, as an alternative to the nullification of the agreements, that Defendants are liable for breaching the agreements. Defendants seek dismissal of this claim on the grounds that Matthews has not pled any facts in support of it.

Matthews has pled that Defendants have breached their obligations under the contract selling LSH to JLTAC.   Matthews particularly alleges that Defendants have failed to pay him the amounts due under the contract.  Because Plaintiff has sufficiently pled a breach of this contract, this claim will remain.

As to the remaining contracts, Matthews has not pled the terms of the contracts with any particularity, much less alleged how Defendants breached those contracts.  Accordingly, all breach of contract claims, except for the claim

---

[40] *Id.* art. 2324(A); *see also id*. art. 1794 (defining solidary liability).

related to the sale agreement, are dismissed.

    *5) Breach of Employment Contract*

    In this claim, Matthews alleges that Sullivan, Stolier, and the Law Firm
Entities breached their employment contract with Matthews.  While this claim
is couched as a breach of contract claim, it is nothing more than a redundant
legal malpractice claim.  Louisiana courts have held that a breach of contract
claim against an attorney ordinarily does not arise unless the attorney "breaches
an express warranty of result."[41]   In the absence of such a breach, a client's
remedy against his attorney for deficient representation is a claim for legal
malpractice.[42]  Matthews does not allege that any of the attorney–defendants
warrantied any specific result.  Therefore, the Court will construe this claim as
a claim for legal malpractice.  Defendants concede that Matthews has pled a
legal malpractice claim against Sullivan and the Law Firm Entities but not
against Stolier.

    To plead a claim for legal malpractice under Louisiana law Matthews must
allege: "(1) the existence of an attorney-client relationship; (2) negligent
representation by the attorney; and (3) loss caused by that negligence."[43]  In this
case, Matthews has not alleged any facts supporting his claim that Stolier ever

---

[41] *Cherokee Rest., Inc. v. Pierson*, 428 So. 2d 995, 998 (La. Ct. App. 1 Cir. 1983).

[42] *See U.S. Fid. & Guar. Co. v. E.L. Habetz Builders, Inc.*, No. 06-895, 2008 WL 850431,
at *8 (W.D. La. Mar. 28, 2008) (holding that a claim for breach of contract against an attorney
would be construed as a malpractice claim where the breach related to the alleged failure to
provide competent legal services) (citing *Kozan v. Comstock*, 270 F.2d 839, 844–45 (5th Cir.
1959)).

[43] *MB Indus., LLC v. CNA Ins. Co.*, 74 So. 3d 1173, 1184 (La. 2011).

represented him, much less that the representation was negligent. While Matthews presents a conclusory allegation that Stolier represented him, he has not pled any facts that support this conclusion. Conclusory allegations such as this are generally insufficient to state a claim for relief.[44] Additionally, the only factual allegation made regarding Stolier (other than allegations that he now has an ownership interest in LSH) is that Stolier requested that an independent attorney represent Matthews with regard to the Power of Attorney transaction. Even assuming *arguendo* that this single act created an attorney-client relationship between Matthews and Stolier, Matthews has not alleged that retaining independent counsel was negligent. Therefore, the legal malpractice claim against Stolier is dismissed.

### 6) Breach of Fiduciary Duty

Matthews alleges that the Morgans and Red River breached fiduciary duties they owed to him. All defendants named in this count concede that it is appropriately pled.

### 7) Legal Malpractice

In this count, Matthews attempts to assert a legal malpractice claim against Schulze and negligence claims against Sullivan, Stolier, and Knight, LLC.[45] The only claim that is challenged is the legal malpractice claim against

---

[44] *See Iqbal*, 556 U.S. at 678 (holding that a formulaic recitation of the elements of a cause of action does not state a claim for relief).

[45] It appears that the negligence claims against the law firm entity sound in *respondeat superior*. To the extent that this is true, Defendants do not challenge this claim because they concede that a legal malpractice claim has been pled against a single firm employee, Sullivan. However, in the Court's reading, it appears that Matthews may be attempting to assert negligence claims against all employees of the firm personally. To the extent that this is

Schulze.

The sole allegation of negligence against Schulze is that he failed to prevent Sullivan's alleged misconduct. This allegation fails as a matter of law. Matthews alleges that Schulze was subordinate to Sullivan but that Schulze nonetheless had a duty to prevent Sullivan's actions. Matthews has cited no law in support of the proposition that a subordinate attorney can be held responsible for the malpractice of his supervisor, nor could the Court find such a case. Indeed, Matthews's opposition to the Motions does not even attempt to address the malpractice claim against Schulze. The legal malpractice claim against Schulze is dismissed.

*8) Negligence*

In this count, Matthews asserts ordinary and professional negligence claims against the Morgans and Red River. Defendants have not challenged these claims.

*9) and 10) Unjust Enrichment*

In these counts, Matthews alleges that Defendants, Sullivan, Stolier, the Law Firm Entities, the Morgans, Red River, and JLTAC have been unjustly enriched at Matthews's expense. Defendants move to dismiss all unjust enrichment claims.

The Louisiana Supreme Court has clearly stated that unjust enrichment is a remedy of last resort in Louisiana.[46]  In *Walters v. MedSouth Record*

_____

intended, Matthews has not pled any facts to support such a claim, and it is therefore dismissed.

[46] *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010).

*Management, LLC*, the plaintiff initially asserted a tort claim against the defendant.[47] After the tort claim was dismissed on the basis of prescription, the plaintiff amended his petition to add a claim for unjust enrichment.[48] The Louisiana Supreme Court held that the unjust enrichment claim was unavailable to plaintiff as a matter of law because he had pled a valid tort claim and the remedy of unjust enrichment is available only when the law provides no other possible remedy.[49] The Court specifically held that the eventual dismissal of the tort claim was irrelevant because, "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."[50] Thus, under Louisiana law, if a plaintiff is able to plead a valid claim under any legal theory, he may not pursue a claim of unjust enrichment.

The relief that Matthews seeks pursuant to his unjust enrichment claim is available pursuant to other, validly plead, claims. The Court has already held that Matthews has pled at least one valid contract or tort claim against each of the defendants named on the unjust enrichment claims except Stolier and JLTAC. Additionally, as to Stolier and JLTAC, Matthews seeks rescission of the contract selling LSH to JLTAC (which is allegedly co-owned by Stolier). This remedy is available pursuant to Matthews's claim for nullification of the sale. Thus, the remedy that Matthews seeks against JLTAC and Stolier is available

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

24

pursuant to a validly pled claim, and an unjust enrichment remedy is not available.  Because all of the remedies that Matthews seeks pursuant to unjust enrichment are available pursuant to other, properly pled claims, the unjust enrichment claims are unavailable as a matter of law and are dismissed with prejudice.

### 11) Conversion

In this count, Matthews alleges that Mr. Morgan, Sullivan, and Stolier stole his ownership interest in LSH.  Defendants move to dismiss this claim.

While Louisiana recognizes the tort of conversion, it is not the strict liability conversion action known to the common law.[51]  Instead, Louisiana recognizes a cause of action for the "unlawful interference with the ownership or possession of a movable."[52]  This action arises in seven distinct circumstances, but all generally require that the defendant assert possession or ownership over the plaintiff's property.[53]  In this case, Matthews argues that Mr. Morgan, Sullivan, and Stolier are asserting ownership over his property, LSH.  The petition, however, does not support such a claim.

The petition alleges that JLTAC acquired ownership of the hospital from WJLT.  Matthews directly owned Lazarus, which held an ownership interest in

---

[51] *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 721 So. 2d 853, 856–57 (La. 1998).

[52] *Id.* at 857.

[53] *Id.*  The seven circumstances are: "1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel." *Id.*

WJLT.  WJLT, in turn, owned LSH.  It is clear on the face of the petition that Matthews never *directly* owned LSH.  Any claim for conversion belongs to WJLT, not to Matthews.[54]  Matthews simply cannot personally assert this conversion claim, and it is dismissed.

### 12) and 13) Violations of Louisiana and Federal Securities Laws

Defendants have not moved to dismiss these claims, therefore the claims for violations of Louisiana and Federal securities laws shall remain pending.

### 14) Miscellaneous Violations of Federal Law

Matthews alleges that Defendants violated several federal criminal statues and the Federal False Claims Act.  Defendants move to dismiss these claims.  Matthews provides no substantive opposition to  the dismissal of these claims.  Instead, he argues that the alleged violations "may still be the evidentiary support for other causes of action."  Because Matthews has not and, in the Court's opinion, can not argue that these claims are properly pled, they are dismissed.

### 15) Conversion

Matthews alleges that Sullivan stole the PIP Payments.  This claim must fail for the same reason as Matthews's other conversion claim: Matthews never alleges that he personally owned the payments.  Instead, he alleges that they belonged to LSH.  Because Matthews did not personally own or possess the PIP Payments, he cannot assert a conversion claim with regard to them, and this claim is dismissed.

---

[54] *Ogea v. Merritt*, 130 So. 3d 888, 894–95 (La. 2013) ("[T]he law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons.").

*16) Final Two Claims*

In the final two claims, Matthews seeks (1) an injunction compelling Defendants to produce all financial documents related to LSH, and (2) an immediate independent audit of LSH's accounts at Defendants' expense. As to the first claim, it appears to be a discovery request rather than a claim for relief. To the extent that Matthews seeks financial documents, he may request them through the traditional discovery process. As to the second claim, Matthews has not cited to any provision of law that permits this Court to impose such an onerous requirement on Defendants prior to a finding of liability. Moreover, Matthews has not cited any provision of law that would permit the Court to impose this remedy even *after* a finding of liability. Accordingly, both of the claims are dismissed.

## III. Surviving Claims

In light of this Order, the following claims survive these Motions: (1) a fraud claim, sounding in tort, against Sullivan and the Morgans; (2) a claim to nullify the Power of Attorney, and any contracts executed pursuant to the Power of Attorney, on the basis of fraud; (3) breach of fiduciary duty claims against the Morgans, Red River, Sullivan, and the Law Firm Entities; (4) a breach of contract claim related to the contract selling LSH to JLTAC; (5) a legal malpractice claim against Sullivan and the Law Firm Entities; (6) negligence claims against the Morgans and Red River; and (7) claims for violations of Louisiana and federal securities laws. All claims against Stolier and Schulze are dismissed without prejudice. All claims brought on behalf of Matthews's alleged

27

ownership interest in an LLC and all unjust enrichment claims are dismissed without prejudice. The only surviving claims against Admiral Insurance Company are those that survive against the Morgans or Red River, all remaining claims against Admiral are dismissed without prejudice. Furthermore, all claims pled against Defendant, James Fritschen survive.[55] Finally, Matthews may attempt, at trial, to impose solidary liability on Sullivan and the Morgans by proving the existence of a conspiracy. All claims not specifically designated as surviving this Order are dismissed without prejudice.

### IV. Leave to Amend

The Court has dismissed several of Matthews's claims pursuant to Rules 9(b) and 12(b)(6). Courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim.[56] Therefore, the Court will afford Plaintiffs the opportunity to amend their complaint to address the deficiencies identified herein no later than 20 days following the issuance of this Order. However, Plaintiffs are only granted leave to assert claims dismissed pursuant to Rules 9(b) and 12(b)(6). To be clear, this means that Plaintiffs may only assert claims that Matthews may assert in his personal capacity.[57]

### CONCLUSION

---

[55] Mr. Fritschen has not moved to dismiss any of the claims against him.

[56] *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

[57] Matthews is also precluded from attempting to plead new claims under an unjust enrichment theory for the reasons already stated.

28

For the foregoing reasons, the Motions to Dismiss are GRANTED IN PART.  Plaintiffs are granted leave to amend their complaint within 20 days of this order for the sole purpose of remedying the deficiencies outlined herein.

New Orleans, Louisiana, this 10th day of October, 2014.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

29