## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHARLES MATTHEWS, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                       **NO:  13–6638**

**JACK STOLIER, ET AL.**                         **SECTION: "H"(2)**

### ORDER AND REASONS

Before the Court is a Motion for Reconsideration (Doc. 81) and two Motions to Dismiss (Docs. 95 & 97).  For the following reasons, the Motions are GRANTED IN PART.

### BACKGROUND

Plaintiffs, Charles Matthews and his wife Sherita Matthews, filed this suit in Louisiana state court asserting a litany of claims against multiple defendants.  Defendants removed the matter to this Court, invoking the Court's federal question jurisdiction, and promptly filed several motions to dismiss.  The Court issued an Order granting the motions in part ("First Order").  In the First Order, the Court specifically delineated which claims were dismissed, which

1

claims survived, and which of the dismissed claims Plaintiffs were granted leave to amend.  Plaintiffs filed an Amended Complaint that added 45 pages of allegations to the already 70-page Complaint.  While Plaintiffs' Amended Complaint has increased the length of the Complaint, it has had the opposite effect on its clarity.  Plaintiffs also filed a Motion for Reconsideration, in which they argue that much of the First Order was incorrect.  For their part, Defendants have filed a new round of motions to dismiss, arguing that the Amended Complaint does not cure any of the deficiencies identified by the Court in the First Order.

The prolix nature of the Complaint and its amendments have made the Court's review of the pleadings very difficult.  This is not because the facts of this case are exceedingly complex.  Rather, in the Court's view, it appears that Plaintiffs have ignored Rule 8(a)'s requirement that a complaint set out a "*short and plain*" statement of the claims.[1]  The relevant facts are set forth as follows.

Sometime prior to the events giving rise to this suit, Lazarus Healthcare, LLC ("Lazarus") acquired ownership of Camillus Specialty Hospital, LLC ("Camillus"),[2] a long-term acute care ("LTAC") hospital in Gretna, Louisiana. Charles Matthews is the sole owner of Lazarus.

In the fall of 2012, a dispute developed between Camillus and the landlord of the building that housed the hospital.  During the course of that dispute, Matthews began searching for another facility to house Camillus.  While he

---

[1] Fed. R. Civ. Pro. 8(a) (emphasis added).

[2] Camillus is referred to in the Complaint by varying names, including, Camillus Hospital, Camillus Specialty Hospital, and Crescent City Specialty Hospital.

attempted to resolve the facility issues, Matthews also sought management assistance.  To that end, Matthews retained Defendant Red River Healthcare Management Company, LLC ("Red River") to provide management services to Camillus.  Red River is owned and operated by Defendants Jimmy and Connie Morgan ("the Morgans").

Matthews eventually discovered that Louisiana Speciality Hospital, LLC ("LSH"), an LTAC operating in the West Jefferson Medical Center, was closing and he began to explore the possibility of moving Camillus into the space being vacated by LSH.[3]  As Matthews pursued this opportunity, he learned that the then-operator of LSH might be interested in selling the entire facility, including its license to operate.[4]  Matthews retained Defendant Steve Sullivan, an attorney, to negotiate the terms of the sale.  Defendant Michael Schulze allegedly assisted Sullivan with the preparation of various documents.[5]  Plaintiffs claim that Sullivan and Schulze are employed by several named law firms ("Law Firm Entities").[6]

Plaintiffs claim that, during the negotiations to purchase LSH, Sullivan began conspiring with the other Defendants to deprive Matthews of the opportunity to purchase LSH.  Despite the alleged conspiracy, WJLT Hospital,

---

[3] In the Complaint LSH is referred to as West Jefferson LTAC, Jefferson Extended Care, Louisiana Specialty Hospital, and Jefferson LTAC.

[4] Owning LSH and its medicare billing number provided several business advantages not otherwise available to Camillus.

[5] Schulze is referred to in the Complaint as Schulze, Schultz, and Schulz.  It appears that "Schulze" is the correct spelling.

[6] The "Law Firm Entities" named in the Complaint are Sullivan, Stolier and Resor; Sullivan and Stolier; and, Sullivan, Stolier and Knight.

LLC ("WJLT") was formed to purchase LSH.  Matthews held a 91.1% ownership interest in WJLT, Sullivan held a 4.9% interest, and another individual held the remaining 4%.  WJLT  purchased LSH from the hospital's previous owner.  As part of the contract to purchase LSH, Plaintiffs claim that Matthews was forced to appoint Red River as the manager of WJLT and divest himself of his interest in St. Charles Rehabilitation Hospital, LLC.[7]

After LSH was purchased, Plaintiffs claim that Sullivan and Schulze engaged in a series of fraudulent acts designed to mislead Matthews into believing that LSH was nearly insolvent.  Plaintiffs allege that Defendants then exploited this situation by coercing Matthews into signing a power of attorney ("Power of Attorney") granting James Morgan the authority to sell LSH.  After Matthews signed the Power of Attorney, ownership of LSH was transferred to JLTAC, LLC ("JLTAC"), an LLC owned by Sullivan and his law partner, Defendant Jack Stolier.  The contract of sale was  executed by Morgan, acting on behalf of WJLT pursuant to the Power of Attorney.

Plaintiffs explain that, shortly after the Power of Attorney was executed, LSH received a payment of nearly $800,000.  Plaintiffs allege that Defendants knew about the pending payment but deliberately concealed it from Matthews to secure his consent to the sale.  Plaintiffs assert that Matthews would never have executed the Power of Attorney had he known that LSH was in fact financially stable.

---

[7] Prior to the events at issue, Matthews sold his ownership interest in the St. Charles hospital to an unrelated third party.  Plaintiffs claim that Matthews was forced to assign his right to the proceeds of that sale to Defendants as part of the purchase of LSH.

4

Plaintiffs also allege that, during the brief time that Matthews owned LSH, Camillus made several loans to LSH.  After JLTAC acquired ownership of LSH, Matthews demanded repayment of the loans on behalf of Camillus. Plaintiffs claim that, after Matthews demanded repayment, Defendants engaged in a second conspiracy in which they fraudulently divested Matthews of his ownership interest in Camillus, thus depriving him of the proceeds of the loans. Ultimately, Plaintiffs request that the Court undo a series of transactions and place Matthews in full ownership of both Camillus and LSH.  Plaintiffs also seek damages for the various alleged wrongful acts of Defendants.

After the Court's ruling on the first motion, the following claims remained: (1) a fraud claim, sounding in tort, against Sullivan and the Morgans; (2) a claim to nullify the Power of Attorney, and any contracts executed pursuant to the Power of Attorney, on the basis of fraud; (3) breach of fiduciary duty claims against the Morgans, Red River, Sullivan, and the Law Firm Entities; (4) a breach of contract claim related to the contract selling LSH to JLTAC; (5) a legal malpractice claim against Sullivan and the Law Firm Entities; (6) negligence claims against the Morgans and Red River; and (7) claims for violations of Louisiana and federal securities laws.

Plaintiffs have taken two separate actions in an effort to revive some of the claims dismissed by the Court.  First, they have filed a Motion for Reconsideration.  In the Motion for Reconsideration, Plaintiffs ask the Court to reinstate the following claims:

> 1) All claims brought on behalf of St. Charles Rehabilitation

Hospital, LLC

2) All claims brought on behalf of Lazarus Healthcare, LLC

3) All claims brought on behalf of WJLT Hospital, LLC

4) All claims brought on behalf of Camillus Specialty Hospital, LLC

5) All claims brought on behalf of Louisiana Specialty Hospital, LLC

6) Claims against Stolier for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, and negligence

7) Breach of contract claims for breach of a legal services agreement, an executive services agreement, and several promissory notes

8) A legal malpractice claim against Schulze

9) Unjust enrichment claims pled in the alternative

10) A claim seeking to impose solidary liability on Stolier for the alleged actions of Sullivan and the Law Firm Entities.

Second, Plaintiffs filed an Amended Complaint that purports to assert/reassert the following claims:

1) A claim against Stolier for aiding and abetting breach of fiduciary duty

2) A breach of contract claim for breach of an executive services agreement

3) A breach of contract claim for breach of several promissory notes

4) Legal malpractice claims against Schulze and Stolier

5) A claim brought by Lazarus Healthcare, LLC for "reduction in value"

6

> 6) A claim for mental anguish

Defendants oppose the Motion to Reconsider and seek dismissal of all claims asserted in the Amended Complaint.  The Court will address the Motion to Reconsider first, followed by the Motions to Dismiss the Amended Complaint.

## LEGAL STANDARD

### I. Motion to Reconsider

While the Federal Rules of Civil Procedure do not explicitly provide for a "motion for reconsideration," courts routinely consider such motions.[8]  Motions so denominated are assessed under Rules 54(b), 59, and 60.[9]  Because Rules 59 and 60 only apply to final judgments, a motion to reconsider that challenges an interlocutory order is analyzed pursuant to Rule 54(b).[10]

Rule 54(b) permits the district court to reconsider an interlocutory order for any reasons it deems sufficient.[11]  Courts in this District generally analyze motions to reconsider interlocutory orders under Rule 59(e).[12]

A Rule 59(e) motion challenges the correctness of a judgment, or in this

---

[8] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc).

[9] *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, No. 10–CV–1842, 2012 WL 3034707, at *1 (N.D. Tex. July 25, 2012).

[10] *Gulf Fleet Tiger Acquisition, LLC v. Thoma–Sea Ship Builders, LLC*, 282 F.R.D. 146, 151–52 (E.D. La. 2012).

[11] *United States v. Randa*, 709 F.3d 472, 479 (5th Cir. 2013).

[12] *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09–4369, 2010 WL 1424398, at *4 n.54 (E.D. La. Apr. 5, 2010) (collecting cases); *Gulf Fleet*, 282 F.R.D. at 152 n.40 (same).

case, an interlocutory order.[13]   Such motions are not "the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[14]   Instead, Rule 59(e) serves the narrow purpose of correcting "manifest error[s] of law or fact or . . . present[ing] newly discovered evidence."[15] Altering, amending, or reconsidering a judgment "[i]s an extraordinary remedy that should be used sparingly."[16]   While district courts have "considerable discretion" in deciding a Rule 59(e) motion,[17] denial is favored.[18]

## II. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[19]   A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[21]   The court need not, however,

---

[13] *See In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).

[14] *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[15] *Advocare Int'l, LP v. Horizon Labs., Inc.*, 524 F.3d 679, 691 (5th Cir. 2008) (internal quotation marks omitted).

[16] *Templet*, 367 F.3d at 479.

[17] *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).

[18] *See S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[20] *Id.*

[21] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

accept as true legal conclusions couched as factual allegations.[22] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[23]  The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[24]

## LAW AND ANALYSIS

The Court will address the Motion for Reconsideration first, followed by the Motions to Dismiss.

### I. Motion for Reconsideration

*A. Claims not briefed*

Plaintiffs' Motion indicates that they seek reconsideration of the Court's order dismissing claims purportedly brought on behalf of St. Charles Rehabilitation Hospital, LLC and Camillus Specialty Hospital, LLC.  Plaintiffs' did not, however, brief this request.  Therefore, the Court declines to reconsider its ruling dismissing those two entities.

*B. Claims brought by Lazarus Healthcare, LLC*

Plaintiffs request that the Court reconsider its order dismissing claims brought on behalf of Lazarus.  In the First Order, the Court held that Matthews

---

[22] *Iqbal*, 556 U.S. at 678.

[23] *Jones v. Bock,* 549 U.S. 199, 215 (2007).

[24] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

had procedural capacity to bring claims on behalf of Lazarus but that he had expressly disclaimed any such claims. Instead, Matthews attempted to assert claims on behalf of his membership interest in Lazarus. Now, Matthews argues that Lazarus is bringing an action directly. He claims that the allegations in the Amended Complaint clearly set forth a cause of action on Lazarus's behalf.

This argument does not seek reconsideration of the Court's Order so much as a declaration that the Amended Complaint cures the deficiencies identified in the Court's Order. Accordingly, in so far as Matthews requests reconsideration of the Court's prior holding that the Complaint, prior to the amendment, did not state a cause of action on behalf of Lazarus, reconsideration is denied. The merits of Matthews' contention that the Amended Complaint now states a cause of action is more properly addressed in connection with the Motions to Dismiss. There remains one procedural obstacle, however, to the Court's consideration of Lazarus's claims in the Amended Complaint. The Court expressly denied Matthews leave to amend claims brought on behalf of Lazarus. The Court will, therefore, grant reconsideration in part. The Court amends its prior order to permit Matthews to amend the Complaint to assert claims on behalf of Lazarus. Since Matthews has already done this without the Court's leave, no further amendment is required.

*B. Claims brought by WJLT Hospital, LLC*

Plaintiffs request reconsideration of the dismissal of claims brought on behalf of WJLT Hospital, LLC. Plaintiffs argue, and Defendants concede, that the Court made a factual error in the First Order. The Court believed, based on

10

the allegations in the Complaint, that the controlling 91.1% ownership interest in WJLT was owned by Lazarus. Based on this conclusion, the Court held that Matthews lacked procedural capacity to bring claims on behalf of WJLT. It is now clear that Matthews personally owns WJLT. Additionally, he is now the manager of WJLT and thus has procedural capacity to bring claims on behalf of the LLC.[25] Therefore, the Court grants reconsideration in part. Matthews is granted leave to assert claims on behalf of WJLT directly against Defendants. Because Matthews has already done this in the Amended Complaint, no further amendment is required.

*C. Claims brought by Louisiana Specialty Hospital, LLC*

Plaintiffs request the Court to reconsider its ruling that Matthews lacks procedural capacity to bring claims on behalf of LSH. In its ruling, the Court noted that Matthews never had a direct ownership interest in LSH and that none of Matthews companies currently have any ownership interest in LSH, directly or otherwise. Plaintiffs have presented no new arguments in support of their request that they be permitted to bring claims on behalf of a company in which they have no direct or indirect ownership interest. Nor have Plaintiffs articulated what claims they wish to bring on LSH's behalf. Accordingly, reconsideration is denied.

---

[25] Defendants argue that Matthews is not the manager of WJLT. The evidence before the Court suggests otherwise. WJLT's operating agreement provides that Matthews is the manager of WJLT and that, after July 2013, has the sole authority to appoint or remove alternate managers. R. Doc. 77-2. Furthermore, the Louisiana Secretary of State's Website, of which the Court may take judicial notice, *see In re Katrina Canal Breaches Consol. Lit.*, 533 F. Supp. 2d 615, 632 (E.D. La. 2008) (collecting cases), indicates that Matthews is the manager of WJLT.

*D. Claims against Stolier for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, and negligence*

Plaintiffs request reconsideration of the Court's holding that they had not stated any claims against Stolier.  Because Plaintiffs have amended their Complaint in an effort to adequately plead claims against Stolier, reconsideration is denied as moot.

*E. Breach of contract claims*

Plaintiffs seek reconsideration of the Court's order dismissing several breach of contract claims.  Plaintiffs argue that the Court erred in dismissing their claims for breach of (1) a legal services agreement, (2) an executive services agreement, and (3) several promissory notes.  Plaintiffs have amended the Complaint with regard to the second and third contracts, therefore reconsideration, as to those contracts, is denied as moot.

As to the breach of the legal services agreement, Plaintiffs devote much of their argument to the Louisiana Rules of Professional Conduct.  Plaintiffs do not, however, offer any cogent argument that the Court's order dismissing the claim was erroneous.  Accordingly, reconsideration is denied.

*F. Legal malpractice claim against Schulze*

Plaintiffs move the Court to reconsider its order dismissing their malpractice claim against Schulze.  Because Plaintiffs have amended their Complaint in an effort to adequately plead this claim, reconsideration is denied as moot.

12

G. *Unjust enrichment*

Plaintiffs urge the Court to reconsider its dismissal of their unjust enrichment claim.  In  support of this request, Plaintiffs accuse the Court of conducting "a cursory review of some of the older jurisprudence."[26]  It appears that Plaintiffs are referring to the Court's reliance on the Louisiana Supreme Court's 2010 decision in *Walters v. MedSouth Record Management, LLC.*[27]  In *Walters*, the Louisiana Supreme Court held that an unjust enrichment claim is not available under Louisiana law if the plaintiff is able to plead any other viable claim.[28]  In the First Order, the Court, relying on *Walters*, dismissed Plaintiffs' unjust enrichment claim because the remedy that Plaintiffs sought on the unjust enrichment claim was available pursuant to other, validly pled claims.

Plaintiffs do not argue that the Court misread or misapplied *Walters*. Instead, Plaintiffs argue that this "older jurisprudence" has been overruled by the Restatement of Restitution and Unjust Enrichment (Third).  This argument is rejected.

Simply put, the Restatement is not the law in Louisiana.  Indeed, it appears that the Restatement of Unjust Enrichment has been cited by a Louisiana court precisely once.[29]  This 1976 case does not purport to adopt the Restatement as the law in Louisiana.  Additionally, there is no indication that the Supreme Court's decision in *Walters* is incorrect.  *Walters* relied on Louisiana

---

[26] Doc. 81, p. 10.

[27] 38 So. 3d 243, 244 (La. 2010).

[28] *Id.*

[29] *Harp v. Town of Lake Providence*, 338 So. 2d 169, 171 (La. Ct. App. 2d Cir. 1976).

Civil Code article 2298, which provides that "[the unjust enrichment remedy] is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule."[30]  Louisiana courts have long held that unjust enrichment is only available if the law provides no other remedy.[31]  Thus, it appears that the Louisiana Supreme Court's opinion in *Walters* represents nothing more than a faithful application of long-settled Louisiana law.  Furthermore, *Walters* has been faithfully applied by Louisiana's lower appellate courts.[32]  In sum, there is absolutely no indication that *Walters* incorrectly applied Louisiana law.  In light of the overwhelming authority supporting this Court's decision to dismiss Plaintiffs' unjust enrichment claim, reconsideration is denied.

### H. Solidary liability

Finally, Plaintiffs request that the Court reconsider its holding that Plaintiffs have not pled facts sufficient to support the imposition of solidary liability on Stolier.  Because Plaintiffs have amended their Complaint in an effort to adequately plead this claim, reconsideration is denied as moot.

---

[30] La. Civ. Code. art. 2298.

[31] *See, e.g.*, *Roberson Adver. Serv., Inc. v. Winnfield Life Ins. Co.*, 453 So. 2d 662, 665 (La. Ct. App. 5 Cir. 1984) (citing *Minyard v. Curtis Products, Inc.*, 205 So.2d 422 (La. 1967)).

[32] *See Pinegrove Elec. Supply Co. v. Cat Key Const., Inc.*, 88 So. 3d 1097, 1101–02 (La. Ct. App. 5 Cir. 2012) (relying on *Walters* to dismiss unjust enrichment claim because the plaintiff had pled alternative remedies); *Audio Plus, Inc. v. Lombardino*, 105 So. 3d 725, 730 (La. Ct. App. 2d Cir. 2012) (relying on *Walters* to bar plaintiff from asserting unjust enrichment claim, notwithstanding dismissal of contract claim, because contract claim had been properly pled); *Insulation Technologies, Inc. v. Indus. Labor & Equip. Servs., Inc.*, 122 So. 3d 1146, 1150–51 (La. Ct. App. 4 Cir. 2013) (relying on *Walters* to affirm dismissal of unjust enrichment claim based on availability of other legal remedies).

14

## II. Claims Alleged in the Amended Complaint

### A. Aiding and abetting breach of fiduciary duty

Plaintiffs contend that Stolier is liable for aiding and abetting Sullivan's and Morgan's breaches of fiduciary duty. As this Court previously explained, "In the absence of a conspiracy, there is no distinct cause of action for aiding and abetting under Louisiana law."[33] Additionally, "conspiracy is not a substantive tort in Louisiana."[34] "Instead, it is the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part that constitutes the actionable elements of a claim."[35] Therefore, Plaintiffs cannot assert an aiding and abetting claim against Stolier. At best, Plaintiffs may assert a claim that Stolier conspired with Sullivan and Morgan to breach a fiduciary duty owed to Matthews. Plaintiffs have not, however, pled facts sufficient to support such a claim.

The Court previously held that Plaintiffs had not pled a breach of fiduciary duty claim against Stolier. The Amended Complaint does not attempt to assert such a claim, instead Plaintiffs argue that Stolier is solidarily liable with Sullivan and Morgan for their actions. Plaintiffs do not, however, plead any facts from which this Court can conclude that Stolier conspired with Sullivan or Morgan. There is no allegation that Stolier agreed with Sullivan and/or Morgan

---

[33] *Guidry v. Bank of LaPlace*, 661 So. 2d 1052, 1057 (La. Ct. App. 4 Cir. 1995); *accord Stephens v. Bail Enforcement of Louisiana*, 690 So. 2d 124, 130 (La. Ct. App. 1 Cir. 1997).

[34] *Wooley v. Lucksinger*, 14 So.3d 311, 435 (La. Ct. App. 1 Cir. 2008).

[35] *Crutcher-Tufts Resources, Inc. v Tufts*, 38 So.3d 987, 991 (La. Ct. App. 4 Cir. 2010); *accord New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 40 So. 3d 394, 408 (La. Ct. App. 4 Cir. 2010).

to defraud Matthews.  Furthermore, the Complaint is devoid of any allegation that Stolier took an affirmative step in furtherance of a conspiracy.  Rather, the Complaint merely suggests that Stolier should have stopped the fraud because he was the managing "partner" of the Law Firm Entities.[36]  The Complaint does not, however, allege that Stolier had actual knowledge of the fraud.  In the absence of an allegation that Stolier knew of the fraud, he cannot possibly have conspired to participate in the activity.  Accordingly, this claim is dismissed.

*B. Breach of contract*

Plaintiffs assert several breach of contract claims.  First, Plaintiffs attempt to assert a claim for breach of an Executive Services Agreement.  Second, Plaintiffs attempt to assert claims for the breach of three promissory notes that were executed as part of the sale of LSH from WJLT to JLTAC.  The Court will address each claim separately.

<u>1) Executive Services Agreement</u>

Plaintiffs seek to hold Defendants liable for breach of an Executive Services Agreement dated October 11, 2012.  Plaintiffs allege that the agreement was between LSH and Matthews.  Pursuant to the agreement, LSH was obligated to pay Matthews a salary of $20,000 per month.  Plaintiffs claim that Matthews has not been paid pursuant to the agreement.

According to the Amended Complaint, the only two parties to the contract were LSH and Matthews.  LSH is not, however, named as a defendant in this

---

[36] The Law Firm Entities do not appear to be organized as partnerships.  Rather it is the Court's understanding that the Entities are a professional law corporation, a limited liability company, and the former iterations of those entities.

16

action.  It is well established that Louisiana provides no action for breach of contract in the absence of privity between the parties.[37]  The Amended Complaint, Plaintiffs' Motion for Reconsideration, and Plaintiffs' Opposition to the Motions to Dismiss all contain conclusory assertions that Defendants are liable for LSH's failure to honor the contract.  Plaintiffs have not, however, cited any legal authority for this proposition.  Because Plaintiffs have not cogently identified a legal theory that permits them to assert a breach of contract claim in the absence of privity, this claim is dismissed.

### 2) Breach of the Promissory Notes

Plaintiffs attempt to assert claims for the breach of three promissory notes.  The first two notes are similar for all purposes relevant to these Motions. The notes provide that LSH and JLTAC are solidarily liable to WJLT for various amounts.  Plaintiffs claim that all of the Defendants are liable for LSH and JLTAC's failure to honor the terms of the notes.  Because Plaintiffs have not provided any legal authority supporting the existence of a breach of contract claim in the absence of privity, the claim for breach of the first two notes is dismissed as to all defendants *except* JLTAC.  As explained above, the Court has permitted Plaintiffs to amend the Complaint to assert claims on behalf of WJLT. Therefore, the Court will permit a breach of contract action to survive between the parties to the notes, WJLT and JLTAC.

The last promissory note was executed on behalf of WJLT and in favor of

---

[37] *Louisiana Ins. Guar. Ass'n v. Rapides Parish Police Jury*, 182 F.3d 326, 331 (5th Cir. 1999); *Long v. Jeb Breithaupt Design Build Inc.*, 4 So. 3d 930, 941 (La. Ct. App. 2 Cir. 2009); *Pearl River Basin Land & Dev. Co. v. State ex rel. Governor's Office of Homeland Sec. & Emergency Preparedness*, 29 So. 3d 589, 592 (La. Ct. App. 1 Cir. 2009).

17

Matthews.  Plaintiffs claim that WJLT, a named *plaintiff*, has not honored the terms of the note and that Defendants are liable for this failure.  Thus, it appears that Plaintiffs are attempting to hold Defendants liable for breaching a contract between two Plaintiffs.  Plaintiffs do not, however, cite any legal authority supporting the existence of such a bizarre cause of action.  Therefore, because none of the Defendants are parties to this note, Plaintiffs claim for its breach dismissed.

### C. Legal malpractice

Plaintiffs attempt to assert legal malpractice claims against both Schulze and Stolier.  To plead a claim for legal malpractice under Louisiana law a plaintiff must allege: "(1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence."[38] The Court will address the allegations against Schulze and Stolier in turn.

### 1) Schulze

Plaintiffs claim that Schulze was negligent because (1) he failed to advise Defendants that the Executive Services Agreement, which Schulze had prepared, was valid and enforceable, (2) he failed to ensure that the agreement was enforced, and (3) he failed to investigate or address the conflict that existed between the firm and Matthews.  Defendants do not dispute that Schulze represented Matthews.  Nor do they seriously dispute that the failure to enforce a contract and investigate a conflict of interest may constitute negligent

---

[38] *MB Indus., LLC v. CNA Ins. Co.*, 74 So. 3d 1173, 1184 (La. 2011).

representation of a client.  Instead, Defendants argue that the negligent actions alleged by Plaintiffs were outside the scope of Schulze's representation of Matthews.  Obviously, Plaintiffs disagree.  The Court must, however, view the allegations in the light most favorable to Plaintiffs in ruling on a motion pursuant to Rule 12(b)6.[39]  Therefore, the Court finds that Plaintiffs have pled a legal malpractice claim against Schulze.

2) Stolier

As to Stolier, however, the Court reaches a different conclusion.  In the first order, the Court held that Plaintiffs had pled no facts supporting their contention that an attorney-client relationship existed between Stolier and Matthews. The Amended Complaint suffers from the same infirmity. While the Amended Complaint is riddled with conclusory allegations that Stolier was Matthews's lawyer, it is still devoid of any facts supporting such a conclusion. It appears that Plaintiffs argue that Stolier was Matthews's lawyer because Matthews was a client of Stolier's law firm.  Plaintiffs have not, however, cited any legal authority supporting their assertion that when a client retains an attorney in a firm an attorney-client relationship is formed with every single lawyer in the firm.  The Court declines to create such a rule in the absence of precedent.   Accordingly, Plaintiffs' malpractice claim against Stolier is dismissed.

*D. Lazarus Healthcare, LLC's claim for "reduction in value"*

In the Amended Complaint, Plaintiffs seek to assert damages claims on

---

[39] *Lormand*, 565 F.3d at 232.

behalf of Lazarus for two distinct acts of fraud.  First, Plaintiffs seek to recover damages for the loss of Lazarus's interest in Camillus.  Second, Plaintiffs seek to recover damages for the loss of Lazarus's interest in St. Charles Rehabilitation Hospital.  The Court will address each transaction in turn.

### 1) Lazarus's Loss of CSH

Plaintiffs claim that, after the sale of LSH to JLTAC.  Matthews, in his capacity as manger of Camillus, demanded repayment of several debts owed to Camillus by JLTAC.  After Matthews demanded repayment, he was informed by Defendants that he would be unable to collect on the debts owed to Camillus because of Camillus's debt.  Defendants were allegedly referring to a promissory note executed in connection with the original sale of Camillus to Lazarus, wherein Lazarus agreed to pay $500,000 to the previous owner of Camillus. Plaintiffs contend that the promissory note was subject to a suspensive condition that never occurred, thus rendering the note legally unenforceable.  Plaintiffs claim that Defendants knew that the note was unenforceable but choose to execute on the note anyway.  The note was secured by Lazarus's ownership interest in Camillus.   After Defendants demanded payment on the note, Plaintiffs claim that Defendants conducted an illegal creditors auction at which they sold Lazarus's interest in Camillus to themselves.  Defendants then filed documents with the Louisiana Secretary of State documenting the transfer of ownership.

Plaintiffs insist that the creditors auction was a sham from the beginning and that Defendants were fully aware of the illegality of their actions.  Plaintiffs

do not, however, plead a cause of action for fraud.  The elements of a Louisiana fraud or intentional misrepresentation claim are: 1) a misrepresentation of a material fact; 2) made with intent to deceive; and 3) causing justifiable reliance with resultant injury.[40]  While Plaintiffs have likely alleged that Defendants misrepresented a material fact—that the promissory note was legally enforceable—Plaintiffs do not allege that they relied on this misrepresentation. Rather, Plaintiffs contend that they never believed that the note was enforceable.  Because Plaintiffs have not alleged that they justifiably relied on any misrepresentation, the fraud claim is dismissed.[41]

### 2) Lazarus's Loss of Interest in St. Charles Rehabilitation Hospital

As part of the contract to purchase LSH, Plaintiffs claim that Lazarus was forced to divest itself of its interest in St. Charles Rehabilitation Hospital, LLC. Specifically, Plaintiffs allege that, prior to the facts giving rise to this case, Lazarus sold its interest in St. Charles Rehabilitation Hospital.  As part of that sale, Lazarus was entitled to receive monthly payments totaling $320,000. Lazarus claims that it was forced to assign its rights to these payments to a third party before Defendants would permit WJLT to purchase LSH.  Lazarus now attempts to claim that Defendants are liable to it for fraud.  Lazarus does not, however, identify any misrepresentation of material fact that induced it to

---

[40] *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008).

[41] The Court notes that these facts would likely support a cause of action for breach of the promissory note and security agreement.  For reasons that escape the Court's understanding, Plaintiffs have not attempted to plead such a claim.  Nor could they, as Plaintiffs have not attempted to name the other party to the contract, Camillus Hospital, LLC, as a defendant in this action.

transfer its interest in the sale payments.   In the absence of such a misrepresentation, a fraud claim cannot persist.   Accordingly, this claim is dismissed.

### E. Mental anguish

Finally, Plaintiffs assert a cause of action for mental anguish.  Defendants argue that there is no independent action for mental anguish under Louisiana law and that Plaintiffs are not entitled to mental anguish as an element of damage.   Plaintiffs have not cited any legal authority in support of the proposition that Louisiana law permits a separate cause of action for mental anguish.  Therefore, Plaintiffs' mental anguish claim is dismissed to the extent that it constitutes a separate cause of action.  Nonetheless, Defendants correctly concede that mental anguish damages are sometimes available in connection with tort and breach of contract claims.[42]   Therefore, the Court will permit Plaintiffs to pursue mental anguish damages to the extent that those damages are available pursuant to Plaintiffs' surviving claims.

### III. Surviving Claims

In the interest of clarity, the Court pauses to specifically delineate which of Plaintiffs claims remain pending.  Those claims are: (1) a fraud claim, sounding in tort, against Sullivan and the Morgans; (2) a claim to nullify the Power of Attorney, and any contracts executed pursuant to the Power of Attorney, on the basis of fraud; (3) breach of fiduciary duty claims against the Morgans, Red River, Sullivan, and the Law Firm Entities; (4) a breach of

---

[42] Defendants argue that such circumstances are not met in this case.  The Court declines to resolve this issue at this stage of the litigation.

contract claim related to the contract selling LSH to JLTAC; (5) a breach of contract claim on behalf of WJLT for breach of the two promissory notes executed by JLTAC; (6) a legal malpractice claim against Sullivan, Schulze, and the Law Firm Entities; (7) negligence claims against the Morgans and Red River; and (8) claims for violations of Louisiana and federal securities laws. All claims against Stolier are dismissed with prejudice. All claims brought by Lazarus Healthcare, LLC are dismissed with prejudice. All claims purportedly brought on behalf of St. Charles Rehabilitation Hospital, LLC, Camillus Specialty Hospital, LLC, and Louisiana Specialty Hospital, LLC are dismissed without prejudice based on the Court's holding that Plaintiffs lack procedural capacity to sue on behalf of those entities. All claims not specifically designated as surviving this Order are dismissed without prejudice.

## IV. Leave to Amend

The Court has dismissed several of Plaintiffs' claims for the second time. Courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim.[43] Plaintiffs have been given such an opportunity and have still failed to properly plead the claims at issue in this Order. Accordingly, the Court will not grant Plaintiffs further leave to amend the Complaint. This litigation has lingered in the pleadings stage for 16 months, it is time for the parties to begin discovery.

---

[43] *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

**CONCLUSION**

For the foregoing reasons, the Motions are GRANTED IN PART.


New Orleans, Louisiana, this 15th day of April, 2015.


_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**