UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHARLES MATTHEWS, ET AL., | ) | CIVIL ACTION |
| Plaintiffs | ) | |
| | ) | NO. 13-6638 |
| VERSUS | ) | |
| | ) | SECTION "H" (2), JUDGE MILAZZO |
| JACK STOLIER, ET AL., | ) | |
| Defendants | ) | MAGISTRATE JUDGE WILKINSON |
| | ) | |

**INITIAL DISCLOSURES OF DEFENDANTS STEPHEN SULLIVAN;
SULLIVAN STOLIER, A PARTNERSHIP; SULLIVAN STOLIER AND RESOR, A
PROF. LAW CORP; SULLIVAN STOLIER KNIGHT L.C.
D/B/A THE HEALTH LAW CENTER; AND MICHAEL SCHULZE**

Defendants Stephen Sullivan; Sullivan Stolier, A Partnership; Sullivan Stolier and Resor, A Prof. Law Corp; Sullivan Stolier Knight L.C. d/b/a The Health Law Center; and Michael Schulze (collectively, "Defendants"), through undersigned counsel and reserving all rights, objections, and privileges, and without waiver of same, submit their Initial Disclosures pursuant to Federal Rule of Civil Procedure 26 concerning claims against them by Plaintiffs Charles and Sherita Matthews ("Matthews") and WJLT Hospital LLC ("WJLT")(collectively "Plaintiffs").

These Initial Disclosures are made without waiver of (1) any attorney-client, work product, or other privilege which may apply to communications with the identified witnesses and/or certain specific documents contained in the general categories of documents identified above; (2) any objections on relevance or other grounds Defendants may have to production and/or introduction in evidence of any documents identified in these initial disclosures; or (3) the rights afforded by Federal Rule Civil Procedure 12.  Defendants further reserve all the right to

amend or supplement these Initial Disclosures as they obtain additional information during the course of these proceedings.

## I.        INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Based on the information available to date, the following individuals likely have discoverable information that Defendants may use to support their defenses, other than for purposes for impeachment:

1.      Defendant Stephen M. Sullivan,
        through his counsel of record,
        Richard C. Stanley
        Thomas P. Owen, Jr.
        Cassandra R. Hewlings
        Stanley, Reuter, Ross, Thornton & Alford, LLC
        909 Poydras Street, Suite 2500
        New Orleans, Louisiana 70112
        Phone:  (504) 523-1580

        **Subject Matter:**   All pending allegations asserted against him and relevant defenses, including but not limited to, his alleged representation of Plaintiffs; the purchase and sale of Louisiana Specialty Hospital ("LSH") by WJLT Hospital, LLC ("WJLT"); issues related to the management and/or finances of LSH; the attempts to sell LSH to third parties; the sale of LSH to Jefferson LTAC, L.L.C. ("JLTAC"); and his alleged knowledge of LSH's receipt of PIP payments.

2.      Defendant Michael Schulze
        through his counsel of record,
        Richard C. Stanley
        Thomas P. Owen, Jr.
        Cassandra R. Hewlings
        Stanley, Reuter, Ross, Thornton & Alford, LLC
        909 Poydras Street, Suite 2500
        New Orleans, Louisiana 70112
        Phone:  (504) 523-1580

        **Subject Matter:**   All pending allegations asserted against him and relevant defenses, including but not limited to, his alleged representation of Plaintiffs; the purchase and sale of LSH by WJLT; the attempts to sell LSH to third parties; and his alleged knowledge of LSH's receipt of PIP payments.

3.      Thuy Huynh,
        Attorney with Defendant Sullivan Stolier Knight, L.C.,
        through its counsel of record,
        Richard C. Stanley
        Thomas P. Owen, Jr.
        Cassandra R. Hewlings
        Stanley, Reuter, Ross, Thornton & Alford, LLC
        909 Poydras Street, Suite 2500
        New Orleans, Louisiana 70112
        Phone:  (504) 523-1580

        **Subject Matter:**  Sullivan Stolier Knight, L.C.'s ("SSK") alleged representation of Plaintiffs and LSH's state and federal regulatory applications after being purchased by WJLT.

4.      Plaintiff Charles Matthews,
        Through his counsel of record
        Marie Riccio Wisner,
        Marie Riccio Wisner, Attorney at Law
        700 Camp St.
        New Orleans, LA 70130
        Phone:  (504) 528-9500 ext. 239

        **Subject Matter:**  Plaintiffs' allegations related to the claims pending against Defendants, including but not limited to SSK's representation of him and WJLT; the purchase of LSH by WJLT; the financial situation of WJLT; his knowledge of PIP payments; the attempt to locate third parties to purchase LSH from WJLT; the sale of WJLT to JLTAC; the representation of Plaintiffs by counsel other than SSK; and the alleged damage caused by Defendants.

5.      Sherita Matthews,
        through her counsel of record
        Marie Riccio Wisner
        Marie Riccio Wisner, Attorney at Law
        700 Camp St.
        New Orleans, LA 70130
        Phone:  (504) 528-9500 ext. 239

        **Subject Matter:**  Her alleged involvement in the transactions at issue in the current lawsuit and the damage she allegedly suffered related to Defendants' alleged actions.

6.      Marie Riccio
        Marie Riccio Wisner, Attorney at Law
        700 Camp St.
        New Orleans, LA 70130

Phone:  (504) 528-9500 ext. 239

**Subject Matter:**  Her alleged involvement in the transactions at issue in the current lawsuit, including but not limited to the purchase of LSH by WJLT; WJLT's financial issues; the attempted sale of LSH to third parties; and the sale of LSH to JLTAC.

7.   Chris C. Johnston
     Gachassin Law Firm
     200 Corporate Blvd Ste 103
     Lafayette, LA 70508
     Phone: (337) 235-4576

     **Subject Matter:**  His representation of Plaintiffs in the sale of LSH from WJLT to JLTAC.

8.   Daniel Daigle,
     Manager of Defendant Jefferson LTAC, L.L.C.,
     through its counsel of record,
     Stephen C. Resor
     Amy D. Hotard
     Marcelle Mouledoux
     Salley, Hite, Mercer & Resor, LLC
     One Canal Place – Suite 1710
     365 Canal Street
     New Orleans, Louisiana 70130
     Telephone:    (504) 566-8800

     **Subject Matter:**  His involvement in the purchase of LSH by JLTAC; his knowledge of PIP payments related to LSH; Plaintiffs' financial issues prior to LSH sale to JLTAC; and issues related to the management and finances of LSH after purchase by JLTAC.

9.   Defendant James Fritschen
     through his counsel of record,
     Stephen C. Resor
     Amy D. Hotard
     Marcelle Mouledoux
     Salley, Hite, Mercer & Resor, LLC
     One Canal Place – Suite 1710
     365 Canal Street
     New Orleans, Louisiana 70130
     Telephone:    (504) 566-8800

     **Subject Matter**:  Allegations against him asserted by Plaintiffs.

4

10.     Defendant James Morgan,
        through his counsel of record
        Michael J. Vondenstein, 13116
        E. Stuart Ponder, 30674
        Hailey, McNamara, Hall, Larmann & Papale, L.L.P.
        One Galleria Boulevard, Suite 1400
        Metairie, Louisiana 70001
        Telephone: (504) 836-6500

        **Subject Matter:**   Sale of LSH to WJLT; Red River management agreements;
        operations of LSH after sale of LSH to WJLT, including billing and financial
        issues; discovery of PIP payments.

11.     Defendant Connie Morgan
        through her counsel of record
        Michael J. Vondenstein, 13116
        E. Stuart Ponder, 30674
        Hailey, McNamara, Hall, Larmann & Papale, L.L.P.
        One Galleria Boulevard, Suite 1400
        Metairie, Louisiana 70001
        Telephone: (504) 836-6500

        **Subject Matter:**  Allegations against her asserted by Plaintiffs.

12.     Michael Freeman
        Managing Director
        TFG Consulting, LLC
        8550 United Plaza Blvd., Suite 702
        Baton Rouge, LA  70809
        Phone:  (225) 610-1100

        **Subject Matter**:   LSH's billing and regulatory filings after sale to WJLT,
        including issues regarding DDE access and PIP payments.

13.     Karen Middleton
        Billing Services Manager
        TFG Consulting, LLC
        8550 United Plaza Blvd., Suite 702
        Baton Rouge, LA  70809
        Phone:  (919) 585-2104

        **Subject Matter**:   LSH's billing and regulatory filings after sale to WJLT,
        including issues regarding DDE access and PIP payments.

14.  Michael Rabalais
     Administrator
     United Medical Healthwest - New Orleans, LLC
     3201 Wall Blvd Suite B
     Gretna, LA 70056-7755
     Phone: (504) 433-5551

     **Subject Matter:**  Operations of LSH after sale of LSH to WJLT, including billing
     and financial issues and PIP payments.

15.  Don O'Neal
     Audit Supervisor
     Wisconsin Physicians Service
     1717 W. Broadway
     Madison , Wisconsin  53708
     Phone:  (402) 995-0421, Ext. 50421
     **Subject Matter:**  LSH's federal regulatory filings after sale to WJLT, including
     issues regarding DDE access and PIP.

16.  Nancy Cassagne
     Chief Executive Officer
     West Jefferson Medical Center
     1101 Medical Center Boulevard
     Marrero, Louisiana 70072
     Phone:  (504) 347-5511

     **Subject Matter:**  Lease negotiations and issues involving LSH and West
     Jefferson Medical Center.

17.  Gregory Miller
     Chief Development Officer
     Kindred Healthcare, Inc.
     680 S 4th St
     Louisville, KY 40202-2407
     Phone: (502) 596-7300

     **Subject Matter:**  Operations of LSH, sale of LSH to WJLT, information
     regarding LSH's use of PIP payments, and issues regarding LSH after sale to
     WJLT.

18.  Jeffrey P. Stodghill
     Vice President and Corporate Counsel
     Kindred Healthcare, Inc.
     680 S 4th St
     Louisville, KY 40202-2407

6

Phone: (502) 596-7300

**Subject Matter:**   Operations of LSH, sale of LSH to WJLT, information regarding LSH's use of PIP payments, and issues regarding LSH after sale to WJLT.


19.    David Davis
       VP/ CFO Hospital Division Southeast Region
       Kindred Healthcare, Inc.
       11297 Fallbrook Dr.
       Houston TX 77065-4230
       Phone:  (281) 897-8114

       **Subject Matter:**   Operations of LSH, sale of LSH to WJLT, information regarding LSH's use of PIP payments, and issues regarding LSH after sale to WJLT.


20.    Greg Sassaman
       Senior Vice President of Development
       Restora Healthcare Company, LLC.
       6120 Windward Parkway
       Alpharetta, Georgia 30005
       Phone: 770-821-6240

       **Subject Matter**:  Discussions and negotiations regarding potential purchase of LSH from WJLT.


21.    David LeBlanc
       Chief Executive Officer
       Meridian Healthcare Group
       100 Highland Park Village, Suite 200
       Dallas, Texas 75205
       Phone:  (214) 295-3061

       **Subject Matter**:  Discussions and negotiations regarding potential purchase of LSH from WJLT.


22.    Chris Corrigan
       Corporate Counsel and Chief Compliance Officer
       Cornerstone Healthcare Group
       2200 Ross Avenue
       Dallas, Texas 75201
       Phone: 469-621-6700

**Subject Matter**:  Discussions and negotiations regarding potential purchase of LSH from WJLT.

23.    David Smith
       Chief Executive Officer
       Cornerstone Healthcare Group
       2200 Ross Avenue
       Dallas, Texas 75201
       Phone: 469-621-6700

       **Subject Matter**:  Discussions and negotiations regarding potential purchase of LSH from WJLT.

24.    Kurt J. Schultz
       Chief Financial Officer
       Cornerstone Healthcare Group
       2200 Ross Avenue
       Dallas, Texas 75201
       Phone: 469-621-6700

       **Subject Matter**:  Discussions and negotiations regarding potential purchase of LSH from WJLT.

## II.    KNOWN DOCUMENTS, ELECTRONICALLY-STORED INFORMATION, AND TANGIBLE ITEMS IN SUPPORT OF CLAIMS AND DEFENSES

The following documents, electronically-stored information, and tangible items should be in the possession, custody, or control of Defendants and may be used to support their defenses.

1.    Any client files related to Plaintiffs, including but not limited to any engagement letters, conflict waiver letters, correspondence files, draft documents, executed documents contained therein, as well as timesheets.

2.    Documents related to the formation of WJLT, including the WJLT Articles of Organizations and Operating Agreement.

3.    Documents evidencing communications related to the formation of WJLT and the WJLT Operating Agreement, including the negotiation and discussion of these agreements as well as any draft of same.

4.     Transactional documents related to the sale of LSH to WJLT, including letters of intent, Bill of Sale and Assignment, Distribution, Assumption, and Indemnity Agreement, Promissory Note, Security Agreements, UCC-1 Financing Statements, Continuing Guaranty Agreements, Accounts Receivables, Payment Schedules, and drafts of executed and contemplated agreements regarding same.

5.     Documents evidencing communications related to the negotiation, discussion, and sale of LSH to WJLT

6.     Hospital Administrative Services and Management Agreement between Red River Healthcare Management Company, L.L.C. and LSH.

7.     Documents related to LSH financial issues after purchase by WJLT, including documents evidencing communications regarding same.

8.     Documents evidencing billing issues by LSH after purchase by WJLT, including documents evidencing communications regarding same and obtaining a DDE access number.

9.     Documents related to Stephen Sullivan payroll loan to LSH, including documents evidencing communications regarding same.

10.    Documents evidencing communications, discussions and negotiations with third parties regarding the potential purchase of LSH from WJLT prior to November 30, 2012, including confidentiality agreements and draft letters of intent.

11.    November 30, 2012 document entitled "Confirmation and Acknowledgment, Irrevocable Consent, Power of Attorney and Indemnity."

12.    Documents related to purchase of LSH by JLTAC, including Bill of Sale and Assignment and Promissory Notes.

13.     Documents related to and evidencing communications regarding availability of PIP payments for LSH, obtaining PIP payments from Kindred, Medicare overpayment due to PIP payments, and transfer of PIP payments directly to LSH.

14.     Documents evidencing communications, discussions, and negotiations regarding West Jefferson Medical Center lease, debt, and payment issues.

## III.    COMPUTATION OF DAMAGES

As Defendants claim no damages in this litigation, this section of Initial Disclosures is inapplicable.

## IV.    INSURANCE AGREEMENT

Defendants attach hereto as documents SSK 00001 – SSK 00048, a copy of the following insurance policies under which an insurer may be liable to satisfy all or part of a judgment against one, some, or all of the Defendants in this action or to indemnify or reimburse the payments made to satisfy the judgment:

1.     Axis Pro Lawyers Professional Liability Insurance Policy, Policy No. ENN 717871/01/2012 issued to Sullivan Stolier Kovata Knight LC by AXIS Surplus Insurance Company.

2.     Form Excess Liability Insurance Policy, Policy No. 07308B121APL issued to Sullivan Stolier Kovata Knight LC by Torus Specialty Insurance Company.

3.     Lawyers Professional Liability Insurance, Policy No. WLA308010627400 issued to Sullivan Stolier Knight LC by Westport Insurance Corporation.

4.      Platinum Management Protection Excess Liability, Policy No. 550-101368-7 issued to Sullivan Stoler Knight L.C. by North River Insurance Company.

Respectfully submitted,

 /s/ Thomas P. Owen, Jr.
Richard C. Stanley, 8487
Thomas P. Owen, Jr., 28181
Cassandra R. Hewlings, 35170
STANLEY, REUTER, ROSS,
   THORNTON & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:      (504) 523-1580
Facsimile:      (504) 524-0069
rcs@stanleyreuter.com
tpo@stanleyreuter.com
crh@stanleyreuter.com

Attorneys for Stephen Sullivan; Sullivan Stolier, A Partnership; Sullivan Stolier and Resor, A Prof. Law Corp; Sullivan Stolier Knight L.C. d/b/a The Health Law Center; and Michael Schulze

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above and foregoing has been served upon counsel of record for all parties to this proceeding by email, facsimile, and/or placing same in the United States mail, postage prepaid and properly addressed, this 8th day of July, 2015.

 /s/ Thomas P. Owen, Jr.



## AXIS PRO® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

## DECLARATIONS

THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY AMOUNTS INCURRED AS CLAIM EXPENSES. PLEASE READ THIS POLICY CAREFULLY.

| COMPANY: AXIS Surplus Insurance Company | POLICY NUMBER: ENN 717871/01/2012 |
|---|---|

| Item 1.  Firm:<br>Sullivan Stoller Kovata Knight LC<br>909 Poydras Street, Suite 2600<br>New Orleans, LA  70112<br><br>Predecessor Firm: Sullivan Stoller Resor Kovata LC;<br>          Sullivan Stoller & Resor, APLC; | Item 2.  Policy Period:<br>(A)  Inception Date   June 8, 2012<br>(B)  Expiration Date  June 8, 2013<br>Both dates at 12:01 a.m. Standard Time<br>at the address listed in Item 1. |
|---|---|

**Item 3.** Limits of Liability (Inclusive of **Claim Expenses**):

    a.  $ 5,000,000  each **Claim**

    b.  $ 5,000,000  Aggregate

**Item 4.** Retentions:

    $ 75,000 each **Claim**

**Item 5.** Premium:

    $ 53,652

**Item 6.** Notices to **Company:**

Notice of **Claim(s)** To Be Sent To:
AXIS Professional Insurance
Address: 300 Connell Drive, Suite 8000
        P.O. Box 357
        Berkeley Heights, NJ 07922-0357
        Facsimile:  (908) 508-4389
        USClaimNoticeBH@axiscapital.com

All Other Notices To Be Sent To:
AXIS Professional Insurance
Address: One State Street, Suite 1700
        Hartford, CT  06103
        Toll Free:  (866) 259-5435
        Facsimile:  (860) 707-1725

**Item 7.** Endorsements Effective at Inception:

    SLN-LA (08-09) Policyholder Notice;  No. 1 LM 1101 (08-11) Additional Insured Amendatory Endorsement;  No. 2 SOS-LA (01-04) Service of Suit Clause - Louisiana;

LM 1001 (08-11)

SSK 00001

The Company has caused this policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Company.

_____
Authorized Representative

July 23, 2012
Date

IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and Secretary to be affixed hereto.

Secretary
Andrew Weissert

President
Carlton W. Maner

## NOTICE

This insurance policy is delivered as a surplus lines coverage under the Insurance Code of Louisiana.

In the event of the insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific policies issued by an insurance company authorized to do business in Louisiana.

This surplus lines policy has been procured by the following licensed Louisiana surplus lines broker:

LM 1001 (08-11)

Page 2 of 2

SSK 00002

| Named Insured | | |
|---|---|---|
| Sullivan Stolier Kovata Knight LC | | |

| Policy Number | Policy Period | Issued by (Name of Insurance Company) |
|---|---|---|
| ENN 717871/01/2012 | June 8, 2012 to June 8, 2013 | AXIS Surplus Insurance Company |

## POLICYHOLDER NOTICE

## LOUISIANA

NOTICE:

This insurance policy is delivered as a surplus line coverage under the Insurance Code of the State of Louisiana.

In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific policies issued by an insurance company authorized to do business in Louisiana.

This surplus lines policy has been procured by the following licensed Louisiana surplus lines broker:

_____

Signature of Licensed Louisiana Surplus Lines Broker or Authorized Representative

_____

Printed Name of Licensed Louisiana Surplus Lines Broker

SLN-LA (08-09)

SSK 00003



AXIS PRO®
# LM LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

**THIS IS A CLAIMS MADE POLICY. IT APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE DURING THE POLICY PERIOD AND ANY EXTENDED REPORTING PERIOD, IF APPLICABLE, AS THOSE TERMS ARE DESCRIBED IN THIS POLICY. PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium and in reliance on the statements in the **Application** and subject to all other terms of this policy, the **Company** designated in the Declarations agrees with the **Firm** named in the Declarations, on behalf of all **Insureds**, to the following:

## SECTION I. INSURING AGREEMENT

### A. Insuring Clause

The **Company** will pay on behalf of the **Insureds** all **Loss**, in excess of the applicable **Retention**, resulting from **Claims** for **Wrongful Acts** committed before the expiration of the **Policy Period** that are first made against any **Insured** during the **Policy Period** or the Extended Reporting Period, if exercised.

### B. Defense and Settlement

1. The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **Claim** covered by this policy even if any of the allegations of the **Claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as is deemed necessary by the **Company**. If a **Claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

2. The **Company** shall not settle a **Claim** without the written consent of the **Firm**, which shall not be unreasonably withheld.

3. The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **Claim** after the applicable limit of the **Company's** liability has been exhausted by payment of **Loss** or by any combination thereof, or after the **Company** has deposited the remaining available Limits of Liability into a court of competent jurisdiction. In such case, the **Company** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **Claim** by tendering control of said investigation, defense or settlement of the **Claim** to the **Insured**.

4. If the **Company** recommends a settlement of a **Claim** within the policy's applicable Limit of Liability which is acceptable to the claimant, and the **Insureds** refuse to consent, then the **Company's** liability for all **Loss** on account of such **Claim** shall not exceed the total sum of:

    a. the amount for which the **Company** could have settled such **Claim**, plus **Claim Expense** incurred up to the date of the **Insured's** refusal to consent to such settlement; and

    b. twenty-five percent (25%) of **Loss** incurred in connection with such **Claim** in excess of the amount referenced in paragraph a. above. The remaining seventy-five percent (75%) of any **Loss** in excess of the amount referenced in paragraph a. above will be borne by the **Insured** uninsured and at its own risk.

    However, in no event shall the **Company's** liability exceed the applicable Limit of Liability set forth in Item 3. of the Declarations.

5. The **Company's** duty to pay **Loss** on the **Insured's** behalf ends when the **Company** has exhausted the applicable Limit of Liability in payment of **Loss**.

 © 2011 AXIS Specialty U.S. Services, Inc. All Rights Reserved

SSK 00004

## SECTION II. DEFINITIONS USED IN THIS POLICY

When used in this policy, whether in the singular or plural:

A.  **Application** means each and every signed application, any attachments or supplements to such applications, other materials submitted therewith or incorporated therein and any other such documents, including any warranty letters or similar documents, submitted in connection with the underwriting of this policy or the underwriting of any other lawyers professional liability policy issued by the **Company** or any of its affiliates of which this policy is a renewal or replacement, or which it succeeds in time.  All such applications, attachments and materials are deemed attached to, incorporated into and made a part of this policy.

B.  **Claim** means:

1.  any of the following:

   a.  a written demand against any **Insured** for monetary or non-monetary relief;

   b.  a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

   c.  a written demand for arbitration or mediation;

   d.  a formal civil administrative or civil regulatory proceeding against any **Insured**,  including, but not limited to, a **Disciplinary Proceeding**, commenced by the filing of a notice or charges or similar document or by the entry of a formal order of investigation or similar document;

2.  a written request received by an **Insured** to toll or waive a statute of limitations relating to a matter described in subparagraph 1. above.

   A **Claim** will be deemed to have been first made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand or request, when such demand or request is first received by an **Insured**).

C.  **Claim Expense** means reasonable and necessary legal fees and expenses (other than regular or overtime wages, salaries, fees, benefits, or other compensation of the **Insured Individuals** or the **Firm's** overhead expenses) incurred on behalf of the **Insured** in defending, settling, appealing or investigating **Claims**, and the premiums for appeal, attachment or similar bonds. The **Company**, however, shall have no obligation to apply for or furnish such bonds.

D.  **Company** means the insurance company stated at the top of the Declarations Page.

E.  **Controlled Enterprise** means any business enterprise other than the **Firm** if at the time the alleged **Wrongful Act** occurs:

1.  such enterprise is a publicly traded company and five percent (5%) or more of its issued and outstanding voting stock is owned or controlled, individually or collectively, by the **Firm** or by one or more other **Insured Individuals** or their spouses;

2.  such enterprise is not a publicly traded company and twenty-five percent (25%) or more of the legal and/or equitable ownership of such enterprise is owned or controlled, individually or collectively, by the **Firm** or by one or more other **Insured Individuals** or their spouses; or

3.  such business enterprise is controlled, operated or managed by the **Firm** or by one or more other **Insured Individuals** or their spouses.

   **Controlled Enterprise** does not include a business enterprise in which the ownership, control, operation or management by the **Insured** is exclusively in a fiduciary capacity as an administrator, conservator, executor,

SSK 00005

trustee, guardian, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by the **Firm**.

F. **Disciplinary Proceeding** shall mean a formal investigation or proceeding regarding the **Insured's** adherence to professional standards of conduct before a court, state licensing board, peer review committee, bar association, or other regulatory body.

G. **Firm** means the entity(ies)  , designated in Item 1. of the Declarations.

H. **Insured** means the **Insured Individuals** and the **Firm**.

I. **Insured Individual** means any one or more natural persons who are past, present or future:

1. directors, officers, principals, shareholders, partners, or members of the **Firm**, or their functional equivalent if serving in such a position outside the United States;

2. "counsel" or "of counsel" to the **Firm** and designated as such;

3. individuals compensated by the **Firm** through wages, salary and/or commissions and whose labor or service is directed by the **Firm**, including paralegals, whether such labor or service is on a part-time, temporary, seasonal, or full-time basis;

4. volunteers whose labor or service is directed by the **Firm**; and

5. individuals contracted to perform work for the **Firm** or who are independent contractors for the **Firm**, but only if prior to any **Claim** against such individual the **Firm** has agreed in writing to indemnify such individual for matters within the scope of coverage of this policy.

In the event of death, incompetence, insolvency or bankruptcy of any **Insured Individual**, **Insured Individual** will also mean the estates, heirs, assigns, or other legal representative of the **Insured Individual** if a **Claim** is brought against the legal representative by reason of its status as such, but only if and to the extent the **Claim** would be covered under this policy if brought against the **Insured Individual**.  The **Insured Individual's** legal representative shall not be considered an **Insured Individual** for **Claims** alleging **Wrongful Acts** by the **Insured Individual's** legal representative.

J. **Interrelated Wrongful Acts** means any or all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

K. **Loss** means the amount(s) which the **Insureds** become legally obligated to pay on account of a **Claim**, including damages, judgments, any award of pre-judgment or post-judgment interest, settlement amounts, costs and fees awarded pursuant to judgments, and **Claim Expense**.

**Loss** does not include:

1. any amounts for which the **Insureds** are legally or financially absolved from payment;

2. taxes, fines, penalties or sanctions imposed by law against any **Insured**;

3. return, withdrawal, forgiveness or reduction of any fees or receivables paid to, or charged or chargeable by, an **Insured**;

4. punitive or exemplary damages, or the multiplied portion of multiplied awards;

5. the cost of re-performing or completing any **Professional Services**;

SSK 00006

6.  the cost of compliance with an injunction or any other non-monetary relief; or

7.  any other matters uninsurable under the law applicable to this policy.

L.  **Personal Injury** means libel, slander, disparagement, violation of rights of privacy, false arrest, detention or imprisonment, wrongful entry or eviction, malicious prosecution or abuse of process.

M.  **Policy Period** means the period of time specified in Item 2. of the Declarations, subject to prior cancellation in accordance with Section VI.E. of this policy.

N.  **Professional Services** means services provided to others by an **Insured**:

1.  in the conduct of any business by or on behalf of the **Firm** in its professional capacity as an attorney or notary public;

2.  as an administrator, conservator, executor, escrow agent, trustee, guardian, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by the **Firm**;

3.  as an arbitrator or mediator;

4.  as a member, director or officer of any professional legal association, its governing board, or any of its committees;

5.  as a government affairs advisor or lobbyist; or

6.  as a title insurance agent pursuant to a written agency agreement with a licensed title insurance company,

but only if such services are performed in the name or on behalf of the **Firm** and some or all of the fee, if any, accruing from such services (regardless of whether such fee is actually collected) inures to the benefit of the **Firm**.

O.  **Retention** means the amount stated in Item 4. of the Declarations Page and described in Section III.B. of this policy.

P.  **Wrongful Act** means any actual or alleged:

1.  act, error or omission;

2.  breach of contract for **Professional Services**;

3.  breach of fiduciary duty; or

4.  **Personal Injury**;

committed or attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Professional Services** by any **Insured** or by any other person or entity for whose actions the **Insured** is legally responsible.

## SECTION III. LIMIT OF LIABILITY AND RETENTIONS

A.  **Limit of Liability**

1.  The Limit of Liability stated in Item 3.a. of the Declarations Page for each **Claim** covered under this policy is the most the **Company** will pay for **Loss** arising from any one **Claim** first made during the **Policy Period** or any applicable Extended Reporting Period.

**SSK 00007**

2. The Limit of Liability stated in Item 3.b. of the Declarations Page as the "Aggregate" is the most the **Company** will pay for all **Loss** arising out of all **Claims** made during the **Policy Period** or any applicable Extended Reporting Period. If the Aggregate Limit of Liability is exhausted by payment of **Loss**, the **Company's** obligations under this policy shall be completely fulfilled and extinguished. However, the **Company's** maximum Limit of Liability for all **Loss** arising out of all **Claims** in the form of **Disciplinary Proceedings** made during the **Policy Period** or any applicable Extended Reporting Period shall be $25,000. This amount shall be part of, and not in addition to, the **Company's** maximum Aggregate Limit of Liability as set forth in Item 3.b. of the Declarations Page.

3. **Claim Expense** is part of, and not in addition to, the Limit of Liability set forth in Item 3.b. of the Declarations. The payment by the **Company** of **Claim Expense** reduces and may totally exhaust such Limit of Liability.

**B. Retention**

The **Company** shall be liable for only that part of **Loss** arising from each **Claim** covered under this policy which is excess of the **Retention** set forth in Item 4. of the Declarations. Such **Retention** shall be borne by the **Insureds** uninsured and at their own risk. The **Retention** shall not apply to **Claims** in the form of **Disciplinary Proceedings**.

The Limit of Liability shall not be reduced by the application of the **Retention**. All other rights, duties and obligations under the policy shall remain the same regardless of whether or not the **Retention** has been satisfied.

**C.** All **Claims** arising from the same **Wrongful Act** and/or all **Interrelated Wrongful Acts** shall be deemed one **Claim** for the purpose of applying the Limit of Liability and Retention.

**SECTION IV. EXCLUSIONS**

The **Company** shall not be obligated to pay **Loss** arising from any **Claim** made against any **Insured**:

1. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

   a. any fact, circumstance, transaction, event, or **Wrongful Act** that, before the Inception Date set forth in Item 2. of the Declarations, was the subject of any notice of claim or loss, or notice of potential claim or potential loss, given under any other policy of insurance;

   b. any fact, circumstance, transaction, event, or **Wrongful Act** of which, as of the Inception Date of the first policy written by the **Company** and continuously renewed thereafter, any **Insured** had knowledge and that was reasonably likely to give rise to a **Claim** that would fall within the scope of the insurance afforded by this policy; or

   c. any other **Wrongful Act** whenever occurring, which together with a **Wrongful Act** described in a. or b. above, constitute **Interrelated Wrongful Acts**;

2. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

   a. any demand, suit, or other proceeding pending, or order, decree or judgment entered, against any **Insured** prior to the Inception Date set forth in Item 2. of the Declarations or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

   b. any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, constitute **Interrelated Wrongful Acts**;

3. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any **Loss** sustained by an **Insured** or **Claim** made against an **Insured** as beneficiary or distributee of any trust or estate;

SSK 00008

4. for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any property, including loss of use thereof; but this exclusion shall not apply to any **Claim** directly arising out of a **Wrongful Act**;

5. arising out of any **Insured's** services as a fiduciary within the meaning of the Employee Retirement Income Security Act of 1974, and any amendments, regulations, or orders issued thereto; but this exclusion shall not apply to a **Claim** arising out of **Wrongful Acts** committed by an **Insured** in providing **Professional Services** to a fiduciary as otherwise provided by this policy;

6. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving the performance of any services or duties by any **Insured Individual** on behalf of or in the name of an entity other than the **Firm**; however, this exclusion shall not apply to any **Claim** arising out of a **Wrongful Act** committed by any **Insured** in the course of providing **Professional Services** to such entity;

7. by or on behalf of, in the name or right of, or based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any **Wrongful Act** in connection with any **Controlled Enterprise**;

8. brought or maintained by or on behalf of any **Insured**, but this exclusion will not apply to a **Claim** brought by an **Insured Individual** arising out of insured representation, provided the **Insured Individual** is bringing such **Claim** as a client of the **Firm** and without the solicitation, assistance or participation of any other **Insured**. "Insured representation" shall mean **Professional Services** provided with the prior written consent of the **Firm** by an **Insured Individual** to any other **Insured Individual**;

9. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving the **Insured's** capacity as a title insurance agent where there exists any actual or alleged breach by an **Insured** of authority granted by a title insurance company or agency thereof;

10. based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

    a. the gaining of any profit, remuneration, or advantage to which the **Insured** was not legally entitled; or

    b. any criminal, dishonest, malicious or deliberately fraudulent act, error or omission by an **Insured**;

    if evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by an **Insured**.

    No fact pertaining to, knowledge possessed by or conduct by any **Insured Individual** shall be imputed to any other **Insured Individual** or the **Firm**;

11. based upon or arising out of, directly or indirectly resulting from, in consequence of or in any way involving the **Insured's** actual or alleged direct infringement of any copyright, patent, trademark (including collective or service marks), certification mark, trade secret, trade name, trade dress, misappropriation of ideas or other intellectual property; however, this exclusion does not apply to **Claims** arising out of **Wrongful Acts** in connection with the **Insured's** provision of legal advice to a client of the **Firm**;

12. based upon or arising out of, directly or indirectly resulting from, in consequence of or in any way involving "investment advice" by the **Insured**. "Investment advice" means:

    a. predictions of future performance, warranties, or guarantees regarding specific and identifiable investments;

    b. recommending or inducing others to purchase, sell, or make a particular investment in any identifiable investment;

    c. performing an economic analysis of any investment; or

SSK 00009

d.  actively buying, selling or managing any investment for another (except for the execution of trades or transactions pursuant to a client's express written direction or that of such client's authorized agent).

## SECTION V.  CLAIMS MADE CONDITIONS; EXTENDED REPORTING PERIOD

**A.**  This insurance applies to **Claims** that are first made during the **Policy Period** or as otherwise provided in this Section.  The **Company** will consider a **Claim** to be first made against an **Insured** when a **Claim** is first received by any **Insured**.  For coverage to apply, the **Insured** must provide notice of **Claims** and provide information in accordance with Section VI. GENERAL CONDITIONS, B., Insured's Duties in the Event of a Claim.

**B.  Reporting of Circumstances**

1.  If during the **Policy Period** any **Insured** becomes aware of circumstances which could give rise to a **Claim**, and the **Insured** gives written notice of such circumstances to the **Company** during the **Policy Period**, then any **Claim** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period** in which the circumstances were first reported to the **Company**. No coverage shall be provided for fees and expenses incurred prior to the time such circumstances result in a **Claim**.

2.  The **Insureds** shall, as a condition precedent to exercising their rights hereunder:

    a.  include with any notice of circumstances a description of such circumstances, the nature of the potential **Wrongful Act**, the nature and extent of the potential damages, the names of the potential claimants, and the manner in which the **Insured** first became aware of such circumstances, and

    b.  give the **Company** such additional information and cooperation as it may reasonably require.

3.  Written notice of any **Claim** resulting from circumstances reported in accordance with B.1. and B.2., above, must be given to the **Company** as soon as practicable.

**C.  Extended Reporting Period**

If the **Company** or the **Firm** chooses not to renew or the **Firm** cancels this policy, the **Firm** shall have the right to the following Extended Reporting Period options, upon payment of the additional premium required by the **Company**, following the termination of the **Policy Period** in which to report **Claims** first made during the Extended Reporting Period and arising from **Wrongful Acts** occurring prior to the effective date of such cancellation or nonrenewal.

| Extended Reporting Period | Additional Premium (as % of annual premium) |
|---|---|
| Twelve (12) months | 125% |
| Twenty-four (24) months | 200% |
| Thirty-six (36) months | 250% |
| Sixty (60) months | 350% |

The right to purchase an Extended Reporting Period shall not be available in the event of cancellation of this policy resulting from the failure to pay any premium due. The right to elect any Extended Reporting Period shall lapse unless written notice of the election, together with payment of the additional premium due, is given by the **Firm** and is received by the **Company** within sixty (60) days following the effective date of cancellation or nonrenewal as appropriate.

Coverage under the Extended Reporting Period shall only apply if there is no other valid or collectible insurance applicable to the **Claim**.  The provisions of the policy in effect on the last day of the **Policy Period** will apply to a **Claim** first made during the Extended Reporting Period.

Once in effect, the Extended Reporting Period may not be canceled. The purchase of an Extended Reporting Period pursuant to Section V of this policy shall not increase or reinstate the Aggregate Limit of Liability, which

SSK 00010

shall be the maximum liability of the **Company** for such **Policy Period** and Extended Reporting Period, combined. The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided.

### D. Multiple Claims

All **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** will be deemed to have been made on the earlier of the date the first of those **Claims** is made against any **Insured** or the first date the **Company** receives the **Insured's** written notice of the fact, circumstance, situation, event, transaction, cause or **Wrongful Act** which underlies such **Claim**. The provisions of the policy in effect on that date will apply.

## SECTION VI. GENERAL CONDITIONS

### A. Time of Inception; Policy Period

This policy will begin at 12:01 a.m. on the Inception Date shown in the Declarations. This policy will continue to apply until 12:01 a.m. on the Expiration Date also shown in the Declarations unless terminated at an earlier date.

### B. Insured's Duties in the Event of a Claim

1. If there is a **Claim**, the **Insured** must notify the **Company** in writing as soon as practicable. This notice must contain details that identify the **Insured**, the claimant, and reasonably obtainable information concerning the time, place and other details of the **Wrongful Act** and **Claim**.

2. No **Insured** will, except at the **Insured's** own cost, voluntarily make a payment, admit liability, assume any obligation or incur any expense without the **Company's** prior written consent.

### C. Transactions That Impact Coverage

1. If, during the **Policy Period**, the total number of attorneys in the **Firm** increases by more than five (5) individuals or by greater than 20%, whichever is less, as the result of the **Firm's** merger with or acquisition of any other law firm or group of attorneys, the **Firm** must promptly give the **Company** written notice thereof, and the **Company** will be entitled to impose such additional coverage terms and charge such additional premium in connection therewith as the **Company**, in its sole discretion, may require. Subject to the **Firm's** compliance with the provisions of this paragraph, coverage shall only be provided for such acquired attorneys with respect to **Wrongful Acts** committed or allegedly committed on or after the effective date of employment with the **Firm**.

2. If, during the **Policy Period**, any of the following events occurs:

   a. the acquisition of the **Firm**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Firm** into or with another entity such that the **Firm** is not the surviving entity; or

   b. the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Firm** or the **Firm** becoming a debtor in possession as such term is used in Chapter 11 of the US Bankruptcy Code,

   the **Firm** shall give written notice of such event to the **Company** as soon as practicable together with such information as the **Company** may require. The policy shall not be cancellable by the **Firm**, and coverage under this policy shall continue until termination of the **Policy Period**, but only with respect to **Wrongful Acts** occurring prior to such event.

SSK 00011

D. **Representations and Severability with Respect to Application**

In granting coverage to any one of the **Insureds**, the **Company** has relied upon the statements made in the written **Application** for this policy and all information provided to the **Company**. All such statements are the basis of this policy and shall be incorporated in and constitute part of this policy.

In order to determine if coverage is available, no knowledge possessed by any **Insured Individual** shall be imputed to any other **Insured**; except, however, knowledge possessed by the **Insured Individual** signing the **Application** shall be imputed to all other **Insureds**.

E. **Cancellation and Nonrenewal**

1. The **Firm** may cancel this policy during the **Policy Period** by giving the **Company** advance written notice of cancellation stating when thereafter such cancellation will be effective.

   The **Company** may only cancel this policy in the event of nonpayment of premium. If the **Company** cancels the policy, it will give the **Firm** written notice of cancellation at least twenty (20) days before the effective time of cancellation. Notice of cancellation shall state the effective time of cancellation. The **Policy Period** shall end at that time.

2. The **Company** may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the **Firm** at the address shown on the Declarations Page of this policy. The **Company** will mail or deliver the notice at least sixty (60) days before the expiration of the policy.

   If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

3. If this policy is cancelled, the **Company** shall send the **Firm** any premium refund as soon as practicable. If the **Firm** cancels, the refund shall be on the customary short rate basis. The return or tender of a return premium is not a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

4. If any controlling law requires a longer period of notice by the **Company**, the **Company** shall give such longer notice.

F. **Other Insurance**

If any **Loss** arising from any **Claim** is insured by any other policy(ies) of insurance, then this policy shall apply only in excess of and will not contribute with the amount of any deductibles, retentions and limits of liability under such other policy(ies) whether such policy(ies) is stated to be primary, contributory, excess, contingent or otherwise, unless such policy(ies) is written to be specifically excess of this policy by reference in such other policy(ies) to this policy's Policy Number. In all other events, this policy is intended to provide primary insurance.

G. **Territory**

This policy shall apply to **Claims** made and **Wrongful Acts** occurring anywhere in the world.

H. **Valuation and Currency**

All premiums, limits, **Retentions**, **Loss**, and other amounts under this policy are expressed and payable in the currency of the United States. If judgment is rendered, settlement is denominated or another element of **Loss** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of **Loss** is due.

SSK 00012

I. **Subrogation**

In the event of any payment under this policy, the **Company** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery including rights against other **Insureds**, and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit in the name of the **Insureds**. The **Insureds** will do nothing to prejudice such rights. Any recoveries shall be applied as follows:

1. First, to the **Company** up to the amount the **Company** has paid for **Loss**;

2. Then, to the **Firm** as recovery of **Retention** amounts paid as **Loss**.

J. **No Action Against Company**

No action shall lie against the **Company** unless, as a condition precedent thereto, there has been full compliance with all the terms of this policy by all **Insureds**, nor until the amount of the **Insured's** obligation to pay has been fully determined either by judgment or award against the **Insured** after actual trial or arbitration or by written agreement among the **Insured**, the claimant, and the **Company**. No person or organization shall have any right under this policy to join the **Company** as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the **Company** be impleaded by the **Insureds** or their legal representative.

K. **Bankruptcy**

Bankruptcy or insolvency of the **Firm** or of any **Insured Individual** shall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this policy.

L. **Authorization Clause**

For the purposes of this provision, **Firm** shall mean the entity first listed in Item 1. of the Declarations.

By acceptance of this policy, the **Firm** shall act on behalf of the **Insureds** with respect to the giving and receiving of any notice provided for in this policy, election of any Extended Reporting Period Option, the payment of premiums and **Retentions** and the receipt of any return premiums that may become due under this policy, consenting to settlement of **Claims**, and the agreement to and acceptance of endorsements.

M. **Alteration and Assignment**

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy which is signed by an authorized representative of the **Company**. The **Insureds** agree that this policy constitutes the entire agreement between the **Insureds** and the **Company**, or any of their agents or brokers. Notice to or knowledge possessed by the **Company**, the **Insureds** or any agent, broker or other person acting on behalf of the **Insureds** or **Company** shall not effect a waiver of or estop the **Company** or the **Insureds** from asserting any rights under this policy.

N. **Headings**

The description in the headings and subheadings are solely for convenience, and form no part of the terms and conditions of coverage.

O. **Spousal Coverage**

If a **Claim** made against an **Insured Individual** includes a **Claim** against that **Insured Individual's** lawful spouse solely by reason of:

1. Such spouse's status as the **Insured Individual's** spouse, or

SSK 00013

2.  Such spouse's ownership interest in property from which the claimant seeks recovery for the **Insured Individual's Wrongful Acts,**

all **Loss** which such spouse becomes legally obligated to pay on account of such **Claim** shall be treated for purposes of this policy as **Loss** which the **Insured Individual** is legally obligated to pay on account of the **Claim** made against the **Insured Individual.** Such **Loss** shall be covered under this policy only if and to the extent that such **Loss** would be covered under this policy if incurred by the **Insured Individual.** The coverage extension afforded by this subsection does not apply to any **Claim** alleging any **Wrongful Act** by the **Insured Individual's** spouse. The term "spouse" as used in this section shall include any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law in the United States of America.

**P.  Notices**

All notices under any provision of this policy must be made in writing and delivered by prepaid express courier, certified mail, fax or electronic mail. Notice to the **Insured Individuals** shall be given to the **Firm.** Notices to the **Company** shall be given to the appropriate party at the address set forth in Item 6. of the Declarations. Notices given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notices are sent, whichever is earlier.

In Witness Whereof, the **Company** has caused this policy to be executed and attested, but this policy will not be valid unless countersigned by a duly authorized representative of the **Company.**

SSK 00014

**AXIS SURPLUS INSURANCE COMPANY**
303 West Madison, Suite 500, Chicago, Illinois  60606
(866) 259-5435

Endorsement No. 1

Effective date of this endorsement: 12:01 a.m. on June 8, 2012
To be attached to and form part of Policy Number: ENN 717871/01/2012
Issued to: Sullivan Stolier Kovata Knight LC

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® LM LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is hereby understood and agreed that:

**SECTION II. DEFINITIONS USED IN THIS POLICY, H.** shall be amended to add the following person(s) or entity(ies) as additional **insureds** under the policy:

Jack M. Stolier LLC - 5/21/2010;
SM Sullivan LLC - 4/19/2010;
James P. Kovata LLC - 5/26/2010;
Vinson J. Knight LLC - 10/25/2011

All other provisions of this policy remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1 of 1
LM 1101 (08-11)

_____
Authorized Representative

SSK 00015

**AXIS SURPLUS INSURANCE COMPANY**
303 West Madison, Suite 500, Chicago, Illinois  60606
(866) 259-5435

Endorsement No. 2

Effective date of this endorsement:  12:01 a.m. on June 8, 2012
To be attached to and form part of Policy Number: ENN 717871/01/2012
Issued to: Sullivan Stoller Kovata Knight LC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

SERVICE OF SUIT CLAUSE – LOUISIANA

The Company hereby designates the Secretary of State of Louisiana, or his/her designee, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or by any beneficiary under this Policy against the Company arising out of this Policy, provided that all lawful process received by said Secretary of State of Louisiana, or his/her designee, is sent by registered mail with return receipt requested to the Company at:

AXIS U.S. Insurance
Attention:  Claims Administrator
11680 Great Oaks Way
Suite 500
Alpharetta, GA  30022

SOS-LA (01-04)

SSK 00016



# TORUS SPECIALTY INSURANCE COMPANY

**Harborside Financial Center**
**Plaza 5, Suite 2900**
**Jersey City, New Jersey 07311**
888-220-8477

## FOLLOW FORM EXCESS LIABILITY INSURANCE POLICY

**NOTICE: THIS IS A CLAIMS-MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY COVERS CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE EXTENDED REPORTING PERIOD. PLEASE READ THIS POLICY CAREFULLY.**

---

**NOTICE: THIS INSURANCE POLICY IS DELIVERED AS A SURPLUS LINE COVERAGE UNDER THE INSURANCE CODE OF THE STATE OF LOUISIANA.**

**IN THE EVENT OF INSOLVENCY OF THE COMPANY ISSUING THIS CONTRACT, THE POLICYHOLDER OR CLAIMANT IS NOT COVERED BY THE LOUISIANA INSURANCE GUARANTY ASSOCIATION WHICH GUARANTEES ONLY SPECIFIC POLICIES ISSUED BY AN INSURANCE COMPANY AUTHORIZED TO DO BUSINESS IN LOUISIANA.**

---

**DECLARATIONS**                              **POLICY NO: 07308B121APL**

| | | |
|---|---|---|
| **ITEM 1.** | **NAMED INSURED:** | Sullivan Stolier & Kovata Knight LC |
| | ADDRESS: | 909 Poydras Street<br>Suite 2600<br>New Orleans, LA 70112 |
| **ITEM 2.** | **POLICY PERIOD:** | From: June 8th, 2012 To: June 8th, 2013<br>(12:01 A.M. local time at the address stated in Item 1.) |
| **ITEM 3.** | **LIMIT OF LIABILITY:** | $5,000,000 excess of $5,000,000<br>(aggregate limit of liability including defense costs) |
| **ITEM 4.** | **PENDING & PRIOR LITIGATION DATE:** June 8th, 2011 | |

This Policy follows any Pending & Prior Litigation Exclusion in the **Followed Policy,** except that the applicable date in such Exclusion shall be the date indicated in this Item 4.

| | | |
|---|---|---|
| **ITEM 5.** | **FOLLOWED POLICY:** AXIS Surplus Insurance Company | |
| **ITEM 6.** | **UNDERLYING POLICY(S):** | |

TS-EFF-DEC-LA (09/10)                                        Page 1 of 2

SSK 00017



Harborside Financial Center
Plaza Five, Suite 2900
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

2.  If any **Underlying Policy(s)** contains a specific grant of coverage that is subject to a sublimit of liability, then coverage under this Policy shall not apply to any Claim that is otherwise subject to such grant of coverage. However, any Loss that is paid under such **Underlying Policy(s)** and that is subject to such sublimit of liability shall erode and may, if applicable, exhaust the **Underlying Limit** for purposes of this Policy.

3.  If any **Underlying Policy(s)** is canceled or terminated during the **Policy Period** or, if applicable, the **Extended Reporting Period**, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(s)** been maintained. To the extent any term, condition, representation, limitation or restriction of any of the **Underlying Policy(s)** is changed during the **Policy Period** and/or, if applicable, the **Extended Reporting Period**, this Policy shall automatically become subject to any such change that limits or restricts coverage. This Policy shall become subject to any such change that expands or broadens coverage only if and to the extent the Insurer agrees to such change in writing.

C.  NOTICE

All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** shall be given to the **Named Insured** at the **Named Insured's** address as shown in Item 1 of the Declarations. Notice to the Insurer shall be given at the address shown in the Declarations, provided that any notice to the Insurer of a Claim or potential Claim shall be addressed to the attention of the Insurer's Claims Department and all other notices to the Insurer shall be addressed to the attention of the Insurer's Underwriting Department.

Any notice to the Insurer of an **Underlying Policy(s)** shall not constitute notice to the Insurer unless also given to the Insurer as provided above.

D.  CLAIMS' PROVISIONS

1.  The Insurer may, at its sole discretion, fully and effectively associate with the **Insureds** in the investigation, defense or settlement of any Claim or potential Claim reported to the Insurer under this Policy even if the **Underlying Limit** has not been exhausted.

2.  No action by any other insurer shall bind the Insurer under this Policy. The Insurer shall not be liable under this Policy for any settlement, stipulated judgment or defense cost to which the Insurer has not provided prior written consent, which consent shall not be unreasonably withheld.

E.  COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

This insurance does not apply to the extent that any trade or economic sanction or other law or regulation prohibits the Insurer from providing insurance.

F.  EXTENDED REPORTING PERIOD

Upon payment of the additional premium described below, the **Insureds** shall have the right, under the same circumstances provided for under the **Followed Policy**, to extend the coverage granted by this Policy to Claims first made subsequent to and during the twelve (12) month period immediately following the end of the **Policy Period**. However, this coverage shall only apply to a Claim, or that part of a Claim, that arises out of an act, error or omission that was first committed

SSK 00018

**NOTICE**

This insurance policy is delivered as a surplus lines coverage under the Insurance Code of Louisiana.

the event of the insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific policies issued by an insurance company authorized to do business in Louisiana.

This surplus lines policy has been procured by the following licensed Louisiana surplus lines broker:

_____
Signature of Licensed Louisiana Surplus Lines Broker or Authorized Representative

George Vogle
_____
Printed Name of Licensed Louisiana Surplus Lines Broker



Harborside Financial Center
Plaza Five, Suite 2900
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

Insurance, if any, applicable under the **Underlying Policy(s)**.

6. **Underlying Policy(s)** means the policies listed in Item 6 of the Declarations or a Side-A Difference in Conditions ("DIC") insurance policy that covers a loss because the issuing company of a policy listed in Item 6 on the Declarations does not pay for such loss for the reasons identified in the insuring agreement of the applicable Side-A DIC insurance policy.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Secretary, but the same shall not be binding upon the Company unless countersigned by a duly authorized representative of the Insurer.

President

Secretary

TS-EFF-CW (09/10)

Page 4 of 4

**SSK 00020**

# WESTPORT INSURANCE CORPORATION

### PROFESSIONALS ADVANTAGE FOR LAWYERS®

### LAWYERS PROFESSIONAL LIABILITY INSURANCE

Westport Insurance Corporation
(A Stock Insurance Company, hereinafter called the "Company")

Policy Number:   WLA308010627400
Renewal of Policy:   NEW

## DECLARATIONS

**NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THIS COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS WHICH ARE FIRST MADE AGAINST AN INSURED AND REPORTED TO THE COMPANY WHILE THE POLICY IS IN FORCE.**

A. Named Insured:   SULLIVAN STOLIER KNIGHT LC

    Address:   909 POYDRAS STREET
                  SUITE 2600
                  NEW ORLEANS, LA 70112-4000

B. Policy Period:   From 12:01 A.M. 06-08-2013       To 12:01 A.M. 06-08-2014
                  Local time at the address stated herein

C. Limits of Liability: $ 5,000,000  Per Claim
                  $ 5,000,000  Aggregate for the Policy Period

D. Deductible:   $    75,000   Per Claim

E. Premium:   $    47,472.00

F. Retroactive Date: 5/29/1987

The Declarations and the forms listed on the attached Schedule of Form(s) and Endorsement(s), together with the completed and signed application and supplements, shall constitute the contract between the NAMED INSURED and the Company.

In witness whereof, the Company issuing this POLICY has caused this POLICY to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the Company.

### WESTPORT INSURANCE CORPORATION

_____   _____   _____
Countersignature                    Date            Authorized Representative

SP 3 383 O 0206                                                                 Page 1 of 1
Copyright ©2006 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Insured Copy

SSK 00021

## *WESTPORT INSURANCE CORPORATION*

### SCHEDULE OF FORM(S) AND ENDORSEMENT(S)

The Declarations and the forms listed below and attached hereto, together with the completed and signed application and supplements, shall constitute the contract between the NAMED INSURED and the Company.

### FORMS AND ENDORSEMENTS

```
SP 5 369          10-11    POLICY JACKET
SP 3 383 O        02-06    DECLARATIONS
SP 3 689          02-06    SCHEDULE OF FORMS AND ENDORSEMENTS
SP 2 277          09-06    SIGNATURE PAGE
SP 5 387          11-11    CLAIMS EXPENSES IN ADDITION TO LIMITS
SP 5 391          11-11    LOSS & EXP PER CLAIM DED, ER REMOVAL
SP 3 389          07-11    LIMITATION OF INDIVIDUAL PRIOR ACTS
SP 3 393          06-12    LAWYERS PROFESSIONAL LIABILITY POLICY
```

SP 3 689 0206

Copyright ©2006 Westport Insurance Corporation.  All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and  information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Insured Copy

SSK 00022

## WESTPORT INSURANCE CORPORATION

**POLICY NUMBER:** WLA308010627400

**THE ATTACHED COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORM(S) AND OTHER FORMS AND ENDORSEMENTS, IF ANY, FORM THE ATTACHED POLICY.**

IN WITNESS WHEREOF, Westport Insurance Corporation has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our duly authorized representative.

*WESTPORT INSURANCE CORPORATION*

President                    Secretary

SSK 00023

## WESTPORT INSURANCE CORPORATION

### PROFESSIONALS ADVANTAGE FOR LAWYERS SM

### CLAIMS EXPENSES IN ADDITION TO THE LIMITS OF LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

I. **Section V. CONDITIONS, C. DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS, Paragraph 4 of 6** is deleted and replaced with the following:

**C. DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS**

The Company shall not be obligated to pay any LOSS or CLAIMS EXPENSES or defend or continue to defend any CLAIM after the "Per Claim Limit of Liability" or "Aggregate Limit of Liability" under this POLICY has been exhausted by payment of LOSS or the deposit in a court having jurisdiction of sums exhausting the "Per Claim Limit of Liability" or "Aggregate Limit of Liability."

II. **Section V. CONDITIONS, E. LIMITS OF LIABILITY** is deleted and replaced with the following:

**E. LIMITS OF LIABILITY**

All limits of liability shall apply in excess of the deductible and in excess of CLAIMS EXPENSES.

The liability of the Company for all LOSS for a covered CLAIM shall not exceed the amount stated in the Declarations as "Per Claim Limit of Liability."

The liability of the Company for the combined total of all LOSS for all covered CLAIMS shall not exceed the amount stated in the Declarations as "Aggregate Limit of Liability."

All other terms and conditions of this policy shall remain unchanged.
This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Endorsement Effective  06—08—13                   Policy No.   WLA308010627400

Named Insured   SULLIVAN STOLIER KNIGHT LC

WESTPORT INSURANCE CORPORATION

Countersigned.

_____
Authorized Representative

President                              Secretary

SP 5 387 1111                                                                    Page 1 of 1

Copyright ©2011 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00024

### WESTPORT INSURANCE CORPORATION

*PROFESSIONALS ADVANTAGE FOR LAWYERS*[SM]

**LOSS & EXPENSE PER CLAIM DEDUCTIBLE**

**EARLY RESOLUTION REMOVAL**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

I.  **Section V. CONDITIONS, F. DEDUCTIBLE** is deleted and replaced with the following:

F.  **DEDUCTIBLE**

The deductible, as stated in the Declarations, shall apply to each CLAIM and shall be paid by the NAMED INSURED.  The deductible shall be first applied to all CLAIMS EXPENSES with the remainder, if any, being applied to LOSS.  CLAIMS EXPENSES shall be included within the deductible and the limit of liability and not in addition thereto.  Payment of the deductible shall be made by the NAMED INSURED within thirty (30) days of receipt of demand by the Company.

No deductible shall apply to any CLAIM that results from pro bono PROFESSIONAL SERVICES rendered for the public interest at no fee to persons of limited means or to public service or charitable groups or organizations.

All other terms and conditions of this policy shall remain unchanged.
This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Endorsement Effective  06-08-13                     Policy No.   WLA308010627400

Named Insured  SULLIVAN STOLIER KNIGHT LC

WESTPORT INSURANCE CORPORATION

Countersigned.

_____
Authorized Representative

President

Secretary
Page 1 of 1

SP 5 391 1111

Copyright ©2011 Westport Insurance Corporation.  All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and  information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00025

**WESTPORT INSURANCE CORPORATION**

*PROFESSIONALS ADVANTAGE FOR LAWYERS*<sup>SM</sup>

PROFESSIONALS ADVANTAGE FOR LAWYERS $^{SM}$

LIMITATION OF INDIVIDUAL PRIOR ACTS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Section IV. EXCLUSIONS** is amended to include the following exclusion:

This POLICY does not apply to any CLAIM based upon, arising out of or attributable to, or directly or indirectly resulting from a WRONGFUL ACT committed by the following INSURED(S) prior to the corresponding RETROACTIVE DATE(S):

| INSURED: | RETROACTIVE DATE: |
|---|---|
| STEPHEN M. SULLIVAN | 01/01/1987 |
| JACK M. STOLIER | 01/01/1987 |
| VINSON J. KNIGHT | 01/01/1993 |
| MICHAEL M. MEUNIER | 01/01/1994 |
| MATTHEW BROWN | 01/01/2002 |
| ADRIENNE L. BLACK | 01/01/2005 |
| BRIAN D. GRUBB | 01/01/2005 |
| AMANDA C. FOSTER | 01/01/2006 |
| THUY P. HUYNH | 08/18/2006 |
| MICHAEL R. SCHULZE | 01/01/2006 |
| AVIVA F. ROSENBERG | 01/01/2001 |
| MICHELLE BUFORD | 12/12/2008 |
| LAUREN R. AMBLER | 10/21/2010 |
| SPENCER SCHULZ | 01/13/2013 |

All other terms and conditions of this policy shall remain unchanged.
This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Endorsement Effective   06-08-13                    Policy No.   WLA308010627400

Named Insured   SULLIVAN STOLIER KNIGHT LC

WESTPORT INSURANCE CORPORATION

Countersigned.

_Mary Katherine Van West_ _____

SP 3 389 0711   Authorized Representative                    President                    Secretary
                                                                                        Page 1 of 1

Copyright ©2011 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00026

Corporate Solutions

**Swiss Re**

Swiss Re Corporate Solutions Insurance Policy



SP 5 369 1011

Insurance Products underwritten by Westport Insurance Corporation, First Specialty Insurance Corporation, North American Capacity Insurance Company, North American Specialty Insurance Company, North American Elite Insurance Company, Washington International Insurance Company, or Swiss Re International S.E.

Swiss Re Corporate Solutions offers innovative, high-quality insurance capacity for single and multi-line programmes worldwide, either on a standalone basis or as part of structured and tailor-made solutions. In addition, it provides customised risk transfer solutions to mid-sized and large, multinational corporations across the globe to assist in mitigating their risk exposure. Swiss Re Corporate Solutions serves more than 50,000 customers across nearly 40 offices worldwide and is backed by the financial strength of the Swiss Re Group. For more information about Swiss Re Corporate Solutions, please visit: www.swissre.com/corporatesolutions

©2012 Swiss Re. All rights reserved.

**www.swissre.com/corporatesolutions**

Insured Copy

SSK 00027

# WESTPORT INSURANCE CORPORATION

### PROFESSIONALS ADVANTAGE FOR LAWYERS<sup>SM</sup>

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ IT CAREFULLY.**

**Westport Insurance Corporation**
**A Missouri Corporation**
**Jefferson City, Missouri**
**(Hereinafter referred to as the "Company")**

Mailing Address: Westport Insurance Corporation, 222 West Adams, Suite 2300, Chicago, Illinois 60606

## LAWYERS PROFESSIONAL LIABILITY POLICY

In consideration of the payment of the premium, in reliance upon the statements in the application, its attachments and any materials submitted therewith, and subject to the Declarations and the terms and conditions of this POLICY (including any endorsements hereto), the Company agrees with the NAMED INSURED as follows:

**I.  INSURING AGREEMENTS**

    A.   The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any alleged WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

    B.   If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD.

**II.  SUPPLEMENTAL PAYMENTS**

    A.   The Company shall reimburse the NAMED INSURED up to $20,000 per POLICY PERIOD, for reasonable fees, costs and expenses incurred in defending a DISCIPLINARY PROCEEDING first made against any INSURED during the POLICY PERIOD, and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter. This coverage applies only to such fees, costs and expenses. It does not apply to any retainers for work or expenses not incurred, fines or monetary awards of any kind, judgments or settlements relating to, or directly or indirectly resulting from the institution or disposition of DISCIPLINARY PROCEEDINGS. The deductible shall not apply to this Supplemental Payment A.

    B.   Notwithstanding Section IV. Exclusions, if during the POLICY PERIOD, PERSONAL DATA of others is compromised as a result of a BREACH or alleged BREACH of the INSURED'S NETWORK, through hacking, mismanagement, loss or theft due to an INSURED's negligent act, error or omission, we will pay up to $10,000 per incident of BREACH or alleged BREACH subject to a per POLICY PERIOD aggregate limit of $20,000 for reasonable and necessary expenses incurred by the NAMED INSURED as a result of any BREACH or alleged BREACH that occurred during the rendition of PROFESSIONAL SERVICES in connection with the NAMED INSURED. The expenses are limited to:

        1.   consulting with legal counsel on how best to respond to the compromise;

        2.   consulting with Information Technologists to determine the nature and extent of the compromise or potential compromise; and/or

        3.   assisting in notification of the individuals who have been affected by the PERSONAL DATA compromise and providing credit monitoring to those individuals.

SP 3 393 0612

Page 1 of 15

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Insured Copy

**SSK 00028**

A $1,000 deductible applies to each incident of BREACH reported under this Paragraph B. Limits provided by this Paragraph B are part of and not in addition to the limits provided by this POLICY. All compromises of PERSONAL DATA that arise from the same cause or set of causes will be treated as one incident of BREACH.

C.   If, during the POLICY PERIOD, an INSURED first receives a subpoena for documents or testimony arising out of PROFESSIONAL SERVICES performed by an INSURED and the Company's assistance is requested in responding to such subpoena, the Company will pay on the INSURED's behalf reasonable and necessary costs incurred for an attorney the Company retains to provide the INSURED advice regarding the production of documents, to prepare the INSURED for sworn testimony and to represent the INSURED at the deposition provided that:

1.   the subpoena arises out of a lawsuit to which any INSURED is not a party; and

2.   any INSURED has not been engaged to provide advice or testimony in connection with the lawsuit and the INSURED has not provided such advice or testimony in the past.

The most the Company will pay per POLICY PERIOD for costs associated with all subpoenas subject to this Paragraph C is $10,000. No deductible shall apply to this coverage. Limits provided by this Paragraph C are part of and not in addition to the limits provided by the POLICY.

D.   Until the date a CLAIM is made, the Company may pay for all costs or expenses it incurs as a result of investigating a POTENTIAL CLAIM that the INSURED reports to the Company. Limits provided by this Paragraph D are part of and not in addition to the limits provided by this POLICY.

E.   The Company shall reimburse the NAMED INSURED up to $10,000 per POLICY PERIOD for CRISIS EVENT EXPENSES that result from a CRISIS EVENT first occurring and reported to the Company during the POLICY PERIOD. The most the Company will pay per POLICY PERIOD for CRISIS EVENT EXPENSES associated with all CRISIS EVENTS subject to this Paragraph E is $10,000. No deductible shall apply to this coverage. Limits provided by this Paragraph E are part of and not in addition to the limits provided by the POLICY.

## III.   DEFINITIONS

As respects such insurance as is afforded by this POLICY, the following definitions shall apply:

A.   "ACCESS DEVICE" MEANS any device that is used to work with client data including but not limited to desktop computers, laptop computers, smartphones, and flash drives.

B.   "BREACH" MEANS any misappropriation or unauthorized access, use, disclosure, modification, publication, theft, disappearance, or destruction of PERSONAL DATA within the care, custody or control of any INSURED. BREACH does not include any misappropriation or unauthorized access, use, disclosure, modification, publication, theft, disappearance, or destruction of PERSONAL DATA within the care, custody or control of a third party to whom any INSURED has intentionally provided the PERSONAL DATA.

C.   "CLAIM" MEANS:

1.   a demand made upon any INSURED for LOSS, including, but not limited to, service of suit, or institution of arbitration proceedings or administrative proceedings against any INSURED; or

2.   a request for any INSURED to toll or waive a statute of limitations.

D.   "CLAIMS EXPENSES" MEANS:

1.   fees charged by any lawyer, designated by the Company or required by law, to defend the INSUREDS; and

2.   if authorized by the Company, all other fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of any CLAIM, including but not limited to:

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

**SSK 00029**

    i.   all costs taxed against any INSURED and all interest which accrues after the entry of any judgment and before the Company has tendered or deposited, in court or otherwise, such judgment amount for which any INSURED is liable; and

    ii.   premiums on appeal bonds, in an amount not to exceed the Company's Limits of Liability, which are required for the appeal of a covered CLAIM. The Company shall have no obligation to apply for, guarantee or furnish any such bonds.

CLAIMS EXPENSES shall not include salaries and expenses of regular employees or officials of the Company or the NAMED INSURED.

E.    **"CLIENT DATA" MEANS** everything pertaining to the representation of the client.

F.    **"COUNTERFEIT" MEANS** to forge, falsely create, copy or imitate a document, without proper authority or right, by passing the document forged, falsely created, copied or imitated as original or genuine.

G.    **"CRISIS EVENT" MEANS** any:

1.    death, departure or debilitating illness of the managing partner, owner of a sole proprietorship, or practice group head,

2.    potential dissolution of the Named Insured,

3.    incident of workplace violence, or

4.    filing of an involuntary bankruptcy petition against the Named Insured.

H.    **"CRISIS EVENT EXPENSES" MEANS** reasonable fees, costs, and expenses incurred by the NAMED INSURED for consulting services provided by a public relations firm to the NAMED INSURED in response to a CRISIS EVENT.

I.    **"DISCIPLINARY PROCEEDING" MEANS** any proceeding before a bar association, disciplinary board or similar entity or official to investigate charges alleging professional misconduct as a lawyer or other matters relating to attorney licensing and/or discipline. DISCIPLINARY PROCEEDING does not include any proceeding related to charges, investigations or actions filed with a regulatory agency or official, including without limitation, Securities Exchange Commission, the Internal Revenue Service, the U.S. Patent & Trademark Office or any similar agency.

J.    **"INSURED" MEANS:**

1.    the NAMED INSURED;

2.    any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or "of counsel" of the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED;

3.    any lawyer listed in the application who is a partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED at the time the CLAIM is made, but only for PROFESSIONAL SERVICES rendered by such individual while associated with a PRIOR FIRM;

4.    any lawyer who has retired from the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered prior to the date of retirement;

5.    any past or present non-lawyer, employee or independent contractor attorney of the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED; and

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00030

6. the heirs, executors, administrators and legal representatives of any INSURED, but only in their capacity as such in the event of any INSURED'S death, incapacity or bankruptcy, and only for CLAIMS based on PROFESSIONAL SERVICES rendered prior to such INSURED'S death, incapacity or bankruptcy, and only to the extent that such INSURED would otherwise be covered by this POLICY; and

K. **"LOSS" MEANS** the monetary and compensatory portion of any judgment, award or settlement, provided always that LOSS shall not include:

1. civil or criminal fines, penalties, fees or sanctions;

2. matters deemed uninsurable by operation of law;

3. punitive or exemplary damages;

4. the multiplied portion of any multiple damages;

5. the return by any INSURED of any fees or remuneration paid to any INSURED; or

6. any form of non-monetary relief.

L. **"NAMED INSURED" MEANS** the person or entity listed in the Declarations and PREDECESSOR FIRM thereof.

M. **"NETWORK" MEANS** the INSURED'S interconnected computer systems including servers, laptop computers, desktop computers, software and smartphones. NETWORK shall not include the Internet, telephone company networks or other public infrastructure network.

N. **"PERSONAL DATA" MEANS** all electronic information:

1. which can be used to distinguish or trace an individual's identity, including but not limited to, their name, social security number, biometric records, alone, or when combined with other personal or identifying information which is linked or linkable to a specific individual, such as date and place of birth, or mother's maiden name;

2. concerning an individual that would be considered protected health information as defined within the Health Insurance Portability and Accountability Act of 1996; or

3. that would be considered nonpublic personal information within the meaning of the Gramm-Leach Bliley Act or similar state, federal and foreign identity theft and privacy protection legislation applicable to the breach.

O. **"PERSONAL INJURY" MEANS** assault, battery, false arrest, detention, imprisonment, wrongful entry, eviction or other invasion of private occupancy, or abusive litigation (criminal or civil), abuse of process, libel, slander, defamation and violations of the right of privacy arising out of the performance of PROFESSIONAL SERVICES

P. **"POLICY" MEANS** this current Professional Advantage for Lawyers form, the Declarations and the endorsements listed in the Declarations issued by the Company to the NAMED INSURED;

Q. **"POLICY PERIOD" MEANS** the period stated in the Declarations, unless terminated earlier pursuant to the TERMINATION section of this POLICY.

R. **"POTENTIAL CLAIM" MEANS:**

1. any act, error, omission, circumstance or PERSONAL INJURY which might reasonably be expected to give rise to a CLAIM against any INSURED under the POLICY; or

2. any breach of duty to a client or third party which might reasonably result in a CLAIM against an INSURED.

SP 3 393 0612

Copyright ©2012 Westport Insurance Corporation. All rights reserved. The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Insured Copy

SSK 00031

S.    **"PREDECESSOR" MEANS** any legal entity to whose financial assets and liabilities the firm listed as the NAMED INSURED in the Declarations is the majority successor in interest.

T.    **"PRIOR FIRM" MEANS** any law firm or professional corporation engaged in the private practice of law for which any lawyer listed in the application was a sole proprietor, partner, officer, director, stockholder, shareholder or employee prior to such lawyer joining the NAMED INSURED.

U.    **"PROFESSIONAL SERVICES" MEANS** services rendered to others in the INSURED'S capacity as a lawyer, either for fee or pro bono, and arising out of the conduct of an INSURED'S profession as a lawyer, or as a lawyer acting in the capacity of an Arbitrator, Mediator, or other neutral, as a Notary Public, or as a member, director or officer of any bar association, its governing board or any of its committees, or as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law, or as an Author, Publisher, or Presenter of legal research papers or materials, but only where direct compensation per publication or presentation is less than $5000.00. When an INSURED on behalf of a client acts as a title agent, administrator, conservator, executor, guardian, trustee, escrow agent, receiver or other court-appointed fiduciary, the INSURED'S acts in such capacity shall be deemed to be the rendition of PROFESSIONAL SERVICES for others in the INSURED'S capacity as a lawyer.

V.    **"RETROACTIVE DATE" MEANS** the date(s), as specified in the Declarations or in any endorsement attached hereto, for the NAMED INSURED and for the individual lawyers on or after which any WRONGFUL ACT must have occurred in order for CLAIMS arising therefrom to be covered under this POLICY. CLAIMS arising from any WRONGFUL ACT occurring prior to this date are not covered by this POLICY;

W.    **"TOTALLY AND PERMANENTLY DISABLED" MEANS** the INSURED is wholly prevented from working in his or her profession as a lawyer and the disability has continued for at least six (6) months, and an independent medical examiner opines that the disability will be continuous and permanent, and the disability did not result from self-inflicted injury, attempted suicide, or alcohol or drug abuse.

X.    **"WRONGFUL ACT" MEANS:**

    1.    any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of PROFESSIONAL SERVICES for others or

    2.    any BREACH OF PERSONAL DATA arising out of the rendering of PROFESSIONAL SERVICES, but only if the INSURED has implemented current and commonly accepted technologies and methodologies designed to secure PERSONAL DATA that are appropriate to the size and complexity of the firm including but not limited to physical restricted access to all servers, edge devices (routers, hardware firewalls, and modems), RAID arrays and other hardware if maintained at the law firm, installing and maintaining all edge devices to protect against CLIENT DATA exposure, encrypting all PERSONAL DATA transmitted over the internet, encrypting all CLIENT DATA stored on any ACCESS DEVICE, password protecting every ACCESS DEVICE containing CLIENT DATA, disabling any ACCESS DEVICE when the proper password is not provided within seven (7) attempts, weekly anti-virus and anti-malware scanning, password protecting access to the INSURED'S wireless connection, securely deleting all CLIENT DATA from any retired ACCESS DEVICE, and any retired machine that may store CLIENT DATA including fax and copy machines; provided, however, that any such technologies and methodologies must comply with privacy regulations found with the Health Insurance Portability and Accountability Act of 1996 or any other similar federal or state law or regulation.

SP 3 393 0612

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Insured Copy

SSK 00032

**IV.   EXCLUSIONS**

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

A.   any BREACH of PERSONAL DATA resulting from:

    1.   any act committed by an individual or individuals acting in an effort to coerce the civilian populations of the United States or to influence the policy or affect the conduct of any federal, state, provincial, or local government;

    2.   any failure of the INSURED to implement current and commonly accepted technologies and methodologies designed to secure PERSONAL DATA that are appropriate to the size and complexity of the INSURED firm including but not limited to physical restricted access to all servers, edge devices (routers, hardware firewalls, and modems), RAID arrays and other hardware if maintained at the law firm, installing and maintaining all edge devices to protect against CLIENT DATA exposure, encrypting all PERSONAL DATA transmitted over the internet, encrypting all CLIENT DATA stored on any ACCESS DEVICE, password protecting every ACCESS DEVICE containing CLIENT DATA, disabling any ACCESS DEVICE when the proper password is not provided within seven (7) attempts, weekly anti-virus and anti-malware scanning, password protecting access to the insured's wireless connection, securely deleting all CLIENT DATA from any retired ACCESS DEVICE, and any retired machine that may store CLIENT DATA including fax and copy machines; or

    3.   any failure of the INSURED to comply with any applicable privacy regulations found in the Health Insurance Portability and Accountability Act of 1996 or any other federal or state law or regulation, governing any industry in which the INSURED is rendering PROFESSIONAL SERVICES.

B.   any WRONGFUL ACT occurring prior to the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED if, (a) the WRONGFUL ACT had previously been reported to any other insurance company or (b) if the INSURED at the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM.

C.   bodily injury to, or sickness, disease or death of any person. This exclusion does not apply to mental illness, emotional distress or humiliation directly arising from the rendition of PROFESSIONAL SERVICES.

D.   injury to, or destruction of tangible property or loss of use thereof. Tangible property includes but is not limited to any item of physical property on which data or programs are recorded, electronic data processing media, data, electronic data, programs and electronic computer programs.

E.   the certification or acknowledgment by any INSURED, in his or her capacity as a Notary Public, of a signature on a document which the INSURED did not witness being placed on the document or collect information required by law.

F.   any CLAIM made by any INSURED under this POLICY against any other INSURED under this POLICY unless such CLAIM arises out of PROFESSIONAL SERVICES by an INSURED rendered to such other INSURED as a client.

G.   any INSURED'S capacity as the beneficiary or distributee of any trust or estate or recipient of any non-probate transfer.

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00033

H.   any intentionally criminal, dishonest, malicious, or fraudulent:

   1.   act, error, omission; or

   2.   PERSONAL INJURY committed by an INSURED.

   This exclusion applies to any INSURED who is adjudged or admits to have committed such acts. This exclusion does not apply to any INSURED who did not commit, know or acquiesce in such WRONGFUL ACT which is the basis of the claim.

I.   any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization, partnership or association other than the NAMED INSURED or PRIOR FIRM, unless indicated as an additional INSURED or unless the activities are deemed to be the rendition of PROFESSIONAL SERVICES in the INSURED's capacity as a lawyer.

J.   any conversion, misappropriation or improper commingling of client funds.  This exclusion applies only to any INSURED who is adjudged or admits to have committed such acts.

K.   any PROFESSIONAL SERVICES rendered or that should have been rendered to or on behalf of any entity other than the NAMED INSURED, which, at any time, was (1) ten percent (10%) or more owned by any INSURED or combination of INSUREDS and/or any spouse(s) of any INSURED or combination of INSUREDS; or (2) held, controlled, managed or operated by any INSURED or combination of INSUREDS and/or any spouse(s) of any INSURED or combination of INSUREDS.

L.   any violation or breach by any INSURED of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the amendments thereto, the rules and regulations promulgated thereunder, or any similar provision of any federal, state or local statute, regulation or ordinance or common law.  This exclusion shall not apply if any INSURED is liable solely by reason of legal services rendered to clients.

M.   any conduct by any INSURED committed within the scope of or while acting in a capacity as a public official or an employee of a municipality or governmental body, subdivision, agency, department or unit unless the INSURED'S conduct is deemed to be such solely because the INSURED has rendered PROFESSIONAL SERVICES to such governmental body and remuneration for such legal services inures to the benefit of the NAMED INSURED.

N.   any INSURED having gained in fact any personal profit or advantage to which he or she was not legally entitled.

O.   the disbursement of funds:

   1.   as the result of the deposit of a counterfeit check, or

   2.   without written verification from the issuing bank that the funds are valid and available, or

   3.   as the result of a fraudulent scheme conducted by a non-insured.

## V.   CONDITIONS

A.   TERRITORY

   This POLICY applies to WRONGFUL ACTS that occur anywhere in the world, but only if a CLAIM is made and brought in the United States of America, its territories or possessions or Canada.

B.   REPORTING AND NOTICE

   As a condition precedent to coverage under this POLICY, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after termination of the POLICY PERIOD, provide written notice to the Company.

SP 3 393 0612                                                                    Page 7 of 15

Copyright ©2012 Westport Insurance Corporation.  All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and  information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00034

The INSURED(S) shall include within any notice of CLAIM or POTENTIAL CLAIM a description of the CLAIM or POTENTIAL CLAIM, the alleged WRONGFUL ACT including date(s) it was committed, a summary of the facts upon which the CLAIM or POTENTIAL CLAIM is based, the alleged or potential damage that may result, the names of actual or potential claimants, the names of INSURED(S) against whom the CLAIM was or may be made, and the date and circumstances by which the INSURED(S) first became aware of the CLAIM or POTENTIAL CLAIM.

Notice to the Company under the POLICY shall be given by confirmed facsimile, prepaid express courier, or U.S. Mail to:

**For Facsimile:**
877-880-1590
Attn:  Specialty Claims Imaging

**For US Mail:**
Westport Insurance Corporation
Specialty Claims
P.O. Box 29221
Shawnee Mission, Kansas 66201
Attn:  Specialty Claims Imaging

**For Express Services:**
Westport Insurance Corporation
5200 Metcalf
Overland Park, Kansas 66201-1391
Attn:  Specialty Claims Imaging

Except as provided in Section IV. CONDITIONS, I., any notice shall be effective on the date of receipt by the Company at either of the above addresses or facsimile number.

C.    **DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS**

As respects such insurance as is afforded by this POLICY:

1.    the Company shall have the right and duty to select counsel and arbitrators and to defend any CLAIM for LOSS against any INSURED covered by Section I. Insuring Agreement A., even if such CLAIM is groundless, false or fraudulent, and shall have the right to make such investigation, negotiation and settlement, subject to Section V. CONDITIONS C.2. below, of any CLAIM as it deems expedient. If no coverage exists for the CLAIM, the Company shall have the right to recover from the NAMED INSURED any LOSS paid and/or CLAIMS EXPENSES paid to defend the CLAIM.

2.    the Company shall not settle any CLAIM without the written consent of the NAMED INSURED, which consent shall not be unreasonably withheld.  If, however, the NAMED INSURED refuses to consent to a settlement recommended by the Company and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, the Company's liability for the CLAIM shall not exceed the amount which would have been paid if the CLAIM could have been settled, including CLAIMS EXPENSES incurred up to the date of such refusal, or the applicable limit of liability, whichever is less.

3.    the Company shall reimburse up to $500 to each INSURED for each day for his or her attendance at the Company's request at trial, court-imposed hearing or arbitration proceeding involving a CLAIM, but the total amount so payable for all INSUREDS shall not exceed $15,000 per CLAIM. The deductible shall not apply to this Section V. CONDITIONS C.3. However, any payments made by the Company under this Section V. CONDITIONS C.3 shall be included within the applicable limit of liability and not in addition thereto.

SP 3 393 0612

Page 8 of 15

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00035

The Company shall not be obligated to pay any LOSS or CLAIMS EXPENSES or defend or continue to defend any CLAIM after the "Per Claim Limit of Liability" or "Aggregate Limit of Liability" under this POLICY has been exhausted by payment of LOSS and/or CLAIMS EXPENSES, or the deposit in a court having jurisdiction of sums exhausting the "Per Claim Limit of Liability" or "Aggregate Limit of Liability."

Except for reasonable fees, costs and expenses incurred in responding to a DISCIPLINARY PROCEEDING, no INSURED shall, without the prior written consent of the Company, incur any CLAIMS EXPENSES, make any admission or payment, admit liability, settle any CLAIMS, assume any obligation, agree to arbitration or any similar means of resolution (unless to resolve a fee dispute), or waive any rights.

If an INSURED is entitled to independent counsel (in those instances where the Company agrees to defend a CLAIM, and the Company reserves its rights to deny coverage on grounds which create a conflict of interests between an INSURED and the Company, and the INSURED does not waive the conflict), then the INSURED may select independent counsel. Such counsel shall have at least five (5) years of experience in the defense of similar CLAIMS, and maintain error and omissions insurance coverage. The INSURED and independent counsel shall provide full information, documentation and cooperation with respect to the defense, investigation and settlement of any CLAIM. The Company shall be liable only for reasonable and necessary defense costs at rates customarily paid by the Company for the defense of similar CLAIMS in the geographic area where the CLAIM is being defended.

D.  COOPERATION

1.  All INSUREDS shall cooperate with the Company in providing information requested by the Company regarding any CLAIM, POTENTIAL CLAIM or DISCIPLINARY PROCEEDING reported under the POLICY. All INSUREDS shall cooperate with the Company in the investigation of any DISCIPLINARY PROCEEDING and in the defense, investigation and settlement of any CLAIM. Upon the Company's request, the INSURED shall submit to examination or questioning under oath, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits.

2.  All INSUREDS shall assist the Company in effecting any rights of indemnity, contribution or apportionment available to any INSURED or the Company, including the execution of such documents as are necessary to enable the Company to pursue claims in the INSUREDS' names, and shall provide all other assistance and cooperation which the Company may reasonably require.

3.  The Company shall be subrogated to all INSUREDS' rights of recovery against any person or organization. The INSURED shall execute all papers required by the Company and shall do everything that may be necessary to preserve, secure and pursue such rights for the Company, including the execution of such documents as may be necessary to enable the Company to bring suit in the name of the INSURED. All INSUREDS shall cooperate with the Company and do nothing to jeopardize, prejudice or terminate such rights.

E.  LIMITS OF LIABILITY

All limits of liability shall apply in excess of the deductible. Amounts paid by the Company for all CLAIMS EXPENSES and amounts paid in satisfaction of CLAIMS are subject to and reduce the applicable limit of liability.

All CLAIMS EXPENSES shall first be subtracted from the applicable "Per Claim Limit of Liability," with the remainder, if any, being the amount available to pay LOSS. The liability of the Company for the combined total of all LOSS and CLAIMS EXPENSES for a covered CLAIM shall not exceed the amount stated in the Declarations as "Per Claim Limit of Liability."

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and  information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

**SSK 00036**

The liability of the Company for the combined total of all LOSS and CLAIMS EXPENSES for all covered CLAIMS shall not exceed the amount stated in the Declarations as "Aggregate Limit of Liability."

F. **DEDUCTIBLE**

The deductible, as stated in the Declarations, shall apply to each CLAIM and shall be paid by the NAMED INSURED. The deductible shall be first applied to all CLAIMS EXPENSES with the remainder, if any, being applied to LOSS. CLAIMS EXPENSES shall be included within the deductible and the limit of liability and not in addition thereto. Payment of the deductible shall be made by the NAMED INSURED within thirty (30) days of receipt of demand by the Company.

The deductible, as stated in the Declarations, will be reduced by 50% not to exceed a reduction of $12,500 for each CLAIM that is resolved within 365 days of receipt by the Company of the written notice of the CLAIM, or within 365 days of receipt by the Company of the written notice of the POTENTIAL CLAIM, whichever occurs first, from the INSURED and for an amount recommended to the INSURED by the Company, except if the CLAIM is resolved after the commencement of:

    i.    a trial for the full adjudication of the CLAIM in a court of law; or

    ii.    the first motion for summary judgment by any party for the full adjudication of the CLAIM against the INSURED in a court of law; or

    iii.    the first evidentiary hearing in binding arbitration of the CLAIM.

The reduction in deductible applies to per claim deductibles and aggregate deductibles. If the CLAIM is not fully and finally resolved within the period of time described above, there shall be no reduction in the deductible. If the CLAIM is resolved and the INSURED has paid more than 50% of the deductible, the Company will reimburse the INSURED the amount paid in excess of 50% of the deductible within sixty (60) days of receipt by the Company of written request by the INSURED.

No deductible shall apply to any CLAIM that results from pro bono PROFESSIONAL SERVICES rendered for the public interest at no fee to persons of limited means or to public service or charitable groups or organizations.

G. **MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS**

The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not increase the limits of liability or the deductible. Two or more CLAIMS arising out of a single WRONGFUL ACT or a series of related or continuing WRONGFUL ACTS, shall be a single CLAIM. All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM was first made arising out of such WRONGFUL ACT and all such CLAIMS are subject to one "Per Claim Limit of Liability" and deductible.

H. **OTHER INSURANCE**

If there is other valid and collectible insurance under any other policy or policies applicable to a covered CLAIM under the POLICY, the POLICY shall be deemed excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is specifically written as excess insurance over the limits of liability provided in the POLICY.

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00037

I.   **TERMINATION**

The POLICY shall terminate at the earliest of the following:

1.   if the POLICY is terminated for failure to pay a premium when due, upon the effective date of cancellation stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least ten (10) days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. Any earned premium shall be computed pro rata;

2.   if the POLICY is terminated by the company for any reason, other than the reason stated in Section V. CONDITIONS, I.1., upon the effective date of termination stated in a written notice of termination from the Company to the NAMED INSURED, provided such notice is received by the NAMED INSURED at least sixty (60) days prior to the effective date of termination. The mailing of such notice shall be sufficient notice and the effective date of termination stated in the notice shall become the end of the POLICY PERIOD. Any earned premium shall be computed pro rata;

3.   upon the receipt by the Company of the POLICY surrendered by the NAMED INSURED. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

4.   upon the transmittal to the Company of written notice of termination from the NAMED INSURED stating when thereafter such termination shall be effective. Any earned premium shall be computed in accordance with the customary short rate table and procedure;

5.   upon expiration of the POLICY PERIOD as set forth in the Declarations; or

6.   upon the effective date of termination stated in the written notice of the Company of their intent not to renew the POLICY in accordance with applicable law.

In the event of any termination of coverage except as provided in this Paragraph I.1. above, there is an Automatic Sixty (60) Day Extended Claim Reporting Period commencing upon POLICY termination for CLAIMS first made against any INSURED during the POLICY PERIOD.

Not later than thirty (30) days after the termination of coverage, the Company will mail or deliver to the NAMED INSURED written notice of the Automatic Sixty (60) Day Extended Reporting Period and the availability of, premium for, and importance of purchasing one of the additional Extended Reporting Period options offered. If the POLICY has been cancelled by the Company because the NAMED INSURED has failed to pay a premium when due, and if the POLICY has been in effect for less than one year, the Notice will be sent as above, but indicating that no additional Extended Reporting Period options are available to purchase, due to cancellation for non-payment.

J.   **EXTENDED REPORTING PERIOD**

If the Company or the NAMED INSURED shall cancel or non-renew the POLICY, the NAMED INSURED shall have the right to extend the time for reporting CLAIMS made against any INSURED under the POLICY per the following schedule. The additional premium for the Extended Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 100% of the last annual premium of this POLICY |
| 24 months | 150% of the last annual premium of this POLICY |
| 36 months | 185% of the last annual premium of this POLICY |
| Unlimited | 300% of the last annual premium of this POLICY |

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Ins

SSK 00038

If the NAMED INSURED exercises the Extended Reporting Period option, the coverage shall apply only to CLAIMS for WRONGFUL ACTS which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against this INSURED and reported to the Company during the Extended Reporting Period.

This right to purchase the Extended Reporting Endorsement is subject to the following conditions:

1. the INSURED exercising the Extended Reporting Period option has not had his or her professional license to practice law suspended or surrendered at the request of any disciplinary or regulatory authority;

2. the POLICY was cancelled or non-renewed for reasons other than non-payment of premium;

3. any deductible amounts due the Company have been paid;

4. the INSURED has complied with all of the terms and conditions of the POLICY; and

5. the NAMED INSURED must send written notice to the Company of the intention to purchase the Extended Reporting Endorsement accompanied by the additional premium. Written notice and premium payment must be received by the Company no later than sixty (60) days after the termination date of the POLICY PERIOD.

Separate or new limits do not apply to the Extended Reporting Period. This option to extend the reporting period does not extend the POLICY PERIOD. The purchase of the Extended Reporting Period shall not in any way increase the limit of liability stated in the Declarations. If the Extended Reporting Period option is exercised, then such period shall be part of and not in addition to the last POLICY PERIOD. Any CLAIM made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The entire premium for this option shall be deemed fully earned at the commencement of the Extended Reporting Period.

K.   **NON-PRACTICING EXTENDED REPORTING PERIOD OPTIONS**

1. Subject to the conditions stated below and in Paragraph 5. of this Section K., any individual owner, partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED who, during the POLICY PERIOD, retires or voluntarily ceases, permanently and totally the private practice of law, shall be entitled, at no additional premium, to an unlimited period for reporting CLAIMS first made against this INSURED. The right to this retirement Non-Practicing Extended Reporting Period is subject to the following conditions:

    a. the INSURED exercising the Non-Practicing Extended Reporting Period option has not had his or her professional license to practice law suspended or surrendered at the request of any disciplinary or regulatory authority;

    b. the INSURED has been continuously insured by the Company for at least three full consecutive years;

    c. the POLICY was not cancelled for non-payment of premium or non-renewed;

    d. the INSURED exercising this option has complied with all of the terms and conditions of the POLICY; and

    e. the INSURED gives written notification of retirement or the termination of the private practice of law within sixty (60) days after the termination date of the POLICY PERIOD.

This Non-Practicing Extended Reporting Period option is provided until the INSURED resumes the private practice of law.

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00039

2. Subject to the conditions stated below and in Paragraph K.5., any individual partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED who, during the POLICY PERIOD, retires or otherwise ceases the private practice of law, and who has not been continuously insured by the Company for at least three full consecutive years, shall have the right to extend the time for reporting CLAIMS first made against this INSURED per the following schedule. The additional premium for this Non-Practicing Extended Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 100% of per lawyer annual premium of this POLICY |
| 24 months | 150% of per lawyer annual premium of this POLICY |
| 36 months | 185% of per lawyer annual premium of this POLICY |
| Unlimited | 300% of per lawyer annual premium of this POLICY |

If an INSURED exercises this Non-Practicing Extended Reporting Period option, the coverage shall apply only to CLAIMS for WRONGFUL ACTS which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against this INSURED and reported to the Company during  this Non-Practicing Extended Reporting Period.

This right to purchase this Non-Practicing Extended Reporting Endorsement is subject to the following conditions:

a. the license of the INSURED exercising the Non-Practicing Extended Reporting Period option to practice his or her profession has not been revoked, suspended or surrendered at the request of any disciplinary or regulatory authority for reasons other than the INSURED exercising the Non-Practicing Extended Reporting Period option becoming TOTALLY AND PERMANENTLY DISABLED, by the time that the right could be exercised;

b. the POLICY was not cancelled for non-payment of premium or non-renewed;

c. the INSURED exercising this Non-Practicing Extended Reporting Period option has complied with all of the terms and conditions of the POLICY;

d. the INSURED exercising this Non-Practicing Extended Reporting Period option must send written notice to the Company of the intention to purchase this Non-Practicing Extended Reporting Endorsement accompanied by the additional premium. The Company must receive written notice and premium payment no later than sixty (60) days after the termination date of the POLICY PERIOD.

3. Subject to Paragraph K.5. below, if an INSURED dies during the POLICY PERIOD as a result of reasons other than self-inflicted injury, suicide, or alcohol or drug abuse, then the period for reporting CLAIMS is extended at no additional premium until the executor or administrator of the estate is discharged, provided that the estate, heir or administrator gives written notification and written proof of the date of death to the Company within 60 days of the death of the INSURED. The deductible requirement of the POLICY will be waived for CLAIMS first made against the INSURED during the Non-Practicing Extended Reporting Period.

4. If an INSURED becomes TOTALLY AND PERMANENTLY DISABLED during the POLICY PERIOD, and has been continuously insured by the Company for at least two (2) consecutive years, then the period for reporting CLAIMS is extended at no additional premium until the death of the INSURED or until the INSURED is no longer TOTALLY AND PERMANENTLY DISABLED, provided that:

a. the INSURED or the INSURED'S legal guardian provides written notice of the disability to the Company no later than sixty (60) days after the termination date of the POLICY PERIOD;

SP 3 393 0612

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and  information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.

Insured Copy

SSK 00040

b.   the INSURED or the INSURED'S legal guardian provides a physician's written certification of the disability including the date the disability commenced; and

c.   the INSURED agrees to submit to a medical examination at the Company's expense by any physician(s) designated by the Company.

The deductible requirement of the POLICY will be waived for CLAIMS first made against the INSURED during the Non-Practicing Extended Reporting Period.

5.   The provisions in 1., 2., 3., & 4. above that extend the reporting period do not extend the POLICY PERIOD. Any Non-Practicing Extended Reporting Period option shall be part of and not in addition to the last POLICY PERIOD. Non-Practicing Extended Reporting Period shall not in any way increase the limit of liability stated in the Declarations. Any CLAIM made during this Non-Practicing Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The entire premium for this option shall be deemed fully earned at the commencement of this Non-Practicing Extended Reporting Period.

The additional premium and deductible requirement for this Non-Practicing Extended Reporting Period will be waived for an INSURED who is leaving the private practice of law to become either a state or federal judge.

## L.   ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, all INSUREDS shall have fully complied with all the terms and conditions of the POLICY, and not until the amount of all INSUREDS' obligations to pay has been finally determined either by judgment against all INSUREDS after actual trial or by written agreement of the NAMED INSURED, the claimant and the Company.

Any person, organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this POLICY to the extent of the insurance afforded by this POLICY.

Nothing contained in the POLICY shall give any person or organization any right to join the Company as a co-defendant in any action against any INSURED to determine any INSURED'S liability. Bankruptcy or insolvency of any INSURED or any INSURED'S estate shall not relieve the Company of any of its obligations hereunder.

## M.   CHANGES

No change or modification of this POLICY shall be effective except when made by a written endorsement to this POLICY.

## N.   ACQUISITIONS AND MERGERS

If during the POLICY PERIOD, any of the following events occur:

1.   the NAMED INSURED merges with or acquires any other law firm or group of attorneys who practiced together at another law firm, or

2.   the NAMED INSURED has fewer than 5 attorneys and the number of attorneys increases by more than 3 attorneys, or

3.   the NAMED INSURED has 5 or more attorneys and the number of attorneys increases by more than 50%,

the NAMED INSURED shall give written notice to the Company within 60 days. The Company shall have the right to modify the terms and conditions of the POLICY, including premium.

## O.   NO ASSIGNMENT

Neither this POLICY nor any INSURED'S interest in this POLICY may be transferred or assigned.

SP 3 393 0612                                                     Page 14 of 15

Copyright ©2012 Westport Insurance Corporation. All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00041

P.   **APPLICABLE LAWS**

Any terms of the POLICY which are in conflict with any laws and regulations governing the POLICY are hereby amended to conform to such laws and regulations.

Q.   **WAIVER**

The Company's failure to insist on strict compliance with any of the terms, provisions or conditions to coverage of the POLICY or the failure to exercise any right or privilege shall not operate or be construed as a waiver thereof or of any subsequent breach thereof or a waiver of any other terms, provisions, conditions, privileges or rights.

R.   **LIBERALIZATION**

If the Company adopts any revision that would broaden coverage under this POLICY without additional premium at any time during the POLICY PERIOD, the broadened coverage will immediately apply to this POLICY except that it will not apply to CLAIMS that were first made against the INSURED prior to the effective date of such revision.

S.   **ENTIRE AGREEMENT**

By acceptance of this POLICY, all INSUREDS reaffirm as of the effective date of this POLICY that (a) the statements in the application(s) and all information communicated by the INSUREDS to the Company, and all INSUREDS' agreements and representations, are true and accurate, (b) this POLICY is issued in reliance upon the truth and accuracy of such representations which are material to the Company's issuance of this POLICY and (c) this POLICY embodies all agreements between all INSUREDS and the Company or any of its agents relating to this insurance. No representations by any person shall have any force or effect, except as included within this written agreement. Notwithstanding any provision in the POLICY or application, the application should not be considered part of the POLICY.

**This POLICY is not valid unless completed by the attachment of the Declarations.**

WESTPORT INSURANCE CORPORATION

_President_                         _Secretary_

SP 3 393 0612

Copyright ©2012 Westport Insurance Corporation.  All rights reserved.
The reproduction or utilization of this work in any form whether by any electronic, mechanical, or other means, now known or hereafter invented, including xerography, photocopying, and recording, and  information storage and retrieval system is forbidden without the written permission of Westport Insurance Corporation.
Insured Copy

SSK 00042

# Crum&Forster®

305 Madison Avenue Morristown, NJ 07962

Policy Number: 550-101368-7

☒ **North River Insurance Company**
☐ **United States Fire Insurance Company**
☐ _____

### PLATINUM MANAGEMENT PROTECTION
### Excess Liability Declarations

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY PROVIDES COVERAGE FOR *CLAIMS* FIRST MADE AGAINST THE *INSUREDS* DURING THE *POLICY PERIOD*. *DEFENSE COSTS* ARE INCLUDED WITHIN THE LIMIT OF LIABILITY AND REDUCE THE LIMIT OF LIABILITY FOR THIS POLICY. PLEASE READ CAREFULLY. WORDS AND PHRASES WHICH ARE PRINTED IN BOLD ITALIC TYPEFACE HAVE SPECIFIC MEANING AND ARE DEFINED IN SECTION II. OF THE POLICY.

Item 1. **Corporation:**   Sullivan Stolier Knight LC
**Street Address:** 909 Poydras Street Suite 2600
New Orleans LA 70112

Item 2. **Policy Period:** From   June 8, 2013   To   June 8, 2014
(12:01 a.m. local time at the address given in Item 1)

Item 3. **Limit of Liability:** $5,000,000
(Aggregate Limit of Liability including Defense Costs)

Item 4. **Premium:** $22,541

Item 5. **Pending or Prior Litigation Date:** 6/8/13

Item 6. **The following endorsements are made a part of this policy at policy issuance:**
1- Ofac Notice
2- Reliance on Primary's Application
3- Non Follow Form Sub Limit

Item 7. **Schedule of Underlying Insurance:**

|  | Insurer | Limit of Liability | Policy Number |
|---|---|---|---|
| A. Primary Insurer: | Westport Insurance Corporation | $5,000,000 | WLA308010627400 |
| B. 1st Underlying Insurer | | | |
| C. 2nd Underlying Insurer | | | |
| D. 3rd Underlying Insurer | | | |
| E. 4th Underlying Insurer | | | |

These Declarations, the application, and the policy with endorsements attached thereto, constitute the entire agreement between the *Insurer* and the *Insureds*.

Countersigned (if required by law): _____          Date: 6/6/13

**SSK 00043**

# PLATINUM MANAGEMENT PROTECTION

## Excess Liability

In consideration of the payment of the premium, in reliance upon application attached hereto and all the information provided to the *Insurer* and subject to the Declarations, definitions, terms, conditions, limitations, representations, exclusions and endorsements herein and/or attached hereto, the *Insurer* and the *Insureds* agree as follows:

## Section I.   INSURING AGREEMENTS

The *Excess Insurer* shall provide the *Insured(s)* coverage for *Claims* first made during the *Policy Period* and during the Extended Reporting Period, if exercised, (1) only in excess of all *Underlying Insurance*, (2) only after all *Underlying Insurance* has been exhausted by payment of the underlying Limit of Liability by each Underlying Insurer for the Limit of Liability shown in the Schedule of *Underlying Insurance* in Item 7 of the Declarations, and (3) only if such total Limit of Liability is exhausted as a result of *Loss* resulting from *Claims.* The insurance coverage afforded herein shall apply in conformance with the definitions, terms, conditions, limitations, warranties, representations, exclusions and endorsements of the *Primary Policy* except as otherwise provided by the definitions, terms, conditions, limitations, warranties, representations, exclusions and endorsements contained in any *Underlying Insurance,* or herein.

## Section II.   DEFINITIONS

*Claim* means as such term is defined in the *Primary Policy*, except as amended by any *Underlying Insurance,* or herein.

*Defense Costs* (or Defense Expenses) means as such term is defined in the *Primary Policy*.

*Excess Insurer* means the company providing this insurance whose name is shown on the Declarations Page.

*Loss* means as such term is defined in the *Primary Policy*, except as amended by any *Underlying Insurance,* or herein.

*Insured* means as such term is defined in the *Primary Policy*, except as amended by any *Underlying Insurance,* or herein.

*Policy Period* means the period of time shown in Item 2 of the Declarations.

*Primary Policy* means the policy of Insurance issued by the Primary Insurer scheduled in Item 7 A of the Declarations.

*Underlying Insurance* means all policies scheduled in Item 7 of the Declarations.

## Section III.  APPLICATION OF UNDERLYING INSURANCE

As a condition precedent to the coverage afforded hereunder, the *Underlying Insurance* shall remain in full force and effect and unchanged (unless specifically endorsed herein) during the *Policy Period* except for reduction or exhaustion of the Limit of Liability by reason of payment of *Loss*.

In the event of bankruptcy, liquidation or insolvency of any Underlying Insurer, this policy shall not replace the *Underlying Insurance* provided by such Underlying Insurer, but shall apply in the same manner as though such *Underlying Insurance* were available and collectible. The *Insured(s)* shall be responsible for the amount of the Limit of Liability which is not paid by any such Underlying Insurer as a result of its bankruptcy, liquidation or insolvency.

## Section IV.  LIMITS OF LIABILITY

SSK 00044

The amount shown in Item 3 of the Declarations shall be the aggregate Limit of Liability of the *Excess Insurer* for all *Loss,* inclusive of *Defense Costs,* arising from all *Claims* first made during the *Policy Period,* or during any applicable Extended Reporting Period. *Defense Costs* shall be part of and reduce the Limit of Liability of the *Excess Insurer.*

If the Limit of Liability of the *Underlying Insurance* is depleted solely as the result of actual payment of *Loss* by the applicable Underlying Insurers, this policy shall, subject to the *Excess Insurer's* Limit of Liability and other terms of this policy, continue to apply as excess insurance over the remaining Limit of Liability of the *Underlying Insurance.*

If the Limit of Liability of the *Underlying Insurance* is exhausted solely as a result of actual payment of *Loss* by the Underlying Insurers, this policy shall apply to subsequent *Claims* subject to the remaining Limit of Liability of this policy and in accordance with the definitions, terms, conditions, limitations, warranties, representations, exclusions and endorsements of the *Primary Policy* except as otherwise provided in the definitions, terms, conditions, limitations, warranties, representations, exclusions and endorsements contained in any *Underlying Insurance,* or herein.

## Section V.   EXCLUSIONS

Notwithstanding anything to the contrary in the *Underlying Insurance,* the coverage afforded herein shall not apply to any *Claim* made against any *Insured* based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1. any litigation, case, proceeding, demand letter, governmental investigation, or inquiry, or any investigation or inquiry into or against any *Insured* which commenced prior to or is pending at the applicable date shown in Item 5 of the Declarations;
2. any extension or amendment of such pending or prior litigation, case or proceeding; or
3. any facts, circumstances, situations, transactions, or events, which in whole or in part, are the subject of, are related to, or which have as a common nexus any such fact, circumstance, situation, transaction, or event underlying such pending or prior litigation, case or proceeding.

## Section VI.   NOTICE

A.   Notice of a *Claim* given to any *Underlying Insurer* shall not constitute notice to the *Excess Insurer.* As a condition precedent to the coverage afforded by this policy, notice of a *Claim* must be provided to the *Excess Insurer* in accordance with the notice of *Claim* provisions in the *Primary Policy.*

B.   Written notice must be given to the *Excess Insurer* at:

Crum & Forster
Claims Department
305 Madison Avenue
Morristown, NJ 07962

C.   The corporation shall give the *Excess Insurer* written notice as soon as practicable but in no event more than thirty (30) days after:
1. cancellation of any *Underlying Insurance;*
2. the depletion or exhaustion of the Limit of Liability of any *Underlying Insurance;*
3. any additional or return premium in connection with any *Underlying Insurance;*
4. any amendments or endorsements to the *Underlying Insurance;* or
5. the insolvency, bankruptcy, conservatorship, or rehabilitation of any Underlying Insurer.

MP427.1 (04/04)

Page 3 of 3

SSK 00045

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

SSK 00046

**THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.**

To be attached to and form part of Policy No: 550-101368-7          Effective Date of Endorsement: 6/8/13

Issued to: Sullivan Stolier Knight LC                              Endorsement No: 1

## RELIANCE ON ANOTHER INSURANCE COMPANY'S APPLICATION
### {FORMS: MP424.1(04/04),  MP425.1(04/04),  MP426.1 (04/04), MP427.1(04/04), MEO 100{08/08}}

It is hereby agreed that the Insurance Company shown in the Declarations has put this policy in effect relying upon the accuracy of the information in the insurance application and all materials submitted therewith which was completed and signed by:

      Name of signatory:    Vinson J Knight

      Title of signatory:    Manager

      Date of Signature:    4/23/13

for _____Westport Insurance Corporation_____

                            (Name of Insurance Company whose application we are relying on.)

It is therefore agreed that the information in the above named application, including any representations or warranties made therein, and the materials submitted therewith, are deemed also to be made to the Insurance Company shown on the Declarations as if said application and materials attached thereto was completed directly for and in the name of the Insurance Company shown in the Declarations..

All other terms, conditions and limitations of the policy remain unaltered.

_____                    6/6/13
     Authorized Representative              _____
                                                   Date

SSK 00047

**THIS ENDORSEMENT CHANGES THE POLICY, READ IT CAREFULLY.**

To be attached to and form part of Policy No: 550-101368-7

Issued to:  Sullivan Stoller Knight LC

Effective Date of Endorsement:  6/8/13

Endorsement No:  2

## NON - FOLLOWING FORM OF SUBLIMITS IN PRIMARY POLICY
## WITH PAID SUBLIMIT CLAIMS ERODING UNDERLYING LIMIT

(A)  In consideration of the premium charged, it is hereby agreed that this policy shall not provide liability coverage excess of claims paid by the *Primary Insurer* under any provision in its policy where the Limit of Liability applicable to such claims is a Limit of Liability less than ("The Sub-Limit") the Limit of Liability shown for the *Primary Insurer* stated in Item 7. of the Declarations.

(B)  not withstanding Paragraph (A) above, payment of such Sub-limit claims by the *Primary Insurer* shall be deemed to deplete the *Underlying Insurance* as required by Section IV. of this policy.

All other terms, conditions and limitations of the policy remain unaltered.

_____
Authorized Representative

6/8/13
_____
Date

MEO-EX-148 (02/10)

SSK 00048