UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES MATTHEWS, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-6638** |
| **JACK STOLIER, ET AL** | **SECTION: "H"(3)** |

## ORDER AND REASONS

Before the Court is Defendant North River Insurance Company's Motion to Dismiss (Doc. 165). For the following reasons, the Motion is GRANTED IN PART.

## BACKGROUND

The background facts of this case have been detailed at length in the Court's previous orders.[1] However, a review of the facts pertinent to this Motion, as alleged in Plaintiff's Complaint, is helpful here. Sometime prior to

---

[1] *See, e.g.*, Doc. 109.

1

the events giving rise to this suit, Lazarus Healthcare, LLC ("Lazarus") acquired ownership of Camillus Specialty Hospital, LLC ("Camillus"),[2] a long-term acute care ("LTAC") hospital in Gretna, Louisiana. Charles Matthews is the sole owner of Lazarus.

In the fall of 2012, a dispute developed between Camillus and the landlord of the building that housed the hospital. During the course of that dispute, Matthews began searching for another facility in which to house Camillus. While he attempted to resolve the facility issues, Matthews also sought management assistance. To that end, Matthews retained Defendant Red River Healthcare Management Company, LLC ("Red River") to provide management services to Camillus. Red River is owned and operated by Defendants Jimmy and Connie Morgan ("the Morgans").

Matthews eventually discovered that Louisiana Specialty Hospital, LLC ("LSH"), an LTAC operating in the West Jefferson Medical Center, was closing and he began to explore the possibility of moving Camillus into the space being vacated by LSH.[3] As Matthews pursued this opportunity, he learned that the then-operator of LSH might be interested in selling the entire facility, including its license to operate.[4] Matthews retained Defendant Steve Sullivan, an attorney, to negotiate the terms of the sale. They allege that Defendant

---

[2] Camillus is referred to in the Complaint by varying names, including, Camillus Hospital, Camillus Specialty Hospital, and Crescent City Specialty Hospital.

[3] In the Complaint LSH is referred to as West Jefferson LTAC, Jefferson Extended Care, Louisiana Specialty Hospital, and Jefferson LTAC.

[4] Owning LSH and its Medicare billing number provided several business advantages not otherwise available to Camillus.

2

Michael Schulze assisted Sullivan with the preparation of various documents. Plaintiffs claim that Sullivan and Schulze are employed by several named law firms ("Law Firm Entities").[5]

Plaintiffs claim that, during the negotiations to purchase LSH, Sullivan began conspiring with the other Defendants to deprive Matthews of the opportunity to purchase LSH. Despite the alleged conspiracy, WJLT Hospital, LLC ("WJLT") was formed to purchase LSH. Matthews held a 91.1% ownership interest in WJLT, Sullivan held a 4.9% interest, and another individual held the remaining 4%. WJLT purchased LSH from the hospital's previous owner. As part of the contract to purchase LSH, Plaintiffs claim that Matthews was forced to appoint Red River as the manager of WJLT and divest himself of his interest in St. Charles Rehabilitation Hospital, LLC.

After LSH was purchased, Plaintiffs claim that Sullivan and Schulze engaged in a series of fraudulent acts designed to mislead Matthews into believing that LSH was nearly insolvent. Plaintiffs allege that Defendants then exploited this situation by coercing Matthews into signing a power of attorney ("Power of Attorney") granting James Morgan the authority to sell LSH. After Matthews signed the Power of Attorney, ownership of LSH was transferred to JLTAC, LLC ("JLTAC"), an LLC owned by Sullivan and his law partner, Defendant Jack Stolier. The contract of sale was executed by Morgan, acting on behalf of WJLT pursuant to the Power of Attorney.

---

[5] The "Law Firm Entities" named in the Complaint are Sullivan, Stolier and Resor; Sullivan and Stolier; and, Sullivan, Stolier and Knight.

Plaintiffs claim that, shortly after the Power of Attorney was executed, LSH received a payment of nearly $800,000. Plaintiffs allege that Defendants knew about the pending payment but deliberately concealed it from Matthews to secure his consent to the sale. Plaintiffs assert that Matthews would never have executed the Power of Attorney had he known that LSH was in fact financially stable.

Plaintiffs also allege that, during the brief time that Matthews owned LSH, Camillus made several loans to LSH. After JLTAC acquired ownership of LSH, Matthews demanded repayment of the loans on behalf of Camillus. Plaintiffs claim that, after Matthews demanded repayment, Defendants engaged in a second conspiracy in which they fraudulently divested Matthews of his ownership interest in Camillus, thus depriving him of the proceeds of the loans. Ultimately, Plaintiffs request that the Court undo a series of transactions and place Matthews in full ownership of both Camillus and LSH. Plaintiffs also seek damages for the various alleged wrongful acts of Defendants.

After entertaining a series of Motions to Dismiss, the Court has delineated the following claims as the sole surviving claims in this action: (1) a fraud claim, sounding in tort, against Sullivan and the Morgans; (2) a claim to nullify the Power of Attorney, and any contracts executed pursuant to the Power of Attorney, on the basis of fraud; (3) breach of fiduciary duty claims against the Morgans, Red River, Sullivan, and the Law Firm Entities; (4) a breach of contract claim related to the contract selling LSH to JLTAC; (5) a

4

breach of contract claim on behalf of WJLT for breach of the two promissory notes executed by JLTAC; (6) a legal malpractice claim against Sullivan, Schulze, and the Law Firm Entities; (7) negligence claims against the Morgans and Red River; and (8) claims for violations of Louisiana and federal securities laws.

This Motion arises out of Plaintiff's Third Superseding Complaint, which added several insurers to the action, including Defendant North River Insurance Company ("North River"). North River issued an excess liability policy to defendant Sullivan Stolier Knight LC for the policy period of June 8, 2013, to June 8, 2014. This policy is an excess "claims-made" policy, providing $5,000,000 of coverage in excess of the primary insurance provided for the same policy period by Westport Insurance Company. North River's Motion argues that it should be dismissed from this suit because its policy does not provide coverage for Plaintiffs' claims. Plaintiffs respond, averring the Complaint asserts claims that may be covered by the North River policy.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[6] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[7]

---

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[7] *Id.*

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[8]  The Court need not, however, accept as true legal conclusions couched as factual allegations.[9]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[10]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[11]  Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[12]

## LAW AND ANALYSIS

Defendant North River makes three arguments in favor of dismissal of the claims against it.  First, it argues that the claims that are the subject of this litigation were first made in December 2012, prior to the inception of the North River Excess Policy.  Relatedly, it argues that the policy's exclusion provision for claims pending at the beginning of the policy period operates to exclude coverage.  Finally, it argues that Plaintiffs have failed to allege exhaustion of the primary policy, and therefore fail to present a plausible claim that the excess policy has been triggered.  Plaintiffs respond in opposition to

---

[8] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).
[9] *Iqbal*, 556 U.S. at 667.
[10] *Id.*
[11] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[12] *Lormand*, 565 F.3d at 255–57.

6

North River's Motion.  The Court will first address the arguments based on the language of the policy, as they are related.  It will then address the arguments based on exhaustion.

### I. Whether Plaintiffs Made a Claim Within the Policy Period

Defendant argues, based on various policy provisions, that there is no coverage for Plaintiffs claims.  This argument rests on the fact that Plaintiffs' Complaint references two December 2012 letters sent by Plaintiff to the Law Firm Entities, Stephen Sullivan, and Jack Stolier.  The first of these letters, dated December 7, 2012, makes a formal claim for reimbursements of monies allegedly owed to Camillus and its investors.  The second of these letters, dated December 18, 2012, purports to place several defendants on notice of a claim for breach of fiduciary duty, and directs them to preserve evidence relevant to the claim.

In arguing that the policy does not provide coverage for Plaintiffs' claims, Defendant relies on two policy provisions.  First, it points to the definition of "claim" in the policy.  The North River policy adopts the definition of "claim" provided in Plaintiff's primary policy, which provides "a demand made upon any INSURED for LOSS, including, but not limited to, service of suit, or institution of arbitration proceedings or administrative proceedings against any INSURED."   Second, North River argues that Plaintiff's claims are excluded by the policy. Its policy exclusion states that "any claim made against any insured based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving . . . any litigation, case, proceeding,

7

demand letter, government investigation, or inquiry, or any investigation or inquiry into or against any insured which commenced prior to or is pending" as of June 8, 2013 serves to exclude coverage. Plaintiffs argue that the letters do not constitute "claims" under either policy provision.

"An insurance policy is a contract between the insured and insurer and has the effect of law between them."[13] Courts must enforce the contract as written when the works of an insurance contract are clear and explicit and lead to no absurd consequences.[14] "Where a policy unambiguously and clearly limits coverage to claims made and reported during the policy period, such limitation of liability is not per se impermissible."[15]

Plaintiffs' Third Amended Complaint adds North River as a defendant pursuant to Louisiana's Direct Action Statute, asserting that North River is liable as the insurer for the claims made in the complaint. As noted above, the North River policy excludes coverage for claims connected to, inter alia, demand letters made before the policy period. It is clear based on this policy language that the two demand letters referenced in the Complaint, per the terms of the policy, exclude coverage for the claims asserted therein. North River argues that the December 2012 letters encompass all of the claims made in the lawsuit, however, an examination of these letters indicates that they only clearly place Defendants on notice of a small number of the myriad of

---

[13] *Gorman v. City of Opelousas*, 148 So. 3d 888, 892 (La. 2013), *reh'g denied* (Aug. 25, 2014).
[14] *Peterson v. Chimek*, 729 So. 2d 1024, 1028 (La. 1999).
[15] *Gorman,* 148 So. 3d at 892.

claims asserted in this action. At this early stage of the litigation, the Court must make all inferences in favor of Plaintiffs. The Court will, therefore, only dismiss those claims expressly implicated in the demand letters.

The December 7, 2012 letter was sent by Marie Riccio, counsel for Plaintiffs, to Defendant James Morgan. It purports to demand payment of certain debts on behalf of Camillus and its investors. As this Court has previously dismissed Plaintiffs' claims brought on behalf of Camillus, this letter is of no bearing on the instant litigation.

The December 18, 2012 demand letter was sent by Marie Riccio to Stephen Sullivan and Jack Stolier. It places them on notice to reserve evidence relevant to "a potential claim, currently being investigated . . . for fiduciary breaches." Of the remaining claims in this litigation, this letter references the breach of fiduciary duty claims against Sullivan and the Law Firm Entities. Per the terms of the policy's exclusion, this letter represents a claim made prior to the inception of the policy. Accordingly, dismissal of this claim as to North River is appropriate based on the clear language of the policy's exclusion.[16]

**II. Exhaustion Arguments**

North River next argues that because Plaintiffs have failed to allege that the primary policy is exhausted, they have failed to state a plausible claim against North River as the excess insurance carrier. The Court is not persuaded by this argument. Again, construing the pleadings in the light most

---

[16] The Court specifically notes that the remaining claims against North River are not dismissed at this time. It may be appropriate to revisit the viability of these claims when the record is more fully developed.

favorable to the Plaintiffs, the Complaint states claims that could exceed the $5,000,000 value of the primary insurance policy. Louisiana law is clear that an excess insurer must participate in a suit unless the complaint at issue unambiguously excludes coverage.[17] Dismissal of North River, as the excess insurer, is therefore premature at this time.

## CONCLUSION

For the foregoing reasons, Defendant North River's Motion to Dismiss (Doc. 165) is GRANTED IN PART. Because the Court finds that amendment would be futile, Plaintiffs' claims against Defendant North River based in breach of fiduciary duty are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 29th th day of December, 2015.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[17] *See, e.g. American Home Assurance Company v. Czarniecki*, 230 So. 2d 253, 269 (holding that insurer has duty to participate in case unless the allegations of the complaint unambiguously exclude coverage).