UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES MATTHEWS, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-6638** |
| **JACK STOLIER, ET AL** | **SECTION: "H"(3)** |

## ORDER AND REASONS

Before the Court is Defendants Stephen Sullivan; Sullivan Stolier, A Partnership; Sullivan Stolier and Resor, A Professional Law Corporation; Sullivan Stolier Knight, L.C.; Michael Schulze; Jefferson LTAC, L.L.C.; and James Fritschen's (for purposes of this Motion the "Moving Defendants") Motion for Partial Summary Judgment (Doc. 213). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Sometime prior to the events giving rise to this suit, Lazarus Healthcare, LLC ("Lazarus") acquired ownership of Camillus Specialty Hospital, LLC

("Camillus"),[1] a long-term acute care ("LTAC") hospital in Gretna, Louisiana. Charles Matthews is the sole owner of Lazarus.

In the fall of 2012, a dispute developed between Camillus and the landlord of the building that housed the hospital. During the course of that dispute, Matthews began searching for another facility in which to house Camillus. While he attempted to resolve the facility issues, Matthews also sought management assistance. To that end, Matthews retained Defendant Red River Healthcare Management Company, LLC ("Red River") to provide management services to Camillus. Red River is owned and operated by Defendants Jimmy and Connie Morgan ("the Morgans").

Matthews eventually discovered that Louisiana Specialty Hospital, LLC ("LSH"), an LTAC operating in the West Jefferson Medical Center, was closing and he began to explore the possibility of moving Camillus into the space being vacated by LSH.[2] As Matthews pursued this opportunity, he learned that the then-operator of LSH might be interested in selling the entire facility, including its license to operate.[3] Matthews retained Defendant Steve Sullivan, an attorney, to negotiate the terms of the sale. They allege that Defendant Michael Schulze assisted Sullivan with the preparation of various documents. Plaintiffs claim that Sullivan and Schulze are employed by several named law firms ("Law Firm Entities").[4]

Plaintiffs claim that, during the negotiations to purchase LSH, Sullivan began conspiring with the other Defendants to deprive Matthews of the

---

[1] Camillus is referred to in the Complaint by varying names, including, Camillus Hospital, Camillus Specialty Hospital, and Crescent City Specialty Hospital.
[2] In the Complaint LSH is referred to as West Jefferson LTAC, Jefferson Extended Care, Louisiana Specialty Hospital, and Jefferson LTAC.
[3] Owning LSH and its Medicare billing number provided several business advantages not otherwise available to Camillus.
[4] The "Law Firm Entities" named in the Complaint are Sullivan, Stolier and Resor; Sullivan and Stolier; and, Sullivan, Stolier and Knight.

opportunity to purchase LSH. Despite the alleged conspiracy, WJLT Hospital, LLC ("WJLT") was formed to purchase LSH. Matthews held a 91.1% ownership interest in WJLT, Sullivan held a 4.9% interest, and another individual held the remaining 4%. WJLT purchased LSH from the hospital's previous owner. As part of the contract to purchase LSH, Plaintiffs claim that Matthews was forced to appoint Red River as the manager of WJLT and divest himself of his interest in St. Charles Rehabilitation Hospital, LLC.

After LSH was purchased, Plaintiffs claim that Sullivan and Schulze engaged in a series of fraudulent acts designed to mislead Matthews into believing that LSH was nearly insolvent. Plaintiffs allege that Defendants then exploited this situation by coercing Matthews into signing a power of attorney ("Power of Attorney") granting James Morgan the authority to sell LSH. After Matthews signed the Power of Attorney, ownership of LSH was transferred to JLTAC, LLC ("JLTAC"), an LLC owned by Sullivan and his law partner, Defendant Jack Stolier. The contract of sale was executed by Morgan, acting on behalf of WJLT pursuant to the Power of Attorney. As part of this transaction, JLTAC and LSH issued a $1.2 million promissory note to WJLT (the "JLTAC-WJLT Note"). WJLT subsequently issued a $1.2 million promissory note to Matthews, whereby all payments received on the JLTAC-WJLT Note would be transferred to Matthews as received.

Plaintiffs claim that, shortly after the Power of Attorney was executed, LSH received a payment of nearly $800,000. Plaintiffs allege that Defendants knew about the pending payment but deliberately concealed it from Matthews to secure his consent to the sale. Plaintiffs assert that Matthews would never have executed the Power of Attorney had he known that LSH was in fact financially stable.

Plaintiffs also allege that, during the brief time that Matthews owned LSH, Camillus made several loans to LSH. After JLTAC acquired ownership of LSH, Matthews demanded repayment of the loans on behalf of Camillus. Plaintiffs claim that, after Matthews demanded repayment, Defendants engaged in a second conspiracy in which they fraudulently divested Matthews of his ownership interest in Camillus, thus depriving him of the proceeds of the loans. Ultimately, Plaintiffs request that the Court undo a series of transactions and place Matthews in full ownership of both Camillus and LSH. Plaintiffs also seek damages for the various alleged wrongful acts of Defendants.

After entertaining a series of Motions to Dismiss, the Court has delineated the following claims as the sole surviving claims in this action: (1) a fraud claim, sounding in tort, against Sullivan and the Morgans; (2) a claim to nullify the Power of Attorney, and any contracts executed pursuant to the Power of Attorney, on the basis of fraud; (3) breach of fiduciary duty claims against the Morgans, Red River, Sullivan, and the Law Firm Entities; (4) a breach of contract claim related to the contract selling LSH to JLTAC; (5) a breach of contract claim on behalf of WJLT for breach of the two promissory notes executed by JLTAC; (6) a legal malpractice claim against Sullivan, Schulze, and the Law Firm Entities; (7) negligence claims against the Morgans and Red River; and (8) claims for violations of Louisiana and federal securities laws.

In this Motion, the Moving Defendants move for dismissal of Plaintiffs' claims arising under federal and state securities laws. Plaintiffs oppose this Motion.

4

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[7] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[8] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[9] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[10] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[5] Fed. R. Civ. P. 56(c) (2012).
[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[7] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).
[8] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[10] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[11]   Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[12]

## LAW AND ANALYSIS

This Motion involves Plaintiffs' claims that the actions of the Moving Defendants violated both federal and state securities laws.  These claims were used as the jurisdictional predicate for removal under the Court's federal question jurisdiction; however, the Court has not yet been called on to define the precise parameters of these claims.  The Moving Defendants ask for summary judgment on these claims.  They contend that the allegations of securities law violations are limited to fraud surrounding the transaction whereby ownership of LHS was transferred from WJLT to the newly created JLTAC (the "LHS Transaction").  Two relevant promissory notes were issued as part of this transaction: a $1.2 million promissory note issued by JLTAC and LSH to WJLT (the "JLTAC-WJLT Note") and a $1.2 million promissory note issued by WJLT to Matthews (the "WJLT-Matthews Note").  The Moving Defendants aver that any additional alleged violations of securities laws are outside of the pleadings and not properly before the Court.  Plaintiffs argue that they have alleged four separate violations of securities laws.  As a preliminary matter, the Court notes that its inquiry relative to the securities claims on the earlier Motion to Remand was limited to whether Plaintiffs had, on the face of the petition, *alleged* claims under federal law.  This question is wholly distinct from the Court's present inquiry into the *sufficiency* of these claims, which Defendants now challenge on summary judgment.  The Court will, therefore, first address the the fully briefed claims relative to the LHS

---

[11] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[12] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

Transaction.  It will then address the remaining securities claims raised by Plaintiff.

## I. The LHS Transaction

As to the LHS Transaction, Plaintiffs aver that Defendants "unlawfully sold a security (the promissory note) to the detriment of the owner of the promissory note" in violation of 15 U.S.C. § 78j(b) and the associated Rule 10b-5, codified at 17 C.F.R. § 240.10b-5. [13]  "In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[14]

Defendants argue that federal securities law is inapplicable to the LHS Transaction because neither the JLTAC-WJLT Note nor the WJLT-Matthews Note are securities.  "Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud."[15]  Indeed, "Congress' purpose in enacting the securities laws was to regulate *investments*, in whatever form they are made and by whatever name they are called."[16]  In determining whether a note is a security, courts are to apply the "family resemblance" test.  Under this framework, "[a] note is presumed to be a 'security,' and that presumption may be preliminarily rebutted by a showing that it more closely resembles the 'family of instruments found not to be securities."[17]  This family includes (1) a note delivered in consumer financing, (2) a note secured by a short term mortgage on a home (3) a short-term note secured by a lien on a

---

[13] Doc. 1-1 at 47.
[14] *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).
[15] *Marine Bank v. Weaver,* 455 U.S. 551, 556 (1982).
[16] *Reves v. Ernst & Young,* 494 U.S. 56, 61 (1990).
[17] *Trust Co. of Louisiana v. N.N.P., Inc.*, 104 F.3d 1478, 1489 (5th Cir. 1997) (citing *Reves,* 494 U.S. at 65–67).

7

small business or some of its assets, (4) a note evidencing a "character" loan to a bank customer, (5) a short term note secured by an assignment of accounts receivable, or (6) a note that formalizes an open-account debt incurred in the ordinary course of business.[18]  Should the instrument at issue not fit neatly into one of these categories, the  four factors articulated by the Supreme Court in *Reves v. Ernst & Young* are analyzed to determine whether the instrument should be added to the list of non-securities:

> The four factors consider attributes common to most securities. First, the transaction is examined to assess whether the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate. If this is the case, then the instrument is likely to be a "security." Second, the "plan of distribution" of the instrument is examined to determine whether it involves "common trading for speculation or investment." Third, the reasonable expectations of the investing public are considered.  Finally, a court must examine whether some other factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary.[19]

The Court in *Reves* was not clear as to whether all four factors must be met for a note to qualify as a non-security.[20]  The Eastern District of Louisiana has adopted a balancing approach to the test; however, it remains unclear how much weight each factor carries.[21] The Court will separately analyze the JLTAC-WJLT Note and the WJLT-Matthews Note.

---

[18] *Reves*, 494 U.S. at 65.
[19] *Trust Co. of Louisiana,* 104 F.3d at 1489 (citing *Reves*, 494 U.S. at 67) (internal citations omitted).
[20] *LeBrun v. Kuswa*, 24 F.Supp.2d 641, 646 (E.D. La. 1998).
[21] *Id.*

### A. The JLTAC-WJLT Note

A brief outline of the characteristics of the JLTAC-WJLT note is helpful prior to an analysis of whether it constitutes a security. As part of the sale of LSH to JLTAC, LHS and JLTAC issued a $1.2 million promissory note to WJLT to be repaid as follows:

> (a) For the period from December 1, 2012, through November 30, 2013, 1.5% of LSH's cash receipts for services shall be paid to [WJLT] within three days of receipt,
> (b) On and after December 1, 2013, 2.25% of LSH's cash receipts for services shall be paid to [WJLT] within three days of receipt,
> (c) In the event the amount computed pursuant to subparagraph (a) or subparagraph (b) is in any calendar month less than $10,000, then the amount paid to [WJLT] pursuant to subparagraph (a) or subparagraph (b) shall be supplemented so that the total payment for such calendar month shall be $10,000 and such supplemental payment shall be made within 5 business days of the close of such calendar month, and
> (d) Twenty-five percent (25%) of LSH's EBITDAM (Earnings Before Interest Taxes Depreciation Amortization and Management Fees) for each calendar year in excess of $1,500,000 shall be paid to [WJLT] on March 1 of the immediately following calendar year.

Accordingly, the note is a $1.2 million obligation with a variable repayment schedule contingent on the profitability of LSH. The note bears no interest, and monthly payments must always be at least $10,000, giving the note a maximum payment term of 10 years. This note was secured by a lien on LHS's hospital license, Medicare provider number, and provider agreement.

Defendants first argue that the JLTAC-WJLT Note is not properly characterized as a security because it is similar to one of the "family of instruments found not to be securities," namely, a short-term note secured by a lien on a small business or some of its assets. Plaintiffs aver that the 10-year maximum term of the note is not "short term," precluding a finding that the

JLTAC-WJLT note falls into this category. Even assuming that this is the case, the Court finds that an examination of the four factors common to most securities clearly indicates that the JLTAC-WJLT Note is, on its face, not a security.

*1. Economic Realities of the Transaction*

First, the Court must examine "[t]he motivations that would prompt a reasonable seller and buyer to enter into [the transaction]."[22] A note is likely a security if: (1) "[t]he seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments" and (2) "[t]he buyer is interested primarily in the profit the note is expected to generate . . . ."[23] In contrast, the note is less likely to be a security "[i]f the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose . . . ."[24] Essentially, the Court must determine whether profit was the motivating factor behind the transaction.[25]

This factor weighs in favor of finding that the JLTAC-WJLT note was not a security. It is beyond dispute that JLTAC's primary purpose in issuing the note was not to raise money for general use; rather it was to finance the acquisition of LSH, an asset owned by WJLT. Evening viewing the facts as alleged in the Complaint and its amendments in the light most favorable to the Plaintiffs, this transaction appears commercial in nature. The Court also finds important the lack of interest charged on the note. In finding notes to be securities, the Supreme Court in *Reves* noted that the purchasers invested "[i]n order to earn a profit in the form of interest."[26] Here, however, there was no

---

[22] *Reves*, 494 U.S. at 66.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 68 n.4.
[26] *Id.* at 67–68.

10

profit associated with the transaction, as the note bore no interest. WJLT's interest in the note was to receive payment, over time, for the sale of its asset.

### 2. Plan of Distribution

When considering this factor, the Court examines the plan of distribution "[t]o determine whether it is an instrument in which there is 'common trading for speculation or investment.'"[27] All that is necessary to establish "common trading" is that the notes were "offered and sold to a broad segment of the public."[28] The fact that a note was not broadly distributed, however, is not necessarily fatal to a claim that the note is a security.[29] "A debt instrument may be distributed to but one investor, yet still be a security."[30]

The record in this matter is wholly devoid of any allegation that the JLTAC-WJLT note or any similar instrument was offered to a broad segment of the public. In fact, it can only have been offered WJLT because it was offered to obtain an asset owned by WJLT, not to obtain general capital. Accordingly, this factor, though not dispositive, weighs in favor a finding that the JLTAC-WJLT note is not a security.

### 3. Reasonable Expectations of the Investing Public

This factor is an objective one under which the Court considers the reasonable expectations of the investing public.[31] "The court will consider instruments to be 'securities' on the basis of such public expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not 'securities' as used in that

---

[27] *Id.* at 66 (quoting *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 353 (1943)).
[28] *Id.* at 68.
[29] *Trust Co. of La. v. N.N.P, Inc.*, 104 F.3d 1478, 1489 (5th Cir. 1997).
[30] *Id.*
[31] *LeBrun*, 24 F. Supp. 2d at 648 (citing *Reves*, 494 U.S. at 66–67).

11

transaction."³² The Supreme Court has "[c]onsistently identified the fundamental essence of a 'security' to be its character as an 'investment.'"³³

The *Reves* Court specifically noted that the advertisement for the note in that case characterized the notes as investments, and no other facts existed that would have caused a reasonable person to question that characterization.³⁴ Conversely, in this case, there is no allegation that the JLTAC-WJLT Note was ever offered to the investing public, let alone advertised as an investment. Plaintiffs arguments on this factor are limited to the conclusory assertion that "the note could not be anything other than an investment for Mr. Matthews;" however, the lack of interest charged on the note undercuts such a finding. This factor weighs in favor of a finding that the JLTAC-WJLT Note is not a security.

### 4. Risk of the Instrument

The final factor asks the Court to analyze whether there is some factor that reduced the risk of the instrument, rendering application of securities law unnecessary.³⁵ "This component of the test is significant because the foremost threat to the investor is the risk of losing his entire investment."³⁶ As with the other factors, however, this factor is not dispositive.

In *Reves*, the Court found it important that the notes at issue were uncollateralized, uninsured, and would entirely escape federal regulation if not characterized as securities.³⁷ Here, however, the note is secured by a lien on LSH's hospital license, Medicare provider number, and provider agreement. Accordingly, WJLT is protected in the event of default without need for

---

³² *Reves*, 494 U.S. at at 66.
³³ *Id.* at 68–69.
³⁴ *Id.*
³⁵ *Id.*
³⁶ *LeBrun*, 24 F.Supp.2d at 648–49.
³⁷ *Reves*, 494 U.S. at 69.

recourse to federal securities law. Accordingly, this factor weighs in favor of finding that the JLTAC-WJLT note is not a security.

When analyzed together, the *Reves* factors indicate that the JLTAC-WJLT note is, on its face, not a security. Plaintiffs contend that summary judgment is premature because discovery is ongoing. The Court disagrees, as the JLTAC-WJLT Note was issued to facilitate payment for an asset, not as an investment. Plaintiffs have pointed to no specific outstanding discovery that would change this facially apparent fact. Accordingly, summary judgment is warranted and Plaintiffs' claims relative to this note arising under federal securities law must be dismissed. Because Louisiana courts also apply the *Reves* analysis in determining whether state securities laws should apply,[38] these claims must also be dismissed as a matter of law.

### B. The WJLT-Matthews Note

The Court finds that there can be no viable claim of securities law violations arising out of this note because it was issued between two Plaintiffs—WJLT and Charles Matthews. Accordingly, a finding that this note could support a securities law claim between Plaintiffs and Defendants defies reason. This note merely evidences an obligation on the part of WJLT to pay to Matthews personally the proceeds of the JLTAC-WJLT Note as they are received. This note can in no way be characterized as an investment opportunity. Accordingly, any securities law claims relative to this note are dismissed.

## II. Whether remaining "security transactions" are properly before the Court

Plaintiffs aver that their complaint contains three other transactions besides the JLTAC-WJLT note that may be characterized as "security

---

[38] *Godair v. Place Vendome Corp. of America,* 648 So.2d 440, 444 (La. App. 1 Cir. 1994).

13

transactions" giving rise to claims under federal and state securities laws. Defendants aver that these claims are not in fact before the Court. In order to resolve this dispute, the Court must return to Plaintiffs' meandering complaint, which, following multiple amendments, now numbers 286 paragraphs sprawled over 124 pages. The Court reiterates that Plaintiffs might have saved the parties and the Court much consternation had they adhered to Fed. R. of Civ. Pro. 8(a), which dictates that a pleading should set forth a "**short** and **plain** statement of the claim showing that the pleader is entitled to relief." Instead, Plaintiffs' prolix Complaint and its amendments have forced the Court into a protracted review of the pleadings that now stretches into its third year.

In addition to the transaction whereby JLTAC acquired ownership of LSH, discussed above, Plaintiffs point to three other transactions as potential violations of securities laws that it argues this Court should maintain. Two of these transactions relate to Plaintiff Lazarus Healthcare, LLC, an entity wholly owned by Matthews. Plaintiffs aver that the loss of Lazarus's interest in Camillus and Lazarus's interest in St. Charles Rehabilitation were transactions implicating securities laws.[39] The Court has examined Plaintiffs' Complaint and its amendments and finds that these claims were never asserted as violations of securities laws; rather, they were asserted as state law fraud claims. Furthermore, the Court, on Defendants' motion, dismissed these claims for failure to allege justifiable reliance on any misrepresentation with regard to the loss of interest in Camillus and for failure to allege any misrepresentation whatsoever with regard to the loss of interest in St. Charles

---

[39] Though Plaintiffs' brief refers to Matthews' loss of interest in these entities, the Complaint and its amendments allege that the lost interests were owned by Lazarus, not Matthews personally.

14

Rehabilitation Hospital.[40] Even were the Court inclined to construe these fraud allegations as violations of securities law (which it is not), they would fail for these same reasons. Accordingly, any allegations of violations of securities laws arising out of these transactions are dismissed.

Plaintiffs additionally claim a "security transaction" surrounding JLTAC's sale of its interest in LSH to a newly formed entity. The allegations surrounding this transaction are muddled at best; however, it is apparent that they are newly asserted in Plaintiffs' brief and are not properly before the Court in Plaintiffs' Complaint or its amendments, as they occurred following the start of this litigation. Accordingly, such allegations improperly expand this matter beyond the pleadings and cannot stand as the basis for securities law violations in this action.

Based on the undisputed facts and claims alleged in the Complaint and its amendments, Plaintiffs' securities law claims against Defendants Stephen Sullivan; Sullivan Stolier, A Partnership; Sullivan Stolier and Resor, A Professional Law Corporation; Sullivan Stolier Knight, L.C.; Michael Schulze; Jefferson LTAC, L.L.C.; and James Fritschen fail as a matter of law. Accordingly, all such claims against these Defendants are dismissed.

**III. Securities Law Claims Against the Morgan Defendants**

Plaintiffs Complaint also alleges securities law violations against Defendants James Morgan, Connie Morgan, and Red River (collectively, the "Morgan Defendants") arising out of the WJLT-JLTAC Note. The Court finds that these claims should be dismissed for the reasons outlined above. There is, however, a procedural obstacle to such a ruling—the Morgan Defendants have not moved for summary judgment on these claims. Nonetheless, Rule 56(f) permits the Court to grant summary judgment to a nonmovant "after

---

[40] Doc. 109.

giving notice and a reasonable time to respond." The Court will, therefore, permit further briefing on this issue. Accordingly, Plaintiff may file a brief, no later than 20 days from the issuance of this order, identifying the manner in which the securities claims against the Morgan Defendants differ from those claims dismissed in this order. **Plaintiffs shall confine any arguments contained therein to this limited issue.** Should Plaintiffs file such a brief, Defendants may file a reply within 10 days. If Plaintiffs fail to file a timely brief, the Court will issue an order granting partial summary judgment to Defendants on all remaining securities law claims.

## CONCLUSION

For the foregoing reasons, Defendants Stephen Sullivan; Sullivan Stolier, A Partnership; Sullivan Stolier and Resor, A Professional Law Corporation; Sullivan Stolier Knight, L.C.; Michael Schulze; Jefferson LTAC, L.L.C.; and James Fritschen Motion for Partial Summary Judgment (Doc. 213) is **GRANTED**. The state and federal securities laws claims against these Defendants are **DISMISSED**.

The Court notes that it is considering granting summary judgment sua sponte pursuant to Rule 56(f) to the Morgan Defendants on the securities laws claims asserted against them. Accordingly, the parties are permitted to submit additional briefing as outlined in this Order.

New Orleans, Louisiana this 13th day of September, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**